1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN KULA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FASTLY, INC., TODD NIGHTINGALE, and RONALD W. KISLING, <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION</u> <br><br> COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Ken Kula ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Fastly, Inc. ("Fastly" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that

substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Fastly securities between February 15, 2024 and May 1, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Fastly operates an edge cloud platform for processing, serving, and securing customer's applications.  The edge cloud is a category of Infrastructure-as-a-Service ("IaaS") that purportedly enables developers to build, secure, and deliver digital experiences.  Fastly's platform includes a Content Delivery Network ("CDN"), or a geographically distributed network of proxy servers and their data centers.  Content owners such as media companies and e-commerce vendors pay CDN operators to deliver their content to their end users.  Certain companies have adopted a "Multi-CDN" framework which combines multiple CDNs from various providers into one large global network.

3.      In 2023, a "consolidation trend" emerged in the CDN industry, in which several prominent Multi-CDN companies reduced the number of CDN vendors they had previously managed in an effort to simplify their operations and increase efficiency, opting instead to manage fewer CDN vendors.  Facing reduced competition, Fastly was able to materially increase its market share and drive favorable sequential growth.

4.      On February 14, 2024, Fastly issued a press release providing full year ("FY") 2024 revenue guidance in a range of $580 million to $590 million.  In that same press release,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Fastly's Chief Executive Officer ("CEO") Defendant Todd Nightingale ("Nightingale") was quoted as stating, "*[t]his quarter demonstrated the progress we've made in operational and financial rigor* resulting in strong gross margins and non-GAAP net income," and "*[o]ur go-to-market, packaging and channel efforts through 2023 delivered an inflection in our customer acquisition as we closed out the year. This positions us well for 2024*, driving our mission to make every user experience fast, safe, and engaging."[1]

5.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) contrary to its representations to investors, Fastly was in fact experiencing a significant deceleration in growth among its largest customers and was losing the increased market share it had gained as a result of the 2023 CDN consolidation trend; (ii) the foregoing issues were likely to have a material negative impact on the Company's revenue growth; (iii) accordingly, the Company was unlikely to meet its own previously issued revenue guidance for FY 2024; (iv) as a result, the Company's financial position and/or prospects were overstated; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.     On May 1, 2024, Fastly announced its first quarter ("Q1") 2024 financial results. Despite the Defendants' positive statements just three months earlier about Fastly's performance and near-term business prospects, the Company reported revenue of only $133.52 million, missing consensus estimates by $0.35 million.  The Company also lowered its FY 2024 revenue guidance to a range of $555 million to $565 million, significantly below its previously issued FY

---

[1] All emphases included herein are added unless otherwise indicated.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

2024 revenue guidance of $580 million to $590 million, and likewise below consensus estimates of $584.62 million for the same period.

7.      That same day, Fastly held a conference call with investors and analysts to discuss the Company's Q1 2024 results (the "Q1 2024 Earnings Call").  In explaining the Company's disappointing revised FY 2024 outlook, Defendant Nightingale stated that "[t]he biggest factor is a reduction of revenue from a small number of our largest customers. The first-quarter revenue from our top 10 customers dropped from 40% to 38%[,]" and that the Company saw "significant volatility" in the Multi-CDN strategy run by many of Fastly's top 10 accounts.  Further, Fastly's Chief Financial Officer ("CFO") Defendant Ronald Kisling ("Kisling") stated that the Company is "facing a challenging environment of revenue declines in our largest customers, overshadowing the impact of new customer acquisition and product pipeline[,]" and that the Company would not benefit in 2024 from the favorable impact of the early 2023 CDN consolidation that drove favorable sequential growth in the prior year same period.

8.      Then, on May 2, 2024, Bank of America ("BoA") downgraded Fastly stock from a "Buy" rating to an "Underperform" rating and cut its price target on the stock from $18 per share to a mere $8 per share, noting that "[d]ecelerating growth in Fastly's largest customers, share loss in delivery, and limited visibility in 2H cause us to question a rebound in 2024," and that "[w]hile we continue to like Fastly's positioning in the edge compute market, we see it as a 2025 opportunity instead of a near-term growth driver."

9.      Following these developments, Fastly's stock price fell $4.14 per share, or 32.02%, to close at $8.79 per share on May 2, 2024.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**JURISDICTION AND VENUE**

11.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Fastly is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

14.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

15.    Plaintiff, as set forth in the attached Certification, acquired Fastly securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.    Defendant Fastly is a Delaware corporation with principal executive offices located at 475 Brannan Street, Suite 300, San Francisco, California 94107.  The Company's common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "FSLY."

17.    Defendant Nightingale has served as Fastly's CEO at all relevant times.

18.    Defendant Kisling has served as Fastly's CFO at all relevant times.

5

19.     Defendants Nightingale and Kisling are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of Fastly's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Fastly's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Fastly, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

21.     Fastly and the Individual Defendants are collectively referred to herein as "Defendants."

### SUBSTANTIVE ALLEGATIONS

### Background

22.     Fastly operates an edge cloud platform for processing, serving, and securing its customer's applications in the U.S., the Asia Pacific, Europe, and internationally.  The edge cloud is a category of IaaS that enables developers to build, secure, and deliver digital experiences.

### Materially False and Misleading Statements Issued During the Class Period

23.     The Class Period begins on February 15, 2024, the day after Fastly issued a press release during after-market hours, announcing the Company's Q4 and FY 2023 financial results.  The press release provided FY 2024 revenue guidance in a range of $580 million to $590 million and stated, in relevant part:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Fastly [. . .] today announced financial results for its fourth quarter and full year ended December 31, 2023.

"This quarter demonstrated the progress we've made in operational and financial rigor resulting in strong gross margins and non-GAAP net income," said [Defendant] Nightingale[.]

"Our go-to-market, packaging and channel efforts through 2023 delivered an inflection in our customer acquisition as we closed out the year," continued Nightingale. "This positions us well for 2024, driving our mission to make every user experience fast, safe, and engaging."

24.     Also during after-market hours on February 14, 2024, Fastly hosted an earnings call with investors and analysts to discuss the Company's Q4 and FY 2023 results (the "Q4 2023 Earnings Call"). During the scripted portion of the Q4 2023 Earnings Call, Defendant Nightingale stated, in relevant part:

I'm pleased to report that we closed out 2023 with revenue of $506 million, representing 17% year-over-year growth and coming in above the original $495 million to $505 million range we guided to one year ago. We reported record fourth quarter revenue of $137.8 million, which grew 15% year-over-year and 8% quarter-over-quarter. This result came in at the lower end of our fourth quarter guidance range, driven by weaker than anticipated international traffic, offset by seasonally strong live streaming and gaming activity.

\*\*\*

Our customer retention efforts were stable in the fourth quarter with our LTM NRR at 113%, down slightly from Q3's 114%. Our total customer count in the fourth quarter was 3,243, which increased by 141 customers compared to Q3 and increased by 181 customers year-over-year. Enterprise customers totaled 578 in the quarter, an increase of 31 from Q3, representing the highest level of sequential growth since we acquired Signal Sciences back in 2020. Our new packaging channel program and a renewed demand gen focus are driving a change in the velocity of customer acquisition at Fastly, and this is finally starting to show up in these disclosed customer accounts.

***As these customers grow with Fastly, they will fuel our revenue growth for years to come. This customer growth is also diversifying our revenue among verticals, which helps us optimize traffic across our fleet, yielding higher profitability***. Our sales team has been energized by our recent success with large customer wins. Of the 31 new enterprise customers this quarter, 19 were net new to Fastly.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

25.     Also during the scripted portion of the Q4 2023 Earnings Call, Defendant Kisling stated, in relevant part:

> *For calendar year 2024, we expect revenue in the range of $580 million to $590 million, an annual growth rate of 16% at the midpoint. This guidance reflects our expectation for quarter and quarter acceleration and revenue growth through the year driven by new customer acquisition and continued expansion of existing customers*. We expect to continue to see gross margin improvement in 2024 and to continue our spending discipline while increasing our investment in go-to-market and product development. We anticipate our 2024 gross margins will improve by approximately 200 basis points, plus or minus 100 basis points relative to 2023, and to exit the year with gross margins at 60% or better.

26.     On February 22, 2024, Fastly filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2023 (the "2023 10-K").  In providing an overview of the Company, the 2023 10-K stated, in relevant part:

> Developers on the Fastly platform have a high degree of flexibility with granular control and real-time visibility, where they can write and deploy code in a serverless environment and push application logic to the edge. Our infrastructure is built for the software-defined future. Our network is powerful, efficient, and flexible, designed to enable us to rapidly scale to meet the needs of the most demanding customers. Our approach to scalable, secure reliability integrates security into multiple layers of development: architecture, engineering, and operations. That's why we invest in building security into the fabric of our platform, alongside performance. We provide developers and security operations teams with a fast and safe environment to create, build, and run modern applications.

> ***

> For the fiscal years ended December 31, 2023, 2022 and 2021, our revenue was $506.0 million, $432.7 million, and $354.3 million, respectively. We continue to invest in our business and had a net loss of $133.1 million, $190.8 million and $222.7 million for the fiscal years ended December 31, 2023, 2022 and 2021, respectively.

27.     Further, in discussing the Company's growth strategy, the 2023 10-K stated, in relevant part:

> Our growth strategy focuses on making our edge cloud platform accessible to a broader base of customers through enhancing our product experience,

investments in technology, and vertical expansion. Key elements of our growth strategy include the following:

- *Product strategy*. Built upon a strategy of durable innovation, our programmable edge cloud platform creates a consistent and predictable pipeline of innovation. We plan to expand existing product lines like Network Services and Security, and expect to further incubate newer product lines like Compute and Observability for future growth.

  With the goal of making it easier for customers to do business with us, we will continue to build out a single, unified platform where they can access and manage all their Fastly services in one place. We will simplify customer onboarding and service usage, through easy access to self-training information from within the Fastly app, and more code samples and support. In 2023, we simplified our pricing and packaging in order to make it easier for customers to buy and renew our services.

  We launched our Next-Gen WAF in Q1 of 2022. This enables us to protect customers' applications and APIs on premise, in the cloud and on the edge. We plan to continue to invest in application security with the goal of making it easier for developers to seamlessly protect their apps and APIs wherever they are without impacting performance.

- *Expansion into additional vertical markets*. Our platform offers a broad range of capabilities. Our differentiated high performance and low-latency delivery network and edge compute platform, as well as enhanced security capabilities, allows us to serve the needs of our existing customers and continue to add customers from a diverse set of industries.

- *Expand existing customer relationships*. Over time, our customers have expanded their use of our platform. In more technically savvy organizations, developers have championed our solution, paving the way for us to engage with business decision makers. For more traditional organizations, we are often brought in to initially help facilitate a move to the cloud and from there we extend our product to support many other use cases. We plan to continually increase wallet-share over time for existing customers as we build out new products and features, and as customers continue to fully recognize the value of our platform.

- *Grow our technology partner ecosystem*. We operate between and complement the "big 3" origin cloud platforms, Amazon Web Services ("AWS"), Microsoft (Azure), and Google Cloud Platform, and a growing community of companies that provide big data, machine learning, and security solutions. In this sense, we act as the unifying layer for a growing number of cloud services. As customers consume more cloud and software as a service ("SaaS") offerings, we can create additional value and grow with these partners.

9

- *International expansion.* As our customer base grows, we plan to scale our network to bring edge computing closer to where our customers are. We believe significant opportunities exist for international growth.

28.    Appended as exhibits to the 2023 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein the Individual Defendants certified that the 2023 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

29.    The statements referenced in ¶¶ 23-28 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) contrary to its representations to investors, Fastly was in fact experiencing a significant deceleration in growth among its largest customers and was losing the increased market share it had gained as a result of the 2023 CDN consolidation trend; (ii) the foregoing issues were likely to have a material negative impact on the Company's revenue growth; (iii) accordingly, the Company was unlikely to meet its own previously issued revenue guidance for FY 2024; (iv) as a result, the Company's financial position and/or prospects were overstated; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

30.    On May 1, 2024, during after-market hours, Fastly issued a press release announcing the Company's Q1 2024 financial results.  The Company lowered its FY 2024

revenue guidance to a range of $555 million to $565 million, significantly below its previously

issued FY 2024 revenue guidance of $580 million to $590 million, and below consensus estimates

of $584.62 million for the same period.  In addition, the press release stated, in relevant part:

> "I am pleased with the first quarter operating performance, posting non-GAAP operating loss above our guidance and positive cash flow from operations," said [Defendant] Nightingale[.]  "***But, we're not satisfied with our revenue growth outlook***."

> \*\*\*

> First Quarter 2024 Financial Summary

> - ***Total revenue of $133.5 million***, representing 14% year-over-year growth. Network services revenue of $106.0 million, representing 12% year-over-year growth.  Security revenue of $24.6 million, representing 16% year-over-year growth.  Network Services include solutions designed to improve performance of websites, apps, APIs, and digital media.  Security includes products designed to protect websites, apps, APIs, and users.

31.    That same day, Fastly hosted the Q1 2024 Earnings Call with investors and

analysts.  During the scripted portion of the Q1 2024 Earnings Call, Defendant Nightingale stated,

in relevant part:

> Now let me turn to address our outlook going forward. Our second-quarter guidance of 6% to 9% year-over-year growth and modified 2024 annual rent of 12% year-over-year growth are not where we expected our business to perform, and of course, are disappointing.

> \*\*\*

> There are a few factors that contributed to a challenging short-term environment. The biggest factor is a reduction of revenue from a small number of our largest customers. The first-quarter revenue from our top 10 customers dropped from 40% to 38%.

> Many of the top 10 accounts run a multi-vendor strategy. And we did see significant volatility here. And there are a few reasons for that. Firstly, historically, Fastly has gradually won greater traffic share in our largest accounts. But with the timing of rate and volume changes, we saw increased volatility this quarter. To be clear, we have not been removed from any of our largest customers and we remain in a strong strategic position, each of them long term.

Secondly, in some accounts, we did see an addition of CDN vendors or reversal of the vendor consolidation we saw last year. And thirdly, we are seeing a slight uptick from the typical level of rerates with our largest customers, but we have not yet seen the commensurate traffic expansion usually associated with this motion.

32.  Also during the scripted portion of the Q1 2024 Earnings Call, Defendant Kisling stated, in relevant part:

[W]e are facing a challenging environment of revenue declines in our largest customers, overshadowing the impact of new customer acquisition and product pipeline. Our guidance reflects these dynamics in our business and the visibility that we have today. We expect a flattish to modest sequential decline in Q2 revenues compared to our Q1 results due to lower traffic, specifically at our largest customers. We also will not benefit in 2024 from the favorable impact of the CDN consolidation that occurred in early 2023 that drove favorable sequential growth in the prior year same period.

33.  Then, on May 2, 2024, during pre-market hours, BoA downgraded Fastly stock from a "Buy" rating to an "Underperform" rating and cut its price target on the stock from $18 per share to a mere $8 per share, noting that "[d]ecelerating growth in Fastly's largest customers, share loss in delivery, and limited visibility in 2H cause us to question a rebound in 2024," and that "[w]hile we continue to like Fastly's positioning in the edge compute market, we see it as a 2025 opportunity instead of a near-term growth driver."

34.  Following these developments, Fastly's stock price fell $4.14 per share, or 32.02%, to close at $8.79 per share on May 2, 2024.

35.  As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

36.  During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so

doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

37.     Additionally, with the market price of Fastly stock artificially inflated based on Defendants' false and misleading statements and omissions, Defendants Nightingale and Kisling sold a substantial amount of Fastly stock during the Class Period.  Specifically, Defendant Nightingale sold 99,348 of his shares of Fastly stock for proceeds of $1,493,447, while Defendant Kisling sold 47,852 of his shares of Fastly stock for proceeds of $674,400, presaging the Company's eventual announcement of disappointing Q1 2024 financial results and revised FY 2024 revenue guidance.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Fastly securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Fastly securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Fastly or its transfer agent and may be notified of

the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Fastly;

- whether the Individual Defendants caused Fastly to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Fastly securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

44.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Fastly  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Fastly securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

47.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Fastly securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Fastly securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

50.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Fastly securities.  Such reports, filings, releases and statements were

16

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Fastly's finances and business prospects.

51.     By virtue of their positions at Fastly, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Fastly, the Individual Defendants had knowledge of the details of Fastly's internal affairs.

53.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Fastly.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Fastly's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Fastly securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Fastly's business and financial condition which were concealed by Defendants,

17

Plaintiff and the other members of the Class purchased or otherwise acquired Fastly securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

54.     During the Class Period, Fastly securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Fastly securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Fastly securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Fastly securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

55.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**<u>COUNT II</u>**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

57.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.     During the Class Period, the Individual Defendants participated in the operation and management of Fastly, and conducted and participated, directly and indirectly, in the conduct of Fastly's business affairs.  Because of their senior positions, they knew the adverse non-public information about Fastly's misstatement of income and expenses and false financial statements.

59.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Fastly's financial condition and results of operations, and to correct promptly any public statements issued by Fastly which had become materially false or misleading.

60.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Fastly disseminated in the marketplace during the Class Period concerning Fastly's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Fastly to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Fastly within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Fastly securities.

61.     Each of the Individual Defendants, therefore, acted as a controlling person of Fastly.  By reason of their senior management positions and/or being directors of Fastly, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Fastly to engage in the unlawful acts and conduct complained of herein.  Each of the Individual

Defendants exercised control over the general operations of Fastly and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

62.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Fastly.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: May 24, 2024                         Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)

20

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

THE SCHALL FIRM
Brian Schall
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
brian@schallfirm.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS