**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com

*Attorneys for Movant Nathan Wiertzema*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN KULA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FASTLY, INC., TODD NIGHTINGALE, and RONALD W. KISLING,<br><br>Defendants. | Case No.: 4:24-cv-03170-JST<br><br>**NATHAN WIERTZEMA'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; AND (2) APPROVAL OF SELECTION OF COUNSEL; AND OPPOSITION TO THE COMPETING LEAD PLAINTIFF MOTIONS**<br><br>Date:          September 26, 2024<br>Time:          2:00 p.m.<br>Courtroom: 6-2nd Floor<br>Judge:         Hon. Jon S. Tigar |

# **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................... 1

II. ARGUMENT ........................................................................................................................ 3

    A. The PSLRA Process for Selecting a Lead Plaintiff ........................................... 3

    B. Mr. Guri Does Not Meet the Rule 23 Requirements. ........................................ 3

    C. Mr. Wiertzema Is the "Most Adequate" Lead Plaintiff. .................................... 6

        1. After Disqualifying Mr. Guri, Mr. Wiertzema Possesses the *"Largest Financial Interest"* ................................................................................ 6

        2. Mr. Wiertzema Satisfies Rule 23's Typicality and Adequacy Requirements. ... 7

    D. No Movant Can Rebut the Strong Presumption in Favor of Appointing Mr. Wiertzema as Lead Plaintiff. ............................................................................... 8

III. LEVI & KORSINSKY, LLP SHOULD BE APPROVED AS LEAD COUNSEL ................... 9

IV. CONCLUSION .................................................................................................................... 9

ii

NATHAN WIERTZEMA'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; AND (2) APPROVAL OF SELECTION OF COUNSEL; AND OPPOSITION TO THE COMPETING LEAD PLAINTIFF MOTIONS

**TABLE OF AUTHORITIES**

**Cases**

*Abrams v. Intuitive Surgical, Inc.*,
   No. 5:13-CV-01920-EJD, 2013 WL 6070031 (N.D. Cal. Nov. 18, 2013) .................................. 3

*Applestein v. Medivation, Inc.*,
   No. C 10-00998 MHP, 2010 WL 3749406 (N.D. Cal. Sep. 17, 2010) ..................................... 6

*In re Aqua Metals Sec. Litig.*,
   No. 17-cv-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018) .................................... 1

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .................................................................................................................. 6

*Camp v. Qualcomm Inc.*,
   Case No.: 18-cv-1208-AJB-BLM, 2019 WL 277360 (S.D. Cal. 2019) .................................... 5

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) .................................................................................................... 3

*Crawford v. Honig*,
   37 F.3d 485 (9th Cir. 1994) ...................................................................................................... 8

*Crews v. Rivian Auto., Inc.*,
   No. 2:22-cv-01524-RGK-Ex, 2022 WL 17883615 (C.D. Cal. July 1, 2022) ............................ 7

*Doherty v. Pivotal Software, Inc.*,
   No. 3:19-cv-03589- CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) .................................. 3

*In re Enzymotec Ltd. Sec. Litig.*,
   Civil Action No. 14–5556, 2015 WL 918535 (D.N.J. Mar. 3, 2015) ........................................ 4

*Ferrari v. Gisch*,
   225 F.R.D. 599 (C.D. Cal. 2004) .............................................................................................. 7

*GAMCO Investors, Inc. v. Vivendi, S.A.*,
   927 F.Supp.2d 88 (SDNY 2013) ............................................................................................... 5

*Garbowski v. Tokai Pharm., Inc.*,
   302 F. Supp. 3d 441 (D. Mass. 2018) ....................................................................................... 5

*In re Gemstar-Tv Guide Int'l, Inc. Sec. Litig.*,
   209 F.R.D. 447 (C.D. Cal. 2002) .............................................................................................. 5

*Hufnagle v. Rino Int'l Corp.*,
   No. CV 10–8695–VBF (VBKx), 2011 WL 710704 (C.D. Cal. Feb. 14, 2011),
   adopted, Nos. CV 10–8695–VBF (VBKx), et. al., 2011 WL 710676 (C.D. Cal.
   Feb. 16, 2011) ........................................................................................................................... 9

*In re InterClous Sys., Inc. Sec. Litig.*,
   Civil Action No. 14-cv-01982 (PGS)(DEA), 2014 WL 12774917 (D.N.J. Nov. 5,
   2014) ..................................................................................................................................... 2, 5

iii

NATHAN WIERTZEMA'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS
MOTION FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; AND (2) APPROVAL OF SELECTION OF COUNSEL;
AND OPPOSITION TO THE COMPETING LEAD PLAINTIFF MOTIONS

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
 136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................................................. 1

*Landry v. Price Waterhouse Chartered Accountants*,
 123 F.R.D. 474 (S.D.N.Y.1989) ........................................................................................... 6

*Lax v. First Merchants Acceptance Corp.*,
 Nos. 97 C 2715, et. al., 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ...................................... 7

*Nager v. Websecure, Inc.*,
 Nos. 97-10662-GAO, et. al., 1997 WL 773717 (D. Mass. Nov. 26, 1997) .......................... 4

*In re Olsten Corp. Securities Litig.*,
 3 F. Supp. 2d 286 (E.D.N.Y. 1998) ....................................................................................... 7

*In re Peregrine Sys., Inc. Sec. Litig.*,
 No. CIV.02 CV 870-J(RBB), 2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ..................... 6

*Pub. Emples. Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*,
 No. 16-cv-10632, 2020 WL 919249 (N.D. Ill. Feb. 26, 2020) ............................................. 5

*Reinschmidt v. Zillow, Inc.*,
 No. C12-2084-RSM, 2013 WL 1092129 (W.D. Wash. Mar. 14, 2013*)* ............................. 4

*Robb v. Fitbit Inc.*,
 Case No. 16-cv-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016) .......................... 1

*Scheller v. Nutanix, Inc.*,
 Case No. 19-cv-01651-WHO, 2021 WL 2410832 (N.D. Cal. June 10, 2021) .................... 6

*Shiring v. Tier Technologies, Inc.*,
 244 F.R.D. 307 (E.D. Va. 2007) ........................................................................................... 4

*In re Stitch Fix, Inc. Sec. Litig.*,
 393 F. Supp. 3d 833 (N.D. Cal. 2019) ................................................................................... 3

*In re Surebeam Corp. Sec. Litig.*,
 No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Dec. 31, 2003) ........................... 4

*Takeda v. Turbodyne Techs., Inc.*,
 67 F. Supp. 2d 1129 (C.D. Cal. 1999) ................................................................................... 2

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
 Civil Action No. 07–177 (FLW), 2007 WL 2683636 (D.N.J. Sept. 7, 2007) ...................... 4

*Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*,
 Nos. 17-cv-04732 VAP (KSx), et. al., 2017 WL 10667732 (C.D. Cal. Sep. 29,
 2017) ..................................................................................................................................... 7

**Statutes**

15 U.S.C. § 78u-4 ..................................................................................................................*passim*

**Other Authorities**

Pranav Karnad, *What are fractional shares in US stock market? How to buy them?* https://fi.money/guides/us-stocks/what-are-fractional-shares-in-us-stock-market-how-to-buy-them#frequently-asked-questions ................................................................................5

TD Ameritrade, *What are Fractional Shares?* https://www.td.com/ca/en/investing/direct-investing/articles/fractional-shares ..............................5

Theresa W. Carey, *Comparing Fractional Trading Offerings*, https://www.investopedia.com/comparing-fractional-trading-offerings-at-online-brokers-4847173 ................................................................................................................5

NATHAN WIERTZEMA'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; AND (2) APPROVAL OF SELECTION OF COUNSEL; AND OPPOSITION TO THE COMPETING LEAD PLAINTIFF MOTIONS

## I. PRELIMINARY STATEMENT

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires courts to appoint a lead plaintiff in securities class actions asserting violations of the Securities Exchange Act of 1934. It instructs courts to appoint as lead plaintiff the movant with the largest financial interest in the litigation, so long as that movant satisfies the adequacy and typicality requirements under Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B). Under that directive, Nathan Wiertzema is the "most adequate plaintiff" because he is the movant with the largest financial interest and otherwise satisfies the typicality and adequacy prongs of the Federal Rules of Civil Procedure 23 ("Rule 23").

The PSLRA states that the movant with the "largest financial interest" that is otherwise adequate and typical shall be appointed as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Courts in the Ninth Circuit have considered several different methodologies when determining a movant's financial interest, including the well-known *Olsten/Lax* factors: (1) number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *Robb v. Fitbit Inc.*, Case No. 16-cv-00151-SI, 2016 WL 2654351, at *3 (N.D. Cal. May 10, 2016); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015). Most courts have found that the fourth factor, approximate loss suffered, is the most important factor and afford it the greatest weight in determining which movant has the largest financial interest. *Id.* (noting that "the last of these factors typically carries the most weight"); *see also In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 WL 4860188, at *3 (N.D. Cal. May 23, 2018) (equating losses with greatest financial interest).

| Movant | Gross Shares Purchased | Net Shares Retained | Net Funds Expended | Claimed Losses |
|---|---|---|---|---|
| Olger Guri | 65,009 | 65,009 | $866,218.92 | $294,792.00 |
| Nathan Wiertzema | 45,590 | 37,722 | $576,787.55 | $211,798.09 |
| Anna Krusanova | 12,965 | 12,965 | $181,510.00 | $74,181.84 |
| Diego Alcoceba | 1,616 | 1,616 | $27,023.22 | $14,337.62 |

*See* ECF Nos. 15-3; 19-3; 25-3; and 28-4.

Olger Guri, the only movant claiming a larger financial interest than Mr. Wiertzema, does not meet Rule 23's typicality requirements and is subject to unique defenses. First, Mr. Guri's certification

and loss chart do not match, the certification shows fractional shares where his loss chart does not. *See* ECF Nos. 25-3 and 25-5. Second, Mr. Guri engaged in an atypical trading strategy, similar to algorithmic traders. Mr. Guri's trading strategy will be put at issue and cast doubt on the presumption of class-wide reliance. *See, e.g.*, *In re InterClous Sys., Inc. Sec. Litig.*, Civil Action No. 14-cv-01982 (PGS)(DEA), 2014 WL 12774917, at *1 (D.N.J. Nov. 5, 2014) (rejecting hedge fund as lead plaintiff because "substantial questions impinging upon the Court's typicality analysis are presented by QuantX's seemingly unique trading strategy, which incorporates, among other things, an algorithmic trading approach, complex mathematical formulae, and other mechanisms and methodologies that do not rely, as the majority of individual lay investors do, on information made available to the public intended to influence investor decision making"). And lastly, since fractional shares do not trade openly on the NYSE, Mr. Guri would not be typical of class members who purchased on a US stock exchange.

Mr. Wiertzema is the movant with the next "largest financial interest" in the litigation once Mr. Guri is eliminated. With $211,798.09 of potential recoverable losses, Mr. Wiertzema has a strong incentive to vigorously represent the class's claims. Moreover, Mr. Wiertzema has made a preliminary showing of the typicality and adequacy requirements of Rule 23, which is all that is required at this stage in the litigation. *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d. 1129, 1136 (C.D. Cal. 1999). Mr. Wiertzema is typical of the other class members insofar as he acquired Fastly, Inc. ("Fastly" or the "Company") securities during the Class Period and was damaged as a result. Mr. Wiertzema does not have any interests adverse to the class and, as demonstrated in his signed declaration accompanying his motion, is ideally suited to serve as the lead plaintiff given Mr. Wiertzema's 5 years of investing experience and bachelor's degree in business. *See* ECF No. 15-5.

As Mr. Wiertzema is the movant with the largest financial interest in the outcome of the Action and satisfies Rule 23's typicality and adequacy requirements, Mr. Wiertzema is entitled to the presumption of being the "most adequate plaintiff". 15 U.S.C. § 78u-4(a)(3)(B). As the other movants cannot rebut this presumption with proof that Mr. Wiertzema is somehow atypical or inadequate, he is entitled to be appointed as the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, for these reasons, Mr. Wiertzema respectfully requests that the Court grant his motion in its entirety and deny

the competing motions.

## II. ARGUMENT

### A. The PSLRA Process for Selecting a Lead Plaintiff

Under the PSLRA, this Court is directed to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a) and (a)(3)(B).

In interpreting the PSLRA, the Ninth Circuit formulated a clear process for selecting a lead plaintiff. *See Doherty v. Pivotal Software, Inc.*, No. 3:19-cv-03589- CRB, 2019 WL 5864581, at *4-5 (N.D. Cal. Nov. 8, 2019); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833 (N.D. Cal. 2019); *Abrams v. Intuitive Surgical, Inc.*, No. 5:13-CV-01920-EJD, 2013 WL 6070031, at *2 (N.D. Cal. Nov. 18, 2013) (citing *In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir.2002)). "[T]he courts must compare the financial stakes of the various plaintiffs, determine which has the most to gain from the lawsuit, and determine whether that plaintiff satisfies Rule 23, particularly its typicality and adequacy requirements." *Id*. (citing *In re Cavanaugh*, 306 F.3d at 730). The movant with the largest financial interest that satisfies Rule 23 is the "presumptive lead plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cavanaugh*, 306 F.3d at 730. "If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id*. Third, the court must then consider any competing lead plaintiff movants attempts to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23. *Id*.

### B. Mr. Guri Does Not Meet the Rule 23 Requirements.

Mr. Guri is inadequate to represent the interests of the Class. Thus, even if the Court determines that Mr. Guri has the largest financial interest in the Action (which it should not), Mr. Guri is disqualified from serving as the lead plaintiff as he is inadequate and is subject to unique defenses as

evidenced by the discrepency in his initial certification and loss chart filed in support of his motion for appointment as the lead plaintiff.

First, there is a clear inconsistency between the trade details in Mr. Guri's cerification and his loss chart. Mr. Guri's certification shows the number of Fastly shares purchased as 65,009.49371, compared to the loss chart that shows 65,009. *See* ECF Nos. 25-3 and 25-5. The fractional share purchase listed in the certification is a bizarre number. It is perplexing that Mr. Guri would buy that fractional amount when he did not purchase with a flat or whole dollar amount, according to his certification and loss chart. Instead, each share he purchased cost $13.3246. It therefore suggests that Mr. Guri was using an atypical trading strategy, with half the transaction unidentified and outside the Class Period. This error raises serious concerns about Mr. Guri's transparency, ability and commitment to adequately serve as the lead plaintiff. *See Shiring v. Tier Technologies, Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, Civil Action No. 07–177 (FLW), 2007 WL 2683636, at *8-9, n.8 (D.N.J. Sept. 7, 2007) (finding movant inadequate, including because of "misinformation" stated in certification); *Nager v. Websecure, Inc.,* Nos. 97-10662-GAO, et. al., 1997 WL 773717, at *1 n.1 (D. Mass. Nov. 26, 1997) (finding that although"[t]he inaccuracy [in the movant's affidavit] may be explainable, . . . it casts sufficient doubt on [the movant's] adequacy as a representative plaintiff that he should be excluded" from serving as lead plaintiff); *In re Enzymotec Ltd. Sec. Litig.*, Civil Action No. 14–5556, 2015 WL 918535, at *3 (D.N.J. Mar. 3, 2015) (finding the presumptive lead plaintiff would be inadequate to represent the class given the unique defense with respect to its certification); *Reinschmidt v. Zillow, Inc.,* No. C12-2084-RSM, 2013 WL 1092129, at *4 (W.D. Wash. Mar. 14, 2013*)* (finding that "upon review of [movant's] trading activity he may be subject to a unique defense that could become the focus of the litigation"); *In re Surebeam Corp. Sec. Litig.,* No. 03 CV 1721JM(POR), 2004 WL 5159061, at *7 (S.D. Cal. Dec. 31, 2003) (citing cases and stating "[o]n more than one occasion courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary."). This is further corroborated by the absence of information provided about his background. He writes only that he is a business owner. *See* ECF No. 25-6. The failure of Mr. Guri to provide true and accurate

4

NATHAN WIERTZEMA'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; AND (2) APPROVAL OF SELECTION OF COUNSEL; AND OPPOSITION TO THE COMPETING LEAD PLAINTIFF MOTIONS

information at this early procedural stage warrants him being excluded from consideration for appointment as the lead plaintiff. *See Camp v. Qualcomm Inc.*, Case No.: 18-cv-1208-AJB-BLM, 2019 WL 277360, at *3 (S.D. Cal. 2019) (failure to provide background details deemed disqualifying); *Garbowski v. Tokai Pharm., Inc.*, 302 F. Supp. 3d 441, 449 (D. Mass. 2018) (finding movant's submissions "did not provide sufficient information for the court to decide whether [the movant] satisfied all of the PSLRA's requirements for serving as lead plaintiff"); *In re Gemstar-Tv Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (finding that the "record contains no evidence that [the individual movants] are competent to serve as lead plaintiffs" or "to supervise the . . . attorneys representing them").

Second, Mr. Guri fails to satisfy the typicality prong of Rule 23 because he engaged in an atypical trading strategy, similar to black box / algorithmic traders. *See In re InterClous Sys., Inc. Sec. Litig.*, 2014 WL 12774917, at *1; *Pub. Emples. Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*, No. 16-cv-10632, 2020 WL 919249, at *5 (N.D. Ill. Feb. 26, 2020) ( "plaintiff had separate valuation algorithm that had nothing to do with stock price and did not factor in fraudulent statements; substantial post-disclosure purchases underscored non-reliance on publicly-available information") (discussing *GAMCO Investors, Inc. v. Vivendi, S.A.*, 927 F.Supp.2d 88, 100-102 (SDNY 2013)). By purchasing fractional shares, which are not allowed on US stock exchanges,[1] Mr. Guri would be an atypical representative for shareholders who purchased on the NYSE and should not be appointed lead plaintiff.

A movant that "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class" cannot be

---

[1] "Fractional shares don't trade openly on the NYSE. To buy or sell them, you will have to go through a brokerage firm that offers this service." Pranav Karnad, *What are fractional shares in US stock market? How to buy them?* (last visited August 5, 2024), https://fi.money/guides/us-stocks/what-are-fractional-shares-in-us-stock-market-how-to-buy-them#frequently-asked-questions; "[E]xchanges have not enabled fractional share trading." Theresa W. Carey, *Comparing Fractional Trading Offerings*, Investopedia (December 4, 2020), https://www.investopedia.com/comparing-fractional-trading-offerings-at-online-brokers-4847173; "Fractional shares can't be bought or sold on the open market. You can only purchase and sell these shares through participating brokerages." TD Ameritrade, *What are Fractional Shares?* (last visited August 6, 2024), https://www.td.com/ca/en/investing/direct-investing/articles/fractional-shares.

appointed. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Specifically, shareholders like Mr. Guri who engage in trading strategies that pose unique "reliance" issues that suggest they did not rely on the alleged misstatements and omissions. Reliance is a necessary element for the application of the "fraud on the market" doctrine under *Basic Inc. v. Levinson*, 485 U.S. 224, 228 (1988), and the Section 10(b) and Rule 10b-5 claims asserted against Defendants. *See Scheller v. Nutanix, Inc.*, Case No. 19-cv-01651-WHO, 2021 WL 2410832, at *6 (N.D. Cal. June 10, 2021) (disqualifying movant in light of "fraud-on-market reliance" arguments); *Applestein v. Medivation, Inc.*, No. C 10-00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sep. 17, 2010) (disqualifying movant based on "serious concerns about his typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions"); *In re Peregrine Sys., Inc. Sec. Litig.*, No. CIV.02 CV 870-J(RBB), 2002 WL 32769239, at *7 (S.D. Cal. Oct. 11, 2002) ("[W]hether plaintiffs actually relied on such information in their decision to purchase, [is a] difficult factual questions which cannot be resolved at this stage of the litigation. However, whether these defenses will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members.") (quoting *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y.1989)). Based on the discrepancy between his certification and his loss chart, and his atypical trading strategy, Mr. Guri would be subject to unique defenses and should not be appointed class representtive.

**C. Mr. Wiertzema Is the "Most Adequate" Lead Plaintiff.**

    **1. After Disqualifying Mr. Guri, Mr. Wiertzema Possesses the *"Largest Financial Interest"*.**

The PSLRA provides a presumption that the "most adequate plaintiff" to serve as lead plaintiff is the movant with the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Mr. Wiertzema is entitled to that presumption because, relative to the other movants, Mr. Wiertzema's losses are far greater. In accordance with *In re Olsten Corp. Sec. Litig. and Lax v. First Merchants Acceptance Corp.*, "courts use the *Lax-Olsten* four-factor test to approximate economic losses: (1) the number of shares purchased during the class period; (2) the number of net

6

NATHAN WIERTZEMA'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; AND (2) APPROVAL OF SELECTION OF COUNSEL; AND OPPOSITION TO THE COMPETING LEAD PLAINTIFF MOTIONS

shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *Crews v. Rivian Auto., Inc.*, No. 2:22-cv-01524-RGK-Ex, 2022 WL 17883615, at *4 (C.D. Cal. July 1, 2022) (internal quotations removed); *see also Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715, et. al., 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997); *In re Olsten Corp. Securities Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998).

Of the four factors, "[c]ourts in the Ninth Circuit have tended to give the final factor the most emphasis". *Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.,* Nos. 17-cv-04732 VAP (KSx), et. al., 2017 WL 10667732, at *5 (C.D. Cal. Sep. 29, 2017). In this instance, Mr. Wiertzema is the movant with the largest loss under all four *Lax-Olsten* factors.

| Movant | Gross Shares Purchased | Net Shares Retained | Net Funds Expended | Claimed Losses |
|---|---|---|---|---|
| ~~Olger Guri~~ | ~~65,009~~ | ~~65,009~~ | ~~$866,218.92~~ | ~~$294,792.00~~ |
| Nathan Wiertzema | 45,590 | 37,722 | $576,787.55 | $211,798.09 |
| Anna Krusanova | 12,965 | 12,965 | $181,510.00 | $74,181.84 |
| Diego Alcoceba | 1,616 | 1,616 | $27,023.22 | $14,337.62 |

*See* ECF Nos. 15-3; 19-3; 25-3; and 28-4.

After disqualigying Mr. Guri, Mr. Wiertzema expended over $395,000 more and lost over $137,000 more as compared to the next closest movant, Anna Krusanova. Accordingly, Mr. Wiertzema has the largest financial interest in this matter.

**2. Mr. Wiertzema Satisfies Rule 23's Typicality and Adequacy Requirements.**

Not only does Mr. Wiertzema possess the largest financial interest of all movants pursuant to the PSLRA and the widely accepted *Olsten/Lax* Factors, but he also satisfies the typicality and adequacy prongs of Rule 23, requiring his appointment as lead plaintiff.

Typicality exists where the claims of the representative parties "arise from the same event or practice or course of conduct that gives rise to the claims of the class members and are based on the same legal theory." *Ferrari v. Gisch*, 225 F.R.D. 599, 606 (C.D. Cal. 2004) (internal quotations removed). Mr. Wiertzema's claims are typical of those of other Class members because, like other Class members, he acquired Fastly securities during the Class Period at prices artificially inflated by Defendants' misrepresentations and/or omissions that form the basis of the Action. Moreover, Mr.

7

NATHAN WIERTZEMA'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; AND (2) APPROVAL OF SELECTION OF COUNSEL; AND OPPOSITION TO THE COMPETING LEAD PLAINTIFF MOTIONS

Wiertzema's claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.

To satisfy the adequacy requirement at this stage of the proceedings, Mr. Wiertzema must make a preliminary showing that his interests are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between his interests and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B); *see Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) (citation omitted). Mr. Wiertzema has no conflicts with other Class Members, nor is there evidence of any antagonism between Mr. Wiertzema's interest and those of the Class.

Finally, Mr. Wiertzema has further demonstrated his adequacy by submitting a declaration in support of his Motion, attesting that he is ready, willing, and able to oversee this litigation. In the declaration, Mr. Wiertzema provided his education, employment, and years of investing experience. ECF No. 15-5. Mr. Wiertzema considers himself to be a sophisticated investor, having been investing in the stock market for 5 years. *Id*. He resides in Phoenix, Arizona, and possesses a bachelor's degree in business. *Id*. Mr. Wiertzema is currently self-employed as a general contractor. *Id*. Further, in the certification and declaration, Mr. Wiertzema states his familiarity with, and willingness to take on, the duties of a lead plaintiff and class representative under the PSLRA and Rule 23. *See* ECF Nos. 15-2; 15-5 (PSLRA Certification & Mr. Wiertzema's Declaration).

Mr. Wiertzema, therefore, is the movant for lead plaintiff that has the largest financial interest in the Action and otherwise meets the requirements of Rule 23. Accordingly, Mr. Wiertzema is entitled to the presumption that he is the "most adequate plaintiff" and that he should be appointed as the lead plaintiff. 15 U.S.C § 78u-4(a)(3)(B)(iii)(II).

**D. No Movant Can Rebut the Strong Presumption in Favor of Appointing Mr. Wiertzema as Lead Plaintiff.**

By having timely filed a motion for appointment as the lead plaintiff, possessing the largest financial interest in the Action of all movants, and sufficiently making a preliminary, *prima facie* showing of typicality and adequacy, Mr. Wiertzema has fulfilled the PSLRA's requirements to become the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (discussing requirements to become

the "most adequate plaintiff"). Mr. Wiertzema, therefore, is entitled to the presumption that he shall be appointed as the lead plaintiff in the Action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (stating the court "shall appoint as the lead plaintiff" the "most adequate plaintiff"). Mr. Wiertzema's presumption as the "most adequate plaintiff" may only be rebutted upon proof by a class member that Mr. Wiertzema "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."15 U.S.C § 78u-4(a)(3)(B)(iii)(II); *In re Cavanaugh*, 306 F.3d at 741. Absent proof rebutting the presumption, Mr. Wiertzema is entitled to be appointed as the lead plaintiff. *See Hufnagle v. Rino Int'l Corp*., No. CV 10–8695–VBF (VBKx), 2011 WL 710704, at *6 -9 (C.D. Cal. Feb. 14, 2011), adopted, Nos. CV 10–8695–VBF (VBKx), et. al., 2011 WL 710676 (C.D. Cal. Feb. 16, 2011) (appointing the most adequate plaintiff where competing movants failed to submit proof of unique defense). This is something that the other movants cannot do. Accordingly, Mr. Wiertzema's motion should be granted in its entirety.

### III. LEVI & KORSINSKY, LLP SHOULD BE APPROVED AS LEAD COUNSEL.

This Court should approve Mr. Wiertzema's selection of Levi & Korsinsky as Lead Counsel. The PSLRA vests authority in the lead plaintiff to select and retain lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v). Numerous courts throughout the country have appointed Levi & Korsinsky as lead counsel in securities class action lawsuits. *See* ECF No. 15-6. With approximately 30 attorneys across five different offices, including an office in this district, Levi & Korsinsky stands ready, willing and able to prosecute this case. *Id*.

### IV. CONCLUSION

For the foregoing reasons, Mr. Wiertzema respectfully requests that the Court grant his Motion and enter an order: (1) appointing Mr. Wiertzema as Lead Plaintiff; (2) approving his selection of Levi & Korsinsky as Lead Counsel for the Class; and (3) granting such other relief as the Court may deem just and proper.

*[Signature on following page]*

Dated: August 6, 2024

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com

*Attorneys for Nathan Wiertzema and Proposed Lead Counsel for the Class*

10

NATHAN WIERTZEMA'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; AND (2) APPROVAL OF SELECTION OF COUNSEL; AND OPPOSITION TO THE COMPETING LEAD PLAINTIFF MOTIONS