POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant*
*Olger Guri and Proposed Co-Lead*
*Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| KEN KULA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FASTLY, INC., TODD NIGHTINGALE, and RONALD W. KISLING,<br><br>Defendants. | Case No.: 4:24-cv-03170-JST<br><br>REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF OLGER GURI FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION<br><br><u>CLASS ACTION</u><br><br>Date:  September 26, 2024<br>Time:  2:00 p.m.<br>Judge:  Hon. Jon S. Tigar<br>Courtroom:  6 – 2nd Floor |

Movant Guri[1] respectfully submits this reply memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz and Schall as Co-Lead Counsel (Dkt. No. 25); and in opposition to the competing motion of Wiertzema (Dkt. No. 15).[2]

## I.    PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  This presumption can only be rebutted upon "***proof***" that the presumptive "most adequate plaintiff" is atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added); *see also Yen Hoang v. ContextLogic, Inc.*, No. 21-cv-03930-BLF, 2022 WL 1539533, at *3 (N.D. Cal. May 16, 2022) ("The ['most adequate plaintiff'] presumption may be rebutted ***only upon proof*** that the presumptive lead plaintiff 'will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'") (emphasis added).

Here, as discussed at length in his moving and opposition briefs (Dkt. Nos. 25, 35), Guri satisfies all of the statutory criteria to be entitled to the "most adequate plaintiff" presumption.  First, Guri has the largest financial interest in this litigation by a significant margin.  Guri incurred a loss of $294,792 in connection with his Class Period transactions in Fastly securities, over *$83,000* greater than Wiertzema, the only competing movant.  *See* Dkt. No. 25-3.  Second, as set

[1] All capitalized terms herein are defined in Guri's moving and opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 25, 35.
[2] Initially, two other competing putative class members, Krusanova and Alcoceba, filed similar motions.  Dkt. Nos. 19, 28.  On August 6, 2024, Krusanova and Alcoceba each filed notices withdrawing their motions.  *See* Dkt. Nos. 34, 37.

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF OLGER GURI FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION - 4:24-cv-03170-JST

forth in greater detail in his moving and opposition briefs, Guri also satisfies the typicality and adequacy criteria of Rule 23. *See* Dkt. No. 25 at 8-11; Dkt. No. 35 at 3-4. As such, Guri is entitled to the PSLRA's rebuttable presumption that he is the "most adequate plaintiff" of the Class—that is, the presumptive Lead Plaintiff of the Class.

Nevertheless, Wiertzema incorrectly argues that Guri is inadequate and/or atypical under Rule 23. Principally, Wiertzema seizes on the fact that Guri's Class Period transactions in Fastly stock resulted in the acquisition of fractional shares, erroneously arguing that this evidences unusual trading that makes him atypical of the Class and subject to unique defenses, while also creating a disqualifying "discrepancy" between the figures presented in Guri's PSRLA Certification (Dkt. No. 25-5) and damages analysis (Dkt. No. 25-3). Wiertzema also claims that Guri has not provided the Court with sufficient information about himself to enable a Rule 23 adequacy evaluation because he supposedly told the Court nothing more than his occupation.

Wiertzema's speculative arguments are wholly without merit. Guri's purchase of fractional shares of Fastly stock merely reflects the fact that Guri placed an order in terms of the funds he wished to expend, rather than the number of shares he wished to purchase—the result being that Guri acquired fractional shares simply because that the dollar sum that he spent was not evenly divisible by the market price of Fastly stock when his trade was executed. There is nothing atypical or otherwise disqualifying about such acquisitions. Meanwhile, the purported "discrepancy" between Guri's Certification and damages analysis is consistent with the respective requirements and purposes of each document. The PSLRA Certification duly attests in full to Guri's Class Period purchases of Fastly shares, as the statute requires, and thus lists the fractional shares (65,009.49371), whereas the damages analysis merely provides the methodology used to calculate Guri's financial interest in this litigation, and thus rounds this figure down to 65,009—

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF OLGER GURI FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION - 4:24-cv-03170-JST

an adjustment with only a microscopic impact on the financial interest analysis.  Finally, Wiertzema's inaccurate claim about Guri's adequacy proffer omits to mention additional biographical information that Guri *did* provide—including his age, educational background, city and state of residence, and investment experience—as well as Guri's detailed attestations about his motivation and readiness to serve as Lead Pliantiff in this litigation.  *See generally* Dkt. No. 25-6.  Strikingly, Guri has provided the Court with precisely the same amount of biographical information that Wiertzema himself provided.  Wiertzema's opposition arguments thus uniformly fall short of the high standard of "proof" necessary under the PSRLA to rebut Guri's status as the presumptive Lead Plaintiff in this Action.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

For the reasons set forth in his moving and opposition briefs (*see* Dkt. Nos. 25, 35), Guri respectfully submits that he is the "most adequate plaintiff" of the Class within the meaning of the PSLRA and that the Court should grant his motion in its entirety and deny Wiertzema's competing motion.

## II.  ARGUMENT

### A.  Guri is Typical and Adequate under Rule 23 and Not Subject to Unique Defenses

#### 1.  Guri's Purchase of Fractional Shares Has No Bearing on his Adequacy or Typicality, Nor Subjects Him to Unique Defenses

The crux of Wiertzema's opposition to Guri's motion is that Guri's sole purchase of Fastly shares during the Class Period resulted in the acquisition of fractional shares (specifically, 65,009.49371) rather than a whole number of shares.  Based on this fact alone, Wiertzema claims, without any further evidence, that "Guri was using an atypical trading strategy, with half the transaction [at issue] unidentified and outside the Class Period" and "engaged in an atypical trading strategy similar to black box / algorithmic traders" because "fractional shares . . . are not

3

allowed on US stock exchanges[.]" Dkt. No. 36 at 4-5. Wiertzema further argues that because Guri's PSLRA Certification facially reflects the purchase of fractional shares ("65,009.49371") (*see* Dkt. No. 25-5 at *3), yet Guri's damages analysis "shows 65,009" (Dkt. No. 25-3), this purported "failure . . . to provide true and accurate information" requires the Court to deny Guri's motion. Dkt. No. 36 at 4-5.

Wiertzema's arguments fail. As a threshold matter, because Guri has made the requisite *prima facie* showing that he satisfies the criteria to be entitled to the PSLRA's "most adequate plaintiff" presumption, the burden at this stage is on Wiertzema to adduce "***proof***" that Guri is inadequate to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mere speculation and innuendo, which is all that Wiertzema can muster, is insufficient. *See*, *e.g.*, *Doherty v. Pivotal Software, Inc.*, No. 19-CV-03589-CRB, 2019 WL 5864581, at *6 (N.D. Cal. Nov. 8, 2019) ("The PSLRA requires 'proof' to overcome the presumption [] entitling the plaintiff with the largest financial interest in the litigation to appointment as lead plaintiff; speculative assertions are insufficient."); *Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWx), 2012 WL 682882, at *3 n.6 (N.D. Cal. Mar. 2, 2012) ("[S]peculative assertions are insufficient to rebut the lead plaintiff presumption[.]"). To wit, Wiertzema claims that "half the transaction" involving fractional shares was "unidentified and outside the Class Period", but does not provide any basis for this conjecture. Nor, for that matter, has Wiertzema explained how or why "half" of one of Guri's transactions in Fastly stock could have occurred "outside the Class Period". Having devoted only a single confusing sentence to this hypothesis, one can only guess at Wiertzema's meaning.

Similarly unsupported is the claim that Guri's purchase of fractional shares evidences an "atypical trading strategy similar to black box / algorithmic traders". What purported "strategy" does Wiertzema suppose that Guri was pursuing? How does this strategy make him atypical of

4

other Class members?  How did purchasing fractional shares further his goals?  Wiertzema's conclusory assertion does not even attempt to address these questions, let alone answer them.  By contrast, the cases he cites in support of his argument reflect detailed findings regarding the trading practices at issue.  In *In re InterClous Sys., Inc. Sec. Litig.*, 2014 WL 12774917 (D.N.J. Nov. 5, 2014), the court found that a movant's "unique trading strategy" incorporated "an algorithmic trading approach, complex mathematical formulae, and other mechanisms and methodologies that do not rely, as the majority of individual lay investors do, on information made available to the public intended to influence investor decisionmaking[.]" *Id.* at *1. Likewise, *Pub. Emples. Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*, No. 16-cv-10632, 2020 WL 919249 (N.D. Ill. Feb. 26, 2020) referenced a case in which the "plaintiff had separate valuation algorithm that had nothing to do with stock price and did not factor in fraudulent statements; substantial post-disclosure purchases underscored non-reliance on publicly-available information." *Id.* at *5.  Here, Wiertzema has not even argued, let alone shown, that Guri's Class Period trading in Fastly stock shared any of the foregoing features or anything analogous.

Contrary to Wiertzema's conjecture, there is nothing unusual about the fact that Guri purchased fractional shares of Fastly stock during the Class Period.  Indeed, mainstream brokerage firms routinely advertise services that enable their clients to purchase fractional shares of stock.  *See*, *e.g.*, Charles Schwab, "Schwab Stock Slices™," https://www.schwab.com/fractional-shares-stock-slices (last visited Aug. 13, 2024) (advertising "Schwab Stock Slices" as "an easy way to buy fractional shares (or whole shares) for a set dollar amount."); Fidelity, "Fractional shares in focus," https://www.fidelity.com/learning-center/trading-investing/fractional-shares) (last visited Aug. 13, 2024) ("This new trading feature lets you buy the stock of companies or ETFs based on a dollar amount, as opposed to how many

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF OLGER GURI FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION - 4:24-cv-03170-JST

whole shares you are able to buy for the amount you want to invest."). Guri's acquisition of fractional shares merely reflects the fact that he placed a purchase order with his brokerage firm expressed in terms of the dollar amount that he wished to spend on Fastly stock, rather than in terms of the number of shares of Fastly stock that he wished to buy. As a result, when the allocated dollar amount did not align with a whole number of Fastly shares at their then-current market price (*i.e.*, was not evenly divisible by the market price of Fastly stock), Guri's purchase order necessarily resulted in his acquisition of fractional shares. Moreover, considering that the sole fractional share that Guri purchased (.49371 of one share) comprises nothing more than a miniscule percentage of his entire investment, which also included **65,009 whole shares**, Guri respectfully submits that Wiertzema's myopic focus on this aspect of his investment is misplaced.

Wiertzema attempts to paint the purchase of fractional shares as something "atypical," claiming that "fractional shares don't trade openly on the NYSE" and an investor "can only purchase and sell [fractional] shares through participating brokerages." Dkt. No. 36 at 5 n.1. Yet the overwhelming majority of investors—almost certainly including Wiertzema himself and most of the Class members in this litigation—trade on the NYSE *only* through the services of a broker. "Because securities exchanges only accept orders from individuals or firms who are members of that exchange, individual traders and investors need the services of exchange members"—*i.e.*, brokers. *See* Investopedia, "Broker: Definition, Types, Regulation, and Examples," https://www.investopedia.com/terms/b/broker.asp#toc-what-is-a-broker (last visited Aug. 13, 2024). Guri happened to purchase his Fastly shares through a broker that offered this particular service, and presumably he is far from the only Class member who did so. *See*, *e.g.*, *Bannerjee v. Avinger, Inc.*, No. 17-CV-03400-CW, 2017 WL 4552063, at *3 (N.D. Cal. Oct. 11, 2017) (finding movant not subject to unique defense by virtue of an "issue . . . [that] will be common to

many class members"). There is thus no basis to claim that the circumstances of Guri's purchases make him an atypical Class member or otherwise subject to unique defenses.

Nor is there any "clear inconsistency between the trade details in [Guri's] certification and his loss chart", as Wiertzema claims. Guri's certification shows the number of Fastly shares purchased as "65,009.49371, compared to the loss chart that shows 65,009." Dkt. No. 36 at 4. This argument fails. The PSLRA requires that each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification that "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(A)(iv). The PSLRA does not require that a movant provide any damages analysis whatsoever, let alone mandate a damages analysis in any particular format or subject to any specific requirements. Here, pursuant to the statute, Guri duly submitted a certification setting forth his transactions in Fastly stock during the Class Period, accurately reflecting a purchase of 65,009.49371 shares on May 1, 2024 at a purchase price of $13.3246 per share. *See* Dkt. No. 25-5 at *3. Guri likewise submitted a damages analysis to support his claimed financial interest in this litigation. *See generally* Dkt. No. 25-3. Rather than calculate his approximate losses based on the fractional share of Fastly stock that Guri acquired on May 1, 2024 (.49371 shares), Guri's damages analysis simply rounded this figure down to 65,009 shares—a miniscule adjustment with no meaningful impact on Guri's claimed financial interest. The purported "discrepancy" that Wiertzema claims to be disqualifying is nothing more than the difference between the fractional shares that Guri purchased during the Class Period and the rounded figure used to calculate Guri's financial interest.

### 2. Guri Has Provided the Court with Sufficient Information to Assess His Adequacy

Wiertzema also argues that Guri is inadequate because of "the absence of information provided about his background" in his motion papers, claiming that Guri has told the Court "only that he is a business owner." Dkt. No. 36 at 4. This argument is squarely at odds with the record. In the Declaration filed with his motion papers (Dkt. No. 25-6), Guri did far more than tell the Court "only that he is a business owner." Rather, in addition to stating his occupation, he also provided his current city and state of residence, information about his educational background, his age, and the number of years investing in the securities markets. *Id.* ¶ 2. Beyond his biographical information, Guri also attested at length to, *inter alia*, his reasons for seeking appointment as Lead Plaintiff, his communications with his counsel before filing his motion, his understanding of the significance of his motion, and his readiness to undertake the responsibilities of a Lead Plaintiff on behalf of the Class in this litigation. *See id.* ¶¶ 3-11. The Court should not credit Wiertzema's effort to diminish Guri's robust adequacy proffer.

Further undermining Wiertzema's argument is the fact that Wiertzema himself provided *precisely the same* amount of biographical information as Guri in the Declaration that Wiertzema submitted with his own motion papers. *See* Dkt. No. 15-5 ¶ 2 (detailing Wiertzema's current residence, educational background, employment, age, and number of years investing in the securities markets). Assuming *arguendo* that Wiertzema were correct, and Guri's adequacy proffer is too meager for the Court to grant his motion, then plainly Wiertzema's own motion must be denied for the same reason.

## III.    CONCLUSION

For the foregoing reasons and the reasons stated in his moving and opposition briefs (Dkt. Nos. 25, 35), Guri respectfully requests that the Court issue an Order: (1) appointing Guri as Lead

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF OLGER GURI FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION - 4:24-cv-03170-JST

Plaintiff for the Class; and (2) approving Guri's selection of Pomerantz and Schall as Co-Lead Counsel for the Class.

Dated:  August 13, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Olger Guri and Proposed Co-Lead Counsel for the Class*

THE SCHALL FIRM
Brian Schall
Brian R. England
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
brian@schallfirm.com
Briane@schallfirm.com

*Counsel for Lead Plaintiff Movant Olger Guri and Proposed Co-Lead Counsel for the Class*

9

## **PROOF OF SERVICE**

I hereby certify that on August 13, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF OLGER GURI FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION - 4:24-cv-03170-JST