UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE FASTLY, INC. SECURITIES
LITIGATION

Case No. 4:24-cv-03170-JST

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS**

Re: ECF No. 55

Before the Court is Defendants' motion to dismiss the amended complaint ("AC").  ECF No. 53.  The Court will grant the motion in part and deny it in part.

I.    **BACKGROUND**

A.    **Overview of Facts Alleged in the Amended Complaint**

For the purpose of resolving the present motion, the Court accepts as true the factual allegations in the AC, ECF No. 53.

Lead Plaintiff Olger Guri and named plaintiff Ken Kula (collectively, "Plaintiffs") bring this securities fraud proposed class action against Defendants Fastly, Inc. ("Fastly" or "the Company"), Todd Nightingale (Fastly's Chief Executive Officer), and Ronald Kisling (Fastly's Chief Financial Officer), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  Plaintiffs bring this action on behalf of a proposed class of shareholders who purchased or otherwise acquired Fastly securities between November 15, 2023, and August 7, 2024 ("Class Period").

Fastly operates an edge cloud platform for processing, serving, and securing customers' applications.  *Id.* ¶ 2.  Fastly's customers pay the Company to deliver web experiences, whether in the form of applications, websites, or streaming services.  *Id.*  Fastly charges customers based on their usage of the Company's platform and typically enters into contracts that include a monthly

minimum billing commitment in exchange for more favorable pricing terms.  *Id.* ¶ 4.

The bulk of Fastly's revenue is derived from its existing customers' "traffic" or usage of its platform, although the Company generates some revenue from additional products and other services, such as account management and customer support.  *Id.* ¶¶ 3, 58, 62.  Historically, the Company's revenue has been driven "primarily" by its enterprise customers, *id.* ¶ 64, which are the Company's large customers by revenue, *see id.* ¶ 6.[1]  Thus, a decline in revenue from the Company's existing enterprise customers, or a decline in retention of such customers, could create volatility in the Company's revenue and materially impact Fastly's business.  *Id.* ¶ 8.

Plaintiffs allege that, beginning on November 15, 2023, and throughout the Class Period, Defendants misled investors about the customer pullback and macroeconomic impacts that Fastly was experiencing.  For example, on November 15, 2023, Defendant Nightingale allegedly misrepresented to investors that Fastly was not seeing the "slowing in growth" that its competitors were seeing at that time, even though several days earlier he had informed all Fastly employees at an all-hands meeting that the Company's revenue was "down" because its large customers were reducing their usage and thus were generating less revenue for the Company.  *See* AC ¶¶ 89-91.  Plaintiffs allege that this decline in revenue was associated with macroeconomic forces that were negatively impacting the Company throughout 2023, which were causing Fastly's large customers to become price conscious.  *See id.* ¶¶ 79-80.  The Company's macroeconomic concerns were discussed at all-hands meetings throughout 2023, which typically occurred a week after the Company's earnings call for each quarter and were attended by all employees and the Company's C-Suite, including Defendants Nightingale and Kisling (collectively, "individual Defendants").  *See id.* ¶¶ 79-80, 91.

Plaintiffs allege that, as a result of Defendants' misleading statements, Fastly's stock traded at artificially inflated prices during the Class Period, which is when they and members of

---

[1] Fastly previously defined "enterprise customers" as those customers with revenue in excess of $100,000 over the trailing 12-month period, but it currently defines them as those customers with annualized current quarter revenue in excess of $100,000, which is calculated by taking the revenue recognized in the current quarter and multiplying it by four.  *See* AC ¶ 6.

United States District Court
Northern District of California

the proposed class purchased Fastly securities. *Id.* ¶¶ 219-27. Plaintiffs further allege that they and members of the proposed class suffered losses when the price of Fastly's stock decreased following the materialization of certain risks that Defendants concealed from investors, which occurred on February 14, 2024, and when corrective disclosures were made on May 1, 2024, and August 7, 2024. *See id.*

Specifically, on February 14, 2024, Fastly announced its financial results for Q4 2023 and fiscal year 2023 and reported Q4 2023 revenue that was on the lower side of the Company's guidance for that quarter and missed analysts' consensus estimates by 1.1%. *See id.* ¶ 14. The day after the announcement of the Q4 2023 results, Fastly's stock price fell 30.59%. *Id.* ¶ 14. Plaintiffs allege that the lower-than-expected revenue for Q4 2023 and resulting plunge in the price of Fastly's stock were caused by the materialization of the risks of the decreased usage and revenues from the Company's large customers in Q4 2023 that Defendants had concealed from investors in November 2023. During the earnings call for Q4 2023, Defendant Nightingale allegedly misled investors by attributing the lower-than-expected revenue for Q4 2023 to "weaker than anticipated international traffic" without revealing that it was also due to the decline in usage and revenue from the Company's large customers in Q4 2023. *See id.* ¶¶ 20, 130-31. During the same call, Defendant Nightingale also allegedly denied that the Company had experienced any significant macroeconomic impacts during Q4 2023 beyond "deal elongation" even though the Company had experienced reduced usage and revenue from its large customers associated with macroeconomic impacts. *Id.* ¶ 132. Plaintiffs allege that Defendants made additional misleading statements in the annual report for fiscal year 2023, which they issued on February 22, 2024. *Id.* ¶ 135.

On May 1, 2024, Defendants released Fastly's financial results for Q1 2024 and lowered the Company's revenue guidance for the remainder of 2024 in part because of decreased usage and pricing pressure from the Company's largest customers. *Id.* ¶¶ 152-55. Plaintiffs allege that this partially revealed the declines in usage and revenues from Fastly's large customers and macroeconomic impacts that Defendants had previously concealed and thus constitutes a partial corrective disclosure. *Id.* ¶¶ 14, 219-27. Plaintiffs allege that, during the earnings call for Q1

2024, Defendants continued to misleadingly tout customer retention and the Company's efforts to continue to expand existing customers' usage of Fastly's services even though the Company was experiencing continued customer pullback and a lack of progress in increasing existing customers' usage of Fastly's services. *Id.* ¶¶ 167-78. The day after the earnings call, analysts downgraded Fastly's stock, citing the decelerating growth of revenue from its largest customers, and the price of the Company's stock declined by 32.02%. *Id.* ¶¶ 163-66.

On August 7, 2024, Fastly released its financial results for Q2 2024 and decreased for the second time in 2024 Fastly's revenue guidance for the remainder of fiscal year 2024. *Id.* ¶ 191. During the earnings call for Q2 2024, Defendants disclosed that the Company continued to experience a decline in demand and revenue from its largest customers, and that it was shifting its focus to acquiring new business. *Id.* ¶¶ 180-90. Plaintiffs allege that this disclosure constituted a corrective disclosure of the revenue and usage declines and macroeconomic impacts that Defendants had previously concealed. *See id.* ¶¶ 219-27. The day after the earnings call, the price of Fastly's stock fell 14.33%. *Id.* ¶ 192.

### B.    Procedural History

This action was filed on May 24, 2024, by Plaintiff Ken Kula. ECF No. 1. On August 22, 2024, the Court appointed Olger Guri as Lead Plaintiff and ordered that filings in this action bear the caption *In re Fastly, Inc. Securities Litigation*. *See* ECF No. 42.

Thereafter, Lead Plaintiff Olger Guri and named plaintiff Ken Kula filed the AC. ECF No. 53. The present motion, which seeks the dismissal of the AC in its entirety, followed. ECF No. 55.

## II.    REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment[,]" but a "court cannot take judicial notice of disputed facts

1  contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th

2  Cir. 2018) (citation omitted).

3      Defendants request that the Court take judicial notice, or consider under the incorporation-

4  by-reference doctrine, eleven documents, namely:

5      (1)    a copy of Fastly's quarterly report on Form 10-Q for the period ended March 31,
           2024 ("Q1 2024"), which was filed with the United States Securities and Exchange
6           Commission ("SEC") on May 1, 2024 (Exhibit A), ECF No. 55-3;

7      (2)    a copy of Fastly's annual report on Form 10-K for fiscal year 2023 ("FY 2023"),
           which was filed with the SEC on February 21, 2024 (Exhibit B), ECF No. 55-4;
8
9      (3)    a copy of Fastly's quarterly report on Form 10-Q for the period ended September
           30, 2023 ("Q3 2023"), which was filed with the SEC on November 1, 2023
10           (Exhibit C), ECF No. 55-5;

11     (4)    a copy of the transcript of Fastly's November 1, 2023, call discussing quarterly
           financial results for the third quarter of 2023 (Exhibit D), ECF No. 55-6;

12     (5)    a copy of the transcript of Fastly's November 15, 2023, presentation at the RBC
           Capital Markets 2023 Technology, Internet, Media and Telecommunications
13           Conference (Exhibit E), ECF No. 55-7;

14     (6)    a copy of the transcript of Fastly's February 14, 2024, call discussing financial
           results for the fourth quarter of 2023 ("Q4 2023") and full year 2023 (Exhibit F),
15           ECF No. 55-8;

16     (7)    a copy of the transcript of Fastly's May 1, 2024, call discussing financial results for
           the first quarter of 2024 (Exhibit G), ECF No. 55-9;
17
18     (8)    a copy of the transcript of Fastly's August 7, 2024, call discussing financial results
           for the second quarter of 2024 ("Q2 2024") (Exhibit H), ECF No. 55-10;

19     (9)    a copy of a February 15, 2024, analyst report titled "Mixed Quarter And Outlook
           Driven By International Weakness. Lowering To HOLD," issued by Craig Hallum
20           (Exhibit I), ECF No. 55-11;

21     (10)   copies of Forms 4 reflecting transactions in Fastly securities by Defendant Kisling
           between November 2023 and July 2024 (Exhibit J), ECF No. 55-12;
22
23     (11)   copies of Forms 4 reflecting transactions in Fastly securities by Defendant
           Nightingale between November 2023 and May 2024, which were filed with the
24           SEC (Exhibit K), ECF No. 55-13;

25     Because Plaintiffs do not dispute their authenticity and accuracy, the Court grants

26  Defendants' request for judicial notice of Exhibits A through H, which are SEC filings pertaining

27  to Fastly and transcripts of calls with analysts and investors. Courts routinely take judicial notice

28  of those types of documents for the purpose of determining what information was available to the

United States District Court
Northern District of California

market.  *See, e.g.*, *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (holding that the district court properly took judicial notice of publicly available financial documents and SEC filings); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009) (holding that courts "may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true") (citation and internal quotation marks omitted); *Wochos v. Tesla*, *Inc.*, No. 17-CV-05828-CRB, 2018 WL 4076437, at *2 (N.D. Cal. Aug. 27, 2018) (taking judicial notice of earnings call transcript "for the sole purpose of determining what representations [defendants] made to the market").  The Court will take judicial notice of the statements in these documents for the purpose of determining what information was available to the market, but not for the truth of the matters asserted therein or for the purpose of resolving factual disputes.  *See Khoja*, 899 F.3d at 999-1001.

The Court declines, however, to take judicial notice of Exhibits I, J, and K, which are an analyst report and copies of Forms 4 reflecting transactions in Fastly securities by Defendants Nightingale and Kisling.  The Court finds that those documents are not relevant to the resolution of the present motion.  *See Pac. Gas & Elec. Co. v. Lynch*, 216 F. Supp. 2d 1016, 1025 (N.D. Cal. 2002) ("A judicially noticed fact may not be subject to reasonable dispute and must be relevant.").

### III.    JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

### IV.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks and citation omitted).  In determining whether a plaintiff has met this plausibility standard, the Court

United States District Court
Northern District of California

1   must "accept all factual allegations in the complaint as true and construe the pleadings in the light

2   most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

3         A complaint that sounds in fraud must satisfy the requirements of Rule 9(b). Rule 9(b)

4   provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or

5   mistake shall be stated with particularity." *See* Fed. R. Civ. P. 9(b). "To comply with Rule 9(b),

6   allegations of fraud must be specific enough to give defendants notice of the particular misconduct

7   which is alleged to constitute the fraud charged so that they can defend against the charge and not

8   just deny that they have done anything wrong." *Glazer Cap. Mgmt., L.P. v. Forescout Techs.,*

9   *Inc.*, 63 F.4th 747, 765 (9th Cir. 2023) (citation and internal quotation marks omitted). "The

10   complaint must specify such facts as the times, dates, places, benefits received, and other details of

11   the alleged fraudulent activity." *Id.* (citation and internal quotation marks omitted).

12         "If a claim alleges securities fraud, the Private Securities Litigation Reform Act

13   ('PSLRA'), 15 U.S.C. § 78u-4, also applies." *Khoja*, 899 F.3d at 1008.

**V.    DISCUSSION**

    **A.    Claims under Section 10(b) of the Exchange Act and SEC Rule 10b-5**

16         Section 10(b) of the Securities Exchange Act of 1934 declares it unlawful to "use or

17   employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive

18   device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as

19   necessary." 15 U.S.C. § 78j(b). "SEC Rule 10b-5 implements [Section 10(b)] by making it

20   unlawful to . . . 'make any untrue statement of a material fact or to omit to state a material fact

21   necessary in order to make the statements made . . . not misleading.'" *Matrixx Initiatives, Inc. v.*

22   *Siracusano*, 563 U.S. 27, 37 (2011) (quoting 17 C.F.R. § 240.10b–5). "Thus, to prevail on a claim

23   for violations of either Section 10(b) or Rule 10b-5, a plaintiff must prove six elements: (1) a

24   material misrepresentation or omission by the defendant [falsity]; (2) scienter; (3) a connection

25   between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon

26   the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re NVIDIA Corp.*

27   *Sec. Litig.*, 768 F.3d 1046, 1051-52 (9th Cir. 2014) (citation and internal quotation marks omitted).

28

1    Under Section 20(a) of the Exchange Act, "a defendant employee of a corporation who has

2  violated the securities laws will be jointly and severally liable to the plaintiff, as long as the

3  plaintiff demonstrates 'a primary violation of federal securities law' and that 'the defendant

4  exercised actual power or control over the primary violator.'" *City of Dearborn Heights Act 345*

5  *Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 623 (9th Cir. 2017) (citation omitted).

6  A claim under Section 20(a) fails if the plaintiff does not plead a primary violation of federal

7  securities law.  *See id.*

8    As noted, Plaintiffs assert a claim under Section 10(b) and a derivative claim under Section

9  20(a) premised on allegedly misleading statements made by Defendants in SEC filings, earnings

10  calls, and other conferences with investors.

11    Defendants move to dismiss all claims in the AC, arguing that Plaintiffs have not alleged

12  facts to support the elements of falsity, scienter, and loss causation.

13    **1.    Material Misrepresentation or Omission (Falsity)**

14    The first element of a claim under Section 10(b) and Rule 10b-5 requires a plaintiff to

15  show that the defendant made a statement that was false or misleading as to a material fact.  *Basic*

16  *Inc. v. Levinson*, 485 U.S. 224, 238 (1988).  This requires, in relevant part, "specify[ing] each

17  statement alleged to have been misleading [and] the reason or reasons why the statement is

18  misleading[.]" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007) (quoting 15

19  U.S.C. § 78u–4(b)(1)).  "In setting forth the reasons why they contend that each challenged

20  statement is misleading, securities plaintiffs may rely on either an affirmative misrepresentation

21  theory or an omission theory." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021)

22  (citation omitted).  "[A]n affirmative misrepresentation is an 'untrue statement of a material fact,'

23  and a fraudulent omission is a failure to 'state a material fact necessary in order to make the

24  statements made, in the light of the circumstances under which they were made, not misleading.'"

25  *Id.* (citation omitted).

26    "Falsity is alleged when a plaintiff points to defendant's statements that directly contradict

27  what the defendant knew at that time." *Khoja*, 899 F.3d at 1008 (citation omitted).  "Even if a

28  statement is not false, it may be misleading if it omits material information." *Id.* at 1008-09

United States District Court
Northern District of California

(citation omitted).  Information is material if "a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc*., 416 F.3d 940, 946 (9th Cir. 2005).  "[T]o be actionable under the securities laws, an omission must be misleading . . . it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014) (citation and internal quotation marks omitted).  "Disclosure [of omitted information] is required . . . only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx Initiatives*, 563 U.S. at 44 (quoting 17 C.F.R. § 240.10b-5(b)).

Even where a plaintiff has adequately alleged falsity, "the allegedly false or misleading statement may still be shielded from liability by the 'safe harbor' provision of the PSLRA." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017).  The PSLRA's "safe harbor" provision "is designed to protect companies and their officials from suit when optimistic projections of growth in revenues and earnings are not borne out by events." *Id.* at 1142.  The safe harbor applies only to "forward-looking statements," which include:

> (A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;
>
> (B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;
>
> (C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;
>
> (D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);
>
> [subsections (E) and (F) omitted]

15 U.S.C. § 78u-5(i)(1).

"[A] defendant will not be liable for a false or misleading statement if it is forward-looking and either is accompanied by cautionary language or is made without actual knowledge that it is

false or misleading." *In re Quality Sys.*, 865 F.3d at 1141.  Cautionary language must identify "important factors that could cause actual results to differ materially from those in the forward-looking statement." *See* 15 U.S.C. § 78u-5(c)(1)(A)(i).

### a. November 15, 2023, Statements

Plaintiffs allege that, during a November 15, 2023, conference call involving Defendant Nightingale, Defendant Kisling, and Rishi Jaluria from RBC Capital Markets, the individual Defendants made two misleading statements regarding macroeconomic impacts on Fastly's business.

### (i) Statement 1, AC ¶ 118[2]

Plaintiffs allege that, when asked whether macroeconomic trends were getting better, Defendant Nightingale replied: "The biggest pressure that people saw in this area was like in small to medium SMB customers, maybe some of the mid-market.  We don't have a lot of exposure there.  I wish [we] did have more exposure, and I am working to make our products simpler so we can.  But I didn't have a lot of exposure.  Financial services customers and telco customers, again, if I would had more exposure there, I probably would have seen more." *See* AC ¶ 118.

Defendants argue that Plaintiffs have not alleged any particularized facts indicating that this statement was false or misleading when made.  *See* ECF No. 55 at 23-25.

Plaintiffs respond that they have plausibly alleged that the statement was misleading when made because they have alleged facts showing that Fastly "*did* have exposure in the SMB market" even though, according to Plaintiffs, Defendant Nightingale claimed that Fastly "did not have exposure in the SMB market and mid-market."  *See* ECF No. 59 at 14-15 (emphasis in the original).

The Court finds that Plaintiffs have not plausibly alleged that Statement 1 was false or misleading when made.  Plaintiffs' theory of falsity depends on an interpretation of Statement 1 that does not reflect what Defendant Nightingale said.  Plaintiffs argue that Defendant Nightingale

---

[2] For ease of reference, the statement numbers attributed to each challenged statement are based on the numbers used in Defendants' motion to dismiss, as well as the chart attached to their motion, *see* Docket No. 55-2.

stated that Fastly "did not have exposure in the SMB market and mid-market," *see* ECF No. 59 at 15, but what he said was that Fastly did not "have *a lot* of exposure there [to the SMB market]." *See* AC ¶ 118 (emphasis added). Plaintiffs have not alleged facts that raise the inference that Defendant Nightingale knew at the time he made Statement 1 that Fastly had "a lot" or significant exposure to the SMB market. Plaintiffs point to allegations that an unspecified confidential witness reported that 30 to 40% of Fastly's sales team was dedicated to the small- and medium-sized business segment of the market during the Class Period. *See id.* ¶ 11. The Court cannot infer that Fastly had significant exposure to the SMB market based on that allegation because Plaintiffs have not alleged facts that would permit the Court to infer that the unspecified confidential witness in question had personal knowledge of the percentage of Fastly's sales team that was dedicated to the small- and medium-sized business segment. *See Glazer*, 63 F.4th at 767 (holding that a plaintiff must provide "an adequate basis for determining that the witnesses in question have personal knowledge of the events they report"). Plaintiffs have not described in the AC the job title and job responsibilities of the confidential witness in question, for example.

The Court GRANTS Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not alleged that Statement 1 was false or misleading when made.

### (ii)    Statement 2, AC ¶ 120

In a follow-up question during the November 15, 2023, conference call, Rishi Jaluria from RBC Capital Markets stated: "[O]n the last earnings call, you did talk about some budget tightening that you had started to see." Defendant Nightingale responded: "[F]or the last three or four quarters, I've gotten this question in each earnings call about what are we seeing from the macro. *My competitors are seeing these effects, some slowing in growth, and [] we're not seeing that*." AC ¶ 120 (emphasis in the original).

Defendants argue that Plaintiffs have not alleged any particularized facts indicating that this statement was false or misleading when made. *See* ECF No. 55 at 23-25.

Plaintiffs respond that they have plausibly alleged that the statement was misleading when made because they allege that Defendant Nightingale failed to disclose that Fastly was experiencing a decline in usage and revenue from large customers associated with macroeconomic

United States District Court
Northern District of California

effects that were negatively impacting the Company and slowing its growth in mid-November 2023. *See* ECF No. 59 at 15-16. Plaintiffs argue that Defendant Nightingale's failure to disclose those facts when making Statement 2 gave investors an impression of a state of affairs that differed materially from the one that actually existed. *See id.*

The Court agrees with Plaintiffs. Because Defendant Nightingale touted that Fastly was not seeing *any* "slowing in growth" like its competitors were seeing at the time that Statement 2 was made, he was required to disclose adverse information that cut against that positive statement. *See Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705–06 (9th Cir. 2016) (holding that "once defendants choose to tout positive information to the market, they [are] bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information") (citation and internal quotation marks omitted, cleaned up). Here, Plaintiffs have alleged facts that, when viewed in the light most favorable to Plaintiffs, as the Court must at this stage, raise the inference that Defendant Nightingale was aware that Fastly was seeing "some slowing in growth" at the time he made Statement 2 due to declining usage and revenue from the Company's large customers that were associated with macroeconomic effects.

Specifically, Plaintiffs allege that CW6 reported that, during an all-hands meeting held about a week after the November 1, 2023, earnings call but *before* Defendant Nightingale made Statement 2 on November 15, 2023, Defendant Nightingale discussed that Fastly's revenue was "down" because of declines in usage of Fastly's platform by the Company's large customers and related declines in revenue from such customers.[3] *See* AC ¶¶ 89-91. CW1 confirmed that Defendant Nightingale discussed during an all-hands meeting held "during Q4 2023," which appears to be the same all-hands meeting that occurred about a week after the November 1, 2023, earnings call but before Defendant Nightingale made Statement 2 on November 15, 2023, that

---

[3] Because Plaintiffs allege that all-hands meetings were held each quarter and typically occurred a week after each earnings call, *see* AC ¶ 91, Plaintiffs' allegations raise the inference that the all-hands meeting that took place after the November 1, 2023, earnings call occurred approximately on November 8, 2023, which is before Defendant Nightingale made Statement 2 on November 15, 2023.

usage and revenue from large customers were declining.[4]  *See id.* ¶ 91.  Plaintiffs also allege facts that suggest that the decline in usage and revenue from Fastly's large customers during Q4 2023 was associated with macroeconomic forces that affected Fastly negatively throughout 2023. Specifically, CW1 reported that concerns arising out of macroeconomic impacts were discussed at all-hands meetings throughout 2023 (which included the meeting held during Q4 2023 shortly before Statement 2 was made).  *See id.* ¶¶ 80, 91.  CW1 reported that the concerns discussed at those all-hands meetings included that Fastly as a whole was being negatively impacted by macroeconomic forces, because such forces were causing Fastly's customers, including its largest customers, to become increasingly price conscious.  *See id.*  These allegations are corroborated by the reports of CW3, whose team managed customers that brought Fastly at least $100 million per year in revenue and whose job responsibilities included getting those customers to agree to use more of Fastly's services.  *See id.* ¶ 51.  CW3 reported that revenues from his or her largest customers were declining in November 2023 in part because of tightening budgets and a general downturn in the tech sector as a whole.  *See id.* ¶ 87.

The foregoing allegations, collectively, raise the inference that Defendant Nightingale knew at the time he made Statement 2 on November 15, 2023, that Fastly's revenue was declining because of decreasing usage and revenues from Fastly's large customers that were related to macroeconomic conditions.  This is because those matters were allegedly discussed during all-hands meetings, which were attended by all employees and the Company's C-Suite (which included the individual Defendants).  *See id.* ¶ 91.  Because Defendant Nightingale omitted those facts when he stated that Fastly was not experiencing any "slowing in growth" because of macroeconomic forces on November 15, 2023, Nightingale created the impression of a state of affairs that differed in a material way from the one that actually existed.  Accordingly, Plaintiffs have plausibly alleged that Statement 2 was misleading when made.  *See Police Ret. Sys. of St.*

---

[4] Plaintiffs' allegations raise the inference that the all-hands meeting that was held "during Q4 2023" according to CW1 was the same all-hands meeting that occurred approximately on November 8, 2023, because Plaintiffs allege that all-hands meetings were held quarterly, and November 8, 2023, fell within Q4 2023.  *See* AC ¶ 91.

*Louis*, 759 F.3d at 1061 ("[T]o be actionable under the securities laws, an omission must be misleading . . . it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists.") (citation and internal quotation marks omitted).

Defendants' arguments to the contrary are not persuasive. Defendants argue that the Court may not consider allegations derived from reports from CW1, CW6, and CW3 because their reports are vague and unreliable. The Court disagrees. Plaintiffs have provided "an adequate basis for determining that the witnesses in question have personal knowledge of the events they report," which is all that Plaintiffs are required to do at this stage. *See Glazer*, 63 F.4th at 767. CW1 and CW6 were employed at Fastly during the Class Period as an enterprise sales director and website producer, respectively. *See AC* ¶¶ 49, 54. CW1 and CW6 were, therefore, in a position to have personal knowledge of what was discussed during the all-hands meetings discussed above, because Plaintiffs allege that every all-hands meeting was attended by all employees and the Company's C-Suite. *See id.* ¶ 17. CW3 was an enterprise account manager who was responsible for managing clients that brought in more than $100 million per year in revenue and for getting those customers to use more of Fastly's services. *See id.* ¶ 51. Thus, CW3 was in a position to have personal knowledge of whether the revenues of large customers he dealt with were declining in November 2023 because of macroeconomic conditions.

Defendants also contend that Plaintiffs have not plausibly alleged that Statement 2 was false or misleading when made because they have not alleged sufficient details about the revenue decreases discussed during the all-hands meeting discussed above. *See* ECF No. 55 at 21. This argument fails. The only binding authority that Defendants cite to support their argument is *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001). However, the Ninth Circuit has held that *Ronconi's* "approach for assessing the adequacy of pleadings of falsity," which involved analyzing falsity and scienter in a "single inquiry" and thus applying a stricter standard for pleading falsity than required, has been abrogated by the Supreme Court. *See Glazer*, 63 F.4th at 766 ("The separate approach employed by the Supreme Court is 'clearly irreconcilable' with *Ronconi's* combined approach."). The Court, therefore, declines to analyze the sufficiency of Plaintiffs'

1  allegations based on *Ronconi*.[5]

2        Defendants also argue that Plaintiffs' allegations are not sufficient to raise the inference

3  that any decline in revenues that may have occurred in Q4 2023 constituted a "material

4  slowdown" that Defendants needed to disclose. *See* ECF No. 55 at 13. The Court is not

5  persuaded. "[A] misrepresentation or omission is material if there is a substantial likelihood that a

6  reasonable investor would have acted differently if the misrepresentation had not been made or the

7  truth had been disclosed." *Livid Holdings*, 416 F.3d at 946. Here, Plaintiffs' allegations raise the

8  inference that Defendant Nightingale's omission of the revenue declines at issue was material,

9  because they suggest that there was a substantial likelihood that a reasonable investor would have

10 acted differently if he had disclosed that Fastly was experiencing a decline in its revenue because

11 of decreasing usage and revenues from the Company's large customers associated with

12 macroeconomic conditions. That is because Plaintiffs' allegations indicate that investors would

13 have cared about and acted upon declines in Fastly's revenue caused by decreased usage and

14 revenues from its large customers, as Plaintiffs allege that (1) Fastly's revenue model depended

15 significantly on the usage and revenues from its "enterprise" customers, which are its large

16 customers by revenue, and (2) a decline in revenue from those customers could create volatility in

17 the Company's overall revenue and materially impact Fastly's business. *Id.* ¶¶ 5-6, 8, 63-64.

18       Defendants next contend that Plaintiffs' allegations are insufficient to raise the inference

19 that Fastly's growth was slowing as of mid-November 2023 because, in 2024, Fastly disclosed

20 17% year-over-year revenue growth for fiscal year 2023, and because Fastly's Q4 2023 revenue

21 ultimately came in at the lower end of the revenue guidance range for that quarter. *See* ECF No.

22 55 at 24; ECF No. 60 at 8. This argument is unavailing. That Fastly reported year-over-year

23 growth for fiscal year 2023 *in 2024*, several months after Statement 2 was made in November

24 2023, does not negate the inference raised by Plaintiffs' allegations, which is that *the rate* of

25

26 ─────────────
[5] The other authority that Defendants cite for the proposition that Plaintiffs' allegations about the
27 revenue declines at issue are insufficiently detailed is *Wozniak v. Align Tech., Inc.*, 850 F. Supp.
2d 1029, 1042-43 (N.D. Cal. 2012), which is not binding. The portions of that case that
28 Defendants cite also address the sufficiency of allegations regarding scienter, not falsity, which
makes them irrelevant.

United States District Court
Northern District of California

United States District Court
Northern District of California

Fastly's growth was declining in mid-November 2023 because of decreasing usage and revenues from the Company's large customers. It is plausible that *the rate* of Fastly's revenue growth was decreasing in Q4 2023 even though the Company experienced some revenue growth in absolute terms on a year-over-year basis for fiscal year 2023. Similarly, the fact that Fastly later reported Q4 2023 revenue at the lower end of the guidance range for that quarter does not negate the inference that the rate of the Company's growth was slowing in Q4 2023 because of decreased usage and revenues from large customers. To the contrary, the fact that revenue for Q4 2023 ultimately came in at the lower end of the guidance range for that quarter supports the inference that Fastly's rate of growth in Q4 2023 was lower than expected.

Defendants also argue that it is not the case that Fastly's growth was slowing at the time that Defendant Nightingale made Statement 2 on November 15, 2023, because two weeks earlier (on November 1, 2023) Fastly reported "record" year-over-year revenue growth for the previous quarter, Q3 2023. *See* Docket No. 60 at 11. This argument also fails. That Fastly reported significant year-over-year growth for Q3 2023 (which covered the time period of July 1, 2023, to September 30, 2023) is irrelevant to the question of whether Plaintiffs have adequately alleged that Fastly's revenue growth was slowing during the following quarter, Q4 2023 (which covered the time period from October 1, 2023, through December 31, 2023).

In light of the foregoing, the Court DENIES Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not alleged that Statement 2 was false or misleading when made.

### b.    February 2024 Statements

Plaintiffs allege that Defendants made several false or misleading statements during a February 14, 2024, earnings call regarding Fastly's financial results for Q4 2023, and in Fastly's annual report on Form 10-K for fiscal year 2023, which was filed on February 22, 2024.

### (i)    Statement 3, AC ¶ 125

Plaintiffs allege that Defendant Nightingale stated during the Q4 2023 earnings call that the Company's "customer retention efforts were stable in the fourth quarter" of 2023. AC ¶ 125.

Defendants argue that Plaintiffs have not alleged any particularized facts indicating that

this statement was false or misleading when made.  *See* ECF No. 55 at 26-27; ECF No. 60 at 13-14.

Plaintiffs respond that Statement 3 was false or misleading when made because it omitted that some of Fastly's customers were cancelling their contracts, decreasing their usage of Fastly's services, or demanding better pricing during Q4 2023.  *See* ECF No. 59 at 18.

The Court finds that Plaintiffs have not plausibly alleged that Statement 3 was false or misleading when made, because Plaintiffs have not alleged facts that raise the inference that Fastly's customer retention efforts were not "stable" in Q4 2023.  Plaintiffs point to only one allegation in the AC that pertains to customer retention[6] in Q4 2023, which, as noted, ranged from October 1, 2023, to December 31, 2023.  That allegation is that "USAA's two-year $400,000 deal ended in November 2023 because the Company never implemented Fastly's software and CW1 could not convince the Company to deploy it."  *See* AC ¶ 83.  That allegation, which indicates that a single customer terminated its relationship with Fastly in the fourth quarter of 2023, does not plausibly suggest that Fastly's customer retention in general was not "stable" during that quarter.

The Court GRANTS Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not alleged that Statement 3 was false or misleading when made.

### (ii)     Statement 4, AC ¶ 126

Plaintiffs allege that Defendant Kisling stated during the February 14, 2024, earnings call about Q4 2023 that the projected revenue range of $580 to $590 million for fiscal year 2024 was based on, among other things, Fastly's "expectation for quarter-on-quarter acceleration in revenue growth through the year driven by new customer acquisition and continued expansion of existing customers."  *See* AC ¶ 126; *see also* ECF No. 55-8 at 9 (Ex. F).

Defendants argue that this statement is protected by the PSLRA's safe harbor because (1) it is forward-looking, as it concerns projections for the future and the assumptions underlying those projections; and (2) it was accompanied by meaningful cautionary language.  *See* ECF No.

---

[6] The Court assumes that "customer retention" refers to maintaining existing customers (as opposed to losing existing customers).  Plaintiffs do not define "customer retention" differently in the AC.

55 at 28-29.

Plaintiffs respond that Statement 4 is not protected by the safe harbor because is not forward-looking, as the phrase "continued expansion of existing customers" was a statement of present conditions that misleadingly suggested that existing customers were expanding at the time the statement was made. *See* ECF No. 59 at 22. Plaintiffs further contend that the cautionary language that accompanied the statement was not meaningful because it was itself misleading. *See id.*

The Court finds that Statement 4 is protected by the PSLRA safe-harbor because it is forward-looking, as it describes revenue projections for fiscal year 2024 and the assumptions underlying those projections and was accompanied by cautionary language. *See In re Quality Sys.*, 865 F.3d at 1141 ("[A] defendant will not be liable for a false or misleading statement if it is forward-looking and either is accompanied by cautionary language or is made without actual knowledge that it is false or misleading."); *see also* ECF No. 55-8 at 4 (cautionary language for Statement 4, which refers to risk disclosures included in the quarterly report for Q4 2023).

Plaintiffs' arguments to the contrary are not persuasive. The phrase that Plaintiffs argue renders Statement 4 non-forward-looking ("continued expansion of existing customers") is an assumption underlying or relating to the projection of revenues for fiscal year 2024 and is thus covered by the safe-harbor. *See* 15 U.S.C. § 78u-5(i)(1)(D) (providing that "assumptions underlying or relating to" projections of revenues are protected). The cautionary language that Plaintiffs argue was not meaningful because it was misleading did not actually accompany Statement 4 and is, therefore, irrelevant to the question of whether Statement 4 is protected by the safe harbor. *See* ECF No. 59 at 22 (referring to cautionary language included in Fastly's annual report on Form 10-K for fiscal year 2023 and quarterly report for Q1 2024, as opposed to the cautionary language for Statement 4).

The Court GRANTS Defendants' motion to dismiss to the extent that it is premised on arguments that Statement 4 is protected by the PSLRA safe harbor.

United States District Court
Northern District of California

### (iii)    Statement 5, AC ¶ 130

Plaintiffs allege that, during the February 14, 2024, earnings call about Q4 2023 results, Defendant Nightingale attributed Fastly's revenue coming in at the lower end of the Q4 2023 guidance range to "weaker than anticipated international traffic, offset by seasonally strong live streaming and gaming activity."  AC ¶ 130.

Defendants argue that Plaintiffs have not plausibly alleged that this statement was false or misleading when made.  *See* ECF No. 55 at 18.

Plaintiffs respond that the statement was misleading when made because it omitted that a significant cause for Fastly's revenue coming in at the lower end of the Q4 2023 guidance was that some of Fastly's large customers had decreased their usage of Fastly's services that quarter and Fastly's revenues from those customers were declining as a result.  *See* ECF No. 59 at 17-18. Plaintiffs argue that Defendants' omission of that information created an impression of a state of affairs that differed materially from the one that actually existed.  *See id.*

The Court finds that Plaintiffs have adequately alleged that Statement 5 was misleading when made because it created the impression that the only cause of Fastly coming in at the lower end of its Q4 2023 guidance was "weaker than expected international traffic" even though there was another cause known to the individual Defendants.  Plaintiffs' allegations raise the inference that the individual Defendants knew at the time that Statement 5 was made that another cause for why Fastly's Q4 2023 revenues came in lower than expected was that the Company's revenue was down in Q4 2023 because of declining usage and revenue from the Company's large customers. As discussed above in the context of Statement 2, those matters were allegedly discussed in an all-hands meeting in Q4 2023 that all employees and the Company's C-Suite attended, and they were material because Plaintiffs' allegations raise the inference that a reasonable investor would have acted differently if those matters had been disclosed.  *See* AC ¶¶ 6-8, 64-67, 88-91.  Defendants were, therefore, required to disclose those matters when making Statement 5 to make the statement not misleading.  *See Hoang v. ContextLogic, Inc.*, No. 21-CV-03930-BLF, 2023 WL 6536162, at *18 (N.D. Cal. Mar. 10, 2023) (holding that statement was misleading when made because the Company attributed decline in users to "de-emphasized advertising and customer acquisition"

even though there was another alleged cause not disclosed); *see also Matrixx Initiatives*, 563 U.S. at 44.  Defendants have not cited any binding authority that compels a different conclusion.

In light of the foregoing, the Court DENIES Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not alleged that Statement 5 was false or misleading when made.

### (iv)    Statement 6, AC ¶ 132

Plaintiffs allege that, when pressed by analysts during the February 14, 2024, earnings call about whether there were fundamental changes to the business in Q4 2023 in light of macroeconomic impacts when compared with Q3 2023, Defendant Nightingale stated: "No.  I think it was pretty much as we saw last quarter.  A handful of deals may be taking a little longer than we thought, a little bit of deal elongation."  AC ¶ 132; *see also* ECF No. 55-8 at 13 (Ex. F).

Defendants argue that Plaintiffs have not alleged facts that raise the inference that this statement was false or misleading when made.  *See* ECF No. 55 at 24.

Plaintiffs respond that Statement 6 was false or misleading when made because it omitted that Fastly's revenue from large customers was decreasing in Q4 2023 because of macroeconomic conditions.  *See* ECF No. 59 at 19.

The Court finds that Plaintiffs have plausibly alleged that Statement 6 was false or misleading when made.  As discussed above in the context of Statement 2, Plaintiffs have alleged facts that raise the inference that Fastly experienced some negative impacts from macroeconomic forces in Q4 2023 that went beyond the "deal elongation" that Defendants identified in Statement 6.  Those impacts included the decline in Fastly's revenue caused by the declining usage and revenue from its large customers.  *See, e.g.*, AC ¶¶ 64-67, 79-80, 87-91.  Defendants' failure to mention those impacts when making Statement 6 rendered the statement misleading, because it created the false impression that the only macroeconomic impact that Fastly experienced in Q4 2023 was "a little bit of deal elongation."  *See Hoang*, 2023 WL 6536162, at *18 (holding that statement was misleading when made because the Company attributed decline in users to "de-emphasized advertising and customer acquisition" even though there was another alleged cause not disclosed).

Defendants contend that Plaintiffs have not plausibly alleged falsity with respect to Statement 6 because Defendants disclosed during the same earnings call that the Company was issuing conservative guidance for the remainder of fiscal year 2024 to account for "macro risks." *See* ECF No. 55 at 24; ECF No. 60 at 12.  That argument is unavailing.  The statements about macro risks to which Defendants point pertain to projections for 2024 and are irrelevant to the quarter that was addressed in Statement 6, which was Q4 2023.  Defendants' statements about macro risks *going forward* (in 2024) do not negate Plaintiffs' well-pleaded allegations that Statement 6 was misleading because it omitted that Fastly experienced decreased usage and revenue from Fastly's large customers related to macroeconomic conditions in the past, *in Q4 2023*.

The Court DENIES Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not alleged that Statement 6 was false or misleading when made.

### (v)    Statement 7, AC ¶¶ 137, 145, 148

Plaintiffs allege that Fastly's annual report for fiscal year 2023, which was issued on February 21, 2024, stated: "Our enterprise customers continue to leverage our platform, increasing their spend on our platform and driving our revenue growth year over year."  AC ¶¶ 137, 145, 148.

Plaintiffs allege that Statement 7 violated Item 303 of SEC Regulation S-K because Defendants failed to disclose "the trends or uncertainties" related to the decline in usage and revenues derived from enterprise customers that Fastly experienced at least in Q4 2023.  *See* AC ¶¶ 148-50.  Plaintiffs allege that this establishes the falsity element of a securities fraud claim under Rule 10(b) with respect to Statement 7.  *See id.*

Defendants argue that Plaintiffs' securities fraud claim under Rule 10(b) should be dismissed to the extent that it is premised on the theory that Statement 7 violates Item 303. Defendants contend that Item 303 requires companies to disclose trends or uncertainties only when they are "reasonably likely to have material effects on the registrant's financial condition or results of operation" and "presently known to management."  *See* ECF No. 55 at 22-23. Defendants argue that Plaintiff has not plausibly alleged a violation of Item 303 because Plaintiffs do not allege facts indicating that there was a trend of revenue declines of sufficient duration and

United States District Court
Northern District of California

of which management was aware that was likely to have a material effect on Fastly's financial condition.  *See id.*

Item 303 requires the management of a company, in relevant part, to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." *See* 17 C.F.R. § 229.303(b)(2)(ii).  A failure to disclose information covered under Item 303 can support a securities fraud claim under Rule 10(b) "only if the omission renders affirmative statements made misleading."  *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265–66 (2024).

The Court finds that that Plaintiffs have plausibly alleged an omission that violated Item 303 and that rendered Statement 7 misleading when made.  As discussed in more detail in the context of Statement 2, Plaintiffs allege facts that raise the inference that (1) Fastly's large (or enterprise) customers were reducing their usage of Fastly's platform and that this was causing Fastly's revenue from those customers to decline at least during Q4 2023, *see* AC ¶¶ 6, 51, 87-91; (2) that management was aware of those declines, as Defendant Nightingale allegedly discussed them during an all-hands meeting in Q4 2023 that was attended by all Fastly employees and the individual Defendants, *see, e.g., id.* ¶¶ 88-90; and (3) that the declines were reasonably likely to have a material unfavorable impact on the Fastly's revenues, given that Defendant Nightingale stated during the all-hands meeting that Fastly's revenue was "down" as a result of the declines and given that, historically, Fastly's revenue was derived "primarily" from its enterprise customers, *see, e.g., id.* ¶¶ 6-8, 64-67, 87-91.  Because Statement 7 touted that Fastly's enterprise customers were increasing their spend on Fastly's platform and were driving its revenue growth in fiscal year 2023, the omission of the declining usage and revenues from enterprise customers in Q4 2023, which cut against the positive information conveyed in Statement 7, rendered Statement 7 misleading.  *See Schueneman*, 840 F.3d at 705–06.

Defendants have not cited any authority that compels a different conclusion[7], and their

---

[7] In the non-binding cases that Defendants cite for the proposition that Plaintiffs have not alleged a violation of Item 303, the plaintiff failed to allege non-conclusory facts that raised the inference

arguments that Plaintiffs' securities fraud claim is subject to dismissal to the extent that it is premised on Statement 7 violating Item 303 are not persuasive.

Defendants contend that Plaintiffs have not alleged a trend that needed to be disclosed under Item 303 because they do not allege that "any alleged decline [in revenue from enterprise customers] existed long enough to be a trend." *See* ECF No. 55 at 22. However, the only authority that Defendants cite in support of that argument does not address the question of whether a decline in revenue must exist for a specific period of time for it to constitute a "trend" under Item 303. *See Welgus v. TriNet Grp., Inc.*, No. 15-CV-03625-BLF, 2017 WL 6466264, at *24 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019) (holding that the plaintiff did not plead a violation of Item 303 because "the SAC does not contain sufficient facts to allow the Court to draw the inference that any of these 'negative trends' were 'adverse'"). Accordingly, the Court declines to find that Plaintiffs have not alleged a trend that was subject to the disclosure requirements of Item 303 on the basis that the revenue declines to which they point were not of sufficient duration. Importantly, even if the revenue declines at issue did not constitute a "trend" under Item 303, that would not defeat Plaintiffs' allegations that Statement 7 violated Item 303. That is because Item 303 requires the disclosure of known "trends *or uncertainties* that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." *See* 17 C.F.R. § 229.303(b)(2)(ii) (emphasis added). Plaintiffs' allegations raise the inference that the revenue declines in Q4 2023 were, at the very least, an "uncertainty" known by management that was reasonably likely to have a material unfavorable impact on revenues and thus needed to be disclosed under Item 303. *See* AC ¶¶ 148-50 (alleging that Statement 7 violated Item 303 for failure to describe "the trends *or uncertainties*"

---

that a trend that was known to management and needed to be disclosed pursuant to Item 303 had existed. *See City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*, No. 3:23-CV-00519-WHO, 2024 WL 235183, at *11 (N.D. Cal. Jan. 22, 2024) ("the plaintiffs fail to allege that the defendants knew of any trend to Paid User Expansion by the time the report was published on August 19"); *In re Dropbox Sec. Litig.*, No. 19-CV-06348-BLF, 2020 WL 6161502, at *8 (N.D. Cal. Oct. 21, 2020) (holding that plaintiff did not point to "any factual allegations about Dropbox's user conversation rate, let alone a data point or trend line" that were not "conclusory"). The same is not true here for the reasons discussed above.

related to Fastly's decline in enterprise customers' usage of Fastly's platform and the revenue derived from those customers) (emphasis added).

Defendants also contend that no trend of declining revenues existed that needed to be disclosed under Item 303 because Plaintiffs allege that the existing-customer revenue figures that Fastly disclosed to investors in its annual report for fiscal year 2023 (i.e., Dollar-Based Net Expansion Rate ("DBNER") and Net Retention Rate ("NRR")) did not yet reveal a trend. *See* ECF No. 60 at 9. However, the existing-customer revenue figures that Fastly disclosed to investors in its annual report for fiscal year 2023 (DBNER and NRR) measured the revenues from *all* of its existing customers collectively, *see* AC ¶¶ 71-74, and did not specifically measure the revenues that the Company derived from its *enterprise* customers in particular, which is what is relevant to Statement 7. Accordingly, that the DBNER and NRR figures that Fastly disclosed in its annual report for fiscal year 2023 do not negate Plaintiffs' allegations that Defendants violated Item 303 by failing to disclose the declines in usage and revenues from enterprise customers discussed above.

In light of the foregoing, the Court DENIES Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not alleged a violation of Item 303 or that Statement 7 was otherwise false or misleading when made.

**(vi)      Statement 8, AC ¶ 139**

Plaintiffs allege that, under the heading, "If we are unable . . . to have existing enterprise customers continue and increase their use of our platform, our business will likely be harmed," Fastly's annual report for fiscal year 2023 warned investors, in relevant part, "*Our future success also depends in part on our ability to expand our existing customer relationships, in particular, with enterprise customers, by increasing their usage of our platform, selling them additional products and upgrading their existing products. . . . If our efforts to increase usage of our platform by, or sell new and additional products to, our enterprise customers are not successful, our business would be harmed.*" AC ¶ 139 (emphasis in the original); *see also* ECF No. 55-4 at 26 (Ex. B).

Plaintiffs allege that this statement, which is a risk disclosure, was false or misleading

1    when made because it omitted that Fastly's enterprise customers' usage of Fastly's platform had

2    been declining at least since November 2023.  *See* AC ¶ 140.

3        Defendants contend that, to plead falsity for risk disclosures, Plaintiffs must allege facts

4    showing that the risk had materialized at the time the risk disclosures were made.  *See* ECF No. 55

5    at 25.  Defendants argue that Plaintiffs' allegations are insufficient to raise the inference that the

6    risks associated with a failure by management to increase enterprise customers' usage of Fastly's

7    platform had already materialized, because Plaintiffs do not allege particularized facts showing

8    that any "major customer" of Fastly had reduced its usage of Fastly's platform in a material way at

9    the time that Statement 8 was made.  *See id.*  Defendants also argue that the statement is protected

10   by the PSLRA safe harbor because it is a forward-looking statement.  *See id.* at 28.

11       Plaintiffs respond that Statement 8 is actionable under *In re Alphabet, Inc. Sec. Litig.*, 1

12   F.4th 687, 704 (9th Cir. 2021) because it warned about risks that could occur but did not disclose

13   that those risks had already materialized.  *See* ECF No. 59 at 22.

14       In *In re Alphabet*, the Ninth Circuit held that risk disclosures that "speak[ ] entirely of as-

15   yet-unrealized risks and contingencies" and do not "alert[ ] the reader that some of these risks may

16   already have come to fruition" can mislead reasonable investors and can be actionable on that

17   basis.  *See* 1 F.4th at 703–04 (citation and internal quotation marks omitted).

18       The Court finds that Plaintiffs have plausibly alleged that Statement 8 was false or

19   misleading when made under *In re Alphabet*, 1 F.4th at 703-04, because the statement warned of

20   risks that could result if Fastly did not succeed in increasing its enterprise customers' usage of its

21   platform, but did not disclose that that risk "may have already come to fruition," as large (or

22   enterprise) customers' usage of Fastly's platform had been declining in Q4 2023, as discussed in

23   more detail above in the context of Statements 2 and 7.

24       Defendants' arguments to the contrary are unavailing.  Defendants contend that Plaintiffs'

25   allegations are insufficiently detailed to raise the inference that Fastly's enterprise customers

26   decreased their usage of Fastly's platform during Q4 2023.  *See* ECF No. 55 at 25.  The Court

27   disagrees and finds that Plaintiffs' allegations are sufficiently detailed to raise the inference that

28   Fastly's enterprise customers had decreased their usage of Fastly's platform in Q4 2023 for the

United States District Court
Northern District of California

reasons discussed in more detail above in the context of Statements 2 and 7. Defendants also argue that Statement 8 is not actionable because it contains warnings about risks and "future challenges" associated with its "future success" and is thus forward-looking and protected by the PSLRA safe harbor. *See* ECF No. 55 at 28. However, the authority that Defendants cite for that proposition is distinguishable. In *Wochos v. Tesla, Inc.*, the Ninth Circuit held that a risk disclosure was forward-looking and was not misleading for failing to disclose that some of the risks and future challenges it warned about had already materialized because it affirmatively acknowledged that the Company had already experienced "the sort of 'challenges'" that it warned about. *See* 985 F.3d 1180, 1195–96 (9th Cir. 2021). Here, by contrast, Statement 8 does not disclose that Fastly had already experienced some of the risks and challenges that it warned about, as discussed above.

The Court DENIES Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not alleged that Statement 8 was false or misleading when made, or that Plaintiffs cannot state a securities fraud claim based on Statement 8 because it is protected by the safe harbor.

### (vii)    Statement 9, AC ¶ 141

Plaintiffs allege that, under the heading, "We receive a substantial portion of our revenues from a limited number of customers …, and the loss of, or a significant reduction in usage by, one or more of our major customers would result in lower revenues and could harm our business," Fastly's annual report for fiscal year 2023 also warned investors, in relevant part: "It is likely that we will continue to be dependent upon a limited number of customers for a significant portion of our revenues for the foreseeable future. . . . The loss of one or more key customers or a reduction in usage by any major customers would reduce our revenues. If we fail to maintain existing customers . . . , our business would be harmed." AC ¶ 141.

Plaintiffs allege that this statement was false or misleading when made because the risk of reduced revenues that could result if Fastly lost key customers or if those customers reduced their usage of Fastly's services had already materialized, as revenues from Fastly's enterprise customers had been declining at least in Q4 2023, and because revenue from Fastly's largest customers was

going to continue to decline, as some of those customers were demanding more favorable pricing terms. *See* AC ¶ 142.

Defendants contend that Plaintiffs' allegations are insufficient to raise the inference that the risks associated with a reduction in usage by "major customers" had already materialized, because Plaintiffs do not allege particularized facts showing that any "major customer" of Fastly had reduced its usage of Fastly's platform in a material way at the time that Statement 8 was made. *See* ECF No. 55 at 25.

The Court finds that Plaintiffs have not plausibly alleged that Statement 9 was false or misleading when made. As Defendants point out, Statement 9 warns of risks that could occur if Fastly lost "key customers" or "major customers" or if those customers reduced their usage of Fastly's services. In their opposition, Plaintiffs do not point to any allegations in the AC that define "key customers" and "major customers," or that otherwise raise the inference that the individual Defendants knew at the time that Statement 9 was made that Fastly had lost "key customers" or "major customers" or that those customers had reduced their usage of Fastly's services. Plaintiffs point to allegations about a decline in usage from Fastly's large or enterprise customers during Q4 2023, *see, e.g.*, AC ¶¶ 79, 87-89, but those allegations, without more, do not raise the inference that those large customers that reduced their usage were "key customers" or "major customers" of Fastly. Plaintiffs also point to allegations that Fastly tracked its customers' usage of its platform customers, *see id.* ¶¶ 92-99, but those allegations, on their own, do not indicate whether "key" or "major" customers of Fastly had reduced their usage of Fastly's services.

The Court GRANTS Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not plausibly alleged that Statement 9 was false or misleading when made.

### (viii)    Statement 10, AC ¶ 143

Plaintiffs allege that, under the Management's Discussion and Analysis of Financial Condition and Results of Operations Section of Fastly's annual report for fiscal year 2023, it states: "We emphasize retaining our customers and expanding their usage of our platform and

United States District Court
Northern District of California

adoption of our other products."  AC ¶ 143; *see also* ECF No. 55-4 at 72 (Ex. B).

Plaintiffs allege that this statement was false or misleading when made because it did not mention that Fastly had shifted its sales strategy in 2024 to prioritize new customer acquisitions over existing customers.  *See* AC ¶ 144.  Defendants argue that Plaintiffs cannot plausibly allege that Statement 10 was false or misleading when made because Fastly disclosed the information that Plaintiffs allege was omitted from Statement 10, namely that the Company was simultaneously focused on acquiring new customers *and* on retaining existing customers.  *See* ECF No. 55 at 26-27.

In their opposition, Plaintiffs do not respond to Defendants' argument that their securities fraud claim fails because Defendants disclosed that Fastly was focused both on acquiring new customers as well as on retaining existing customers.  *See generally* ECF No. 59.

The Court finds that Plaintiffs have not plausibly alleged that Statement 10 was false or misleading when made.  Based on paragraph 144 of the AC, Plaintiffs' theory of falsity is predicated on allegations that Defendants failed to disclose that Fastly had shifted its sales strategy in 2024 to prioritize new customer acquisitions.  *See* AC ¶ 144.  However, as Defendants point out, Fastly disclosed that it was focused on attracting new customers (as well as on retaining existing customers) on the same pages of the annual report for fiscal year 2023 where Statement 10 appears.  *See* ECF No. 55-4 at 71-72 (disclosing focus on attracting new customers and retaining existing customers).  Not surprisingly, "[t]he defendants cannot be held liable [for securities fraud under Rule 10(b)] for failing to disclose something that they disclosed." *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 180 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018).  Accordingly, the Court finds that Plaintiffs' securities fraud claim based on Statement 10 fails under the reasoning of *Altayyar* and it GRANTS Defendants' motion to dismiss Plaintiffs' claims to the extent that they are premised on Statement 10.

### c.     May 1, 2024, Statements

Plaintiffs allege that certain statements that Defendants made in connection with Fastly's Q1 2024 earnings were false and misleading when made.

1

**(i)      Statement 11, AC ¶ 168**

2      Plaintiffs allege that, during the earnings call for Q1 2024 on May 1, 2024, Nightingale

3   stated: "*Right now, we have already launched a new engagement model.  We're driving a far*

4   *higher touch across all those major accounts.  We've been running it for a couple of weeks now,*

5   *and we're – I'm pretty happy with the progress so far.*  But just looking at the – where our

6   projection is for those accounts and how much it's changed in just one quarter, like you said, some

7   plus February, I think decisive change in our engagement model was warranted.  And that's

8   exactly the transition that we're undergoing right now."  AC ¶ 168 (emphasis in the original).

9      Defendants argue that Plaintiffs have not alleged any facts indicating that this statement

10   was false or misleading when made.  *See* ECF No. 55 at 26-28.

11      Plaintiffs respond that this statement was false or misleading when made because it

12   "touted" the progress that Defendants had made on the Company's new engagement model even

13   though "Fastly did not take any steps that would have led to any progress until after these

14   statements were made."  *See* ECF No. 59 at 21.  Plaintiffs point to allegations that Fastly did not

15   begin working on completing a staging environment that the Company had promised to two large

16   customers until after Statement 11 was made.  *See* AC ¶ 170

17      The Court finds that Plaintiffs have not plausibly alleged that Statement 11 was false or

18   misleading when made.  The theory of falsity that Plaintiffs advance in their opposition is not

19   alleged in the AC.[8]  Accordingly, the Court cannot consider it for the purpose of resolving the

20   present motion.  *See Mejia v. Illinois Tool Works Inc.*, No. CV-18-09969-MWF(JCX), 2019 WL

21   8135433, at *6 (C.D. Cal. Dec. 12, 2019) (declining to consider "new theories [falling] outside the

22   scope of the Complaint").  Even if the Court could consider Plaintiffs' unpled theory of falsity,

23   that theory would not save Plaintiffs' securities fraud claim from dismissal to the extent that it is

24   premised on Statement 11.  That is because the unpled theory is not supported by factual

25   ───────────────────

26   [8] In the AC, Plaintiffs allege that Statement 11 was false or misleading when made because it was
     not the case that Defendants had made "progress in driving additional revenue" from major
27   accounts.  *See* AC ¶ 169.  By contrast, in their opposition, Plaintiffs argue that Statement was false
     or misleading when made because it was not the case that Defendants had made progress with
28   their "new engagement model."  *See* ECF No. 59 at 21.

United States District Court
Northern District of California

allegations that raise the inference that Defendants had not made progress with the "new engagement model" discussed during the Q1 2024 earnings call during the two weeks that the engagement model had been in effect according to Defendant Nightingale's representations during the earnings call.  The allegations to which Plaintiffs point indicate that Fastly did not begin working on completing a staging environment that it had promised to two large customers until after Statement 11 was made.  *See* AC ¶ 170.  However, Plaintiffs point to no allegations that connect the "new engagement model" to Fastly's alleged delay in completing a staging environment for two customers.

The Court GRANTS Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not plausibly alleged that Statement 11 was false or misleading when made.

### (ii)    Statement 12, AC ¶ 173

Plaintiffs allege that Fastly's quarterly report for Q1 2024 stated under the Management's Discussion and Analysis of Financial Condition and Results of Operations section: "We focus our direct selling efforts on expanding our customer's use of our platform," "[w]e are focused on continuing to attract new customers, including those in diverse vertical markets, and expanding our relationship with existing customers," "[w]e emphasize retaining our customers and expanding their usage of our platform and adoption of our other products," and "[u]tilizing our direct sales force, we have multiple selling points within organizations to acquire new customers and increase usage from our existing customers."  AC ¶ 173; *see also* ECF No. 55-3 at 33-34 (Ex. A).

In the AC, Plaintiffs allege that Statement 12 was false or misleading when made because it suggested that Fastly was focused on existing customers even though the Company had shifted its sales strategy to acquiring new customers.  *See* AC ¶ 174.

Defendants argue that Plaintiffs cannot state a claim for securities fraud based on Statement 12 because Fastly's quarterly report for Q1 2024 disclosed that the Company was simultaneously focused on existing customers and acquiring new customers.  *See* ECF No. 55 at 26-27.  Defendants contend that Plaintiffs cannot base an omissions-based securities fraud claim on information that was disclosed.  *See id.*

1    In their opposition, Plaintiffs do not respond to Defendants' arguments about Statement 12.

2    *See generally* ECF No. 59.

3    The Court finds that Plaintiffs have not plausibly alleged that Statement 12 was false or

4    misleading when made. Plaintiffs' theory of falsity as alleged in the AC is predicated on

5    allegations that Defendants failed to disclose that Fastly had shifted its sales strategy to focus on

6    new customer acquisitions. *See* AC ¶ 174. However, Fastly disclosed that it was focused on

7    attracting new customers, as well as on increasing existing customers' usage, in the same pages of

8    the Q1 2024 report where Statement 12 appears. *See* ECF No. 55-3 at 33-34 (disclosing focus and

9    efforts on acquiring new customers and increasing existing customers' usage of Fastly's platform).

10   Because Defendants disclosed the information that Plaintiffs allege was omitted from Statement

11   12 and rendered the statement misleading, Plaintiffs' securities fraud claim is subject to dismissal

12   to the extent that it is premised on Statement 12. *See Altayyar*, 242 F. Supp. 3d at 180 ("The

13   defendants cannot be held liable [for securities fraud under Rule 10(b)] for failing to disclose

14   something that they disclosed.").

15   The Court GRANTS Defendants' motion to dismiss to the extent that it is premised on

16   arguments that Plaintiffs have not plausibly alleged that Statement 12 was false or misleading

17   when made.

18   **(iii)    Statement 13, AC ¶ 177**

19   Plaintiffs allege that, under the heading, "If we are unable . . . to have existing enterprise

20   customers continue and increase their use of our platform, our business will likely be harmed,"

21   Fastly's Q1 2024 10-Q warned investors, in relevant part, "Our future success also depends in part

22   on our ability to expand our existing customer relationships, in particular, with enterprise

23   customers, by increasing their usage of our platform, selling them additional products and

24   upgrading their existing products. . . . If our efforts to increase usage of our platform by, or sell

25   new and additional products to, our enterprise customers are not successful, our business would be

26   harmed." AC ¶ 176.

27   Plaintiffs allege that this statement was false or misleading when made because it

28   described the risk of existing customer growth stagnating due to decreased usage without

United States District Court
Northern District of California

31

disclosing that the risk had already materialized.  *See* AC ¶ 177.

Defendants contend that, to plead falsity for risk disclosures, Plaintiffs must allege facts showing that the risk had materialized at the time the risk disclosures were made.  *See* ECF No. 55 at 25.  Defendants argue that Plaintiffs' allegations are insufficient to raise the inference that the risks described in the statement had already materialized, because Plaintiffs do not allege particularized facts showing that any "major customer" of Fastly had reduced its usage of its platform in a material way at the time this statement was made.  *See id.*

Plaintiffs respond that Statement 13 is actionable under *In re Alphabet*, 1 F.4th at 704, because the statement warned about risks that could occur but failed to mention that those risks had already materialized.  *See* ECF No. 59 at 22.  Plaintiffs argue that the same allegations that support a finding that Statement 8 was misleading when made also support a finding that Statement 13 was false or misleading when made.  *See* ECF No. 59 at 20-21.

The Court finds that Plaintiffs have not plausibly alleged that Statement 13 was false or misleading when made.  The Court is not persuaded by Plaintiffs' argument that the same allegations that support a finding that Statement 8 was false or misleading when made also support a finding that Statement 13 was false or misleading when made.  As discussed above, Statement 8 was misleading when made because it omitted that Fastly's large or enterprise customers' usage of the Company's platform was declining in *Q4 2023*.  *See, e.g.*, AC ¶¶ 6, 64-67, 87-90.  Statement 13 was made in the quarterly report for *Q1 2024* and therefore speaks to a different period of time than the one covered by Statement 8.  In their opposition, Plaintiffs have not pointed to any allegations that raise the reasonable inference that Defendants were aware at the time that Statement 13 was made on May 1, 2024, that enterprise customers' usage of Fastly's services was declining in Q1 2024.

The Court GRANTS Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not plausibly alleged that Statement 13 was false or misleading when made.

**(iv)    Statement 14, AC ¶ 178**

Plaintiffs allege that, under the heading, "We receive a substantial portion of our revenues

United States District Court
Northern District of California

1   from a limited number of customers …, and the loss of, or a significant reduction in usage by, one

2   or more of our major customers would result in lower revenues and could harm our business,"

3   Fastly's quarterly report for Q1 2024 warned investors, in relevant part: "It is likely that we will

4   continue to be dependent upon a limited number of customers for a significant portion of our

5   revenues for the foreseeable future. . . . The loss of one or more key customers or a reduction in

6   usage by any major customers would reduce our revenues.  If we fail to maintain existing

7   customers . . . , our business would be harmed."  AC ¶ 178.

8          Plaintiffs allege that this statement was false or misleading when made because the risk of

9   reduced revenues that could result if Fastly lost key customers or if those customers reduced their

10  usage of Fastly's services had already materialized.  *See* AC ¶ 179.

11         Defendants argue that Plaintiffs' allegations are insufficient to raise the inference that the

12  risks associated with a reduction in usage by "major customers" had already materialized, because

13  Plaintiffs do not allege particularized facts showing that any "major customer" of Fastly had

14  reduced its usage of Fastly's platform in a material way in Q1 2024.  *See* ECF No. 55 at 25.

15         The Court finds that Plaintiffs have not plausibly alleged that Statement 14 was false or

16  misleading when made.  As Defendants point out, Statement 14 warns of risks that could occur if

17  Fastly lost "key customers" or "major customers" or if those customers reduced their usage of

18  Fastly's services.  In their opposition, Plaintiffs do not point to any allegations in the AC that

19  define "key customers" or "major customers" or that otherwise raise the inference that Defendants

20  knew at the time that Statement 14 was made that Fastly had lost "key customers" or "major

21  customers" or that those customers had reduced their usage of Fastly's services in Q1 2024.

22  Plaintiffs point to allegations about a decline in usage from by Fastly's large or enterprise

23  customers at the end of 2023, *see, e.g.*, AC ¶¶ 79, 87-89, but those allegations do not indicate that

24  those large customers were "key customers" or "major customers" or that they had reduced their

25  usage of Fastly's platform in Q1 2024.  Plaintiffs also point to allegations that Fastly tracked its

26  customers' usage of its platform customers, *see id.* ¶¶ 92-99, but those allegations, on their own,

27  do not raise the inference that Defendants knew at the time that Statement 14 was made that any

28  "key" or "major" customers of Fastly had reduced their usage of Fastly's services during the

period covered by the Q1 2024 quarterly report.

The Court GRANTS Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not alleged that Statement 14 was false or misleading when made.

### 2.    Scienter

"To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter[.]" *Matrixx Initiatives*, 563 U.S. at 48 (citation and internal quotation marks omitted).  Scienter is "a mental state that not only covers 'intent to deceive, manipulate, or defraud,' but also 'deliberate recklessness[.]'" *Schueneman*, 840 F.3d at 705 (internal citations omitted).  "[D]eliberate recklessness is an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* (citation and internal quotation marks omitted).  In evaluating scienter, courts must "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 551 U.S. at 323-24.  In performing this inquiry, courts should determine whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.*  "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

The Court will consider below whether Plaintiffs have alleged facts that raise a strong inference of scienter with respect to Statements 2, 5, 6, 7, and 8, as those are the only challenged statements that Plaintiffs have plausibly alleged were false or misleading when made.

Defendants argue that Plaintiffs have not alleged facts that raise the strong inference that Defendants acted with scienter in connection with any challenged statement because (1) Plaintiffs allege no particularized fact suggesting any motive by any Defendant to defraud investors; (2) Plaintiffs do not allege any facts establishing Defendants' states of mind; and (3) the nonculpable inference that Defendants believed in the accuracy of their statements and kept investors updated about the Company's business as developments arose is far more compelling.  *See* ECF No. 55 at 30-35.

Plaintiffs respond that their allegations raise the strong inference that Defendants at the very least acted with deliberate recklessness when making the challenged statements because they had contemporaneous knowledge of facts that undercut or contradicted their statements. *See* ECF No. 59 at 25.

The Court finds that the allegations in the AC, when considered holistically, raise a strong inference of scienter with respect to individual Defendants Nightingale and Kisling.[9]

As discussed above, Plaintiffs' allegations strongly indicate that the individual Defendants knew of the declines in usage and revenues from Fastly's large (or "enterprise") customers in Q4 2023 that were associated with macroeconomic conditions, as well as of the negative impact that those declines had on Fastly's revenue in Q4 2023, because those matters were discussed during all-hands meetings that were attended by all Fastly employees and the Company's C-Suite, which included the individual Defendants. *See, e.g.* AC ¶¶ 80, 87-91. The Q4 2023 declines in usage and revenues from Fastly's enterprise customers were allegedly discussed by Defendant Nightingale himself at an all-hands meeting that took place in early November 2023. *See id.* Further, Plaintiffs' allegations raise the strong inference that the individual Defendants' omission of the Q4 2023 usage and revenue declines from Statements 2, 5, 6, 7, and 8 carried a significant danger of misleading investors that was so obvious that the individual Defendants must have been aware of it for two reasons. First, Plaintiffs allege that Fastly's revenue model depended significantly on the usage and revenues from its enterprise customers, and that a decline in revenue from those customers could create volatility in the Company's overall revenue and materially impact Fastly's business. *See id.* ¶¶ 3, 6, 58, 62-64. The individual Defendants knew that Fastly's dependence on revenue from enterprise customers was known to investors because that circumstance was disclosed in the Company's quarterly and annual reports, which were signed by the individual Defendants. *See, e.g.*, *id.* ¶¶ 139, 177. Thus, a failure by the individual Defendants to disclose the declines in revenue at issue carried a significant and obvious risk of misleading

---

[9] The parties do not distinguish each of the individual Defendants from each other for the purpose of analyzing the question of whether Plaintiffs have adequately pleaded scienter. The Court follows the parties' lead.

investors into adopting a view of the Company's financial health that was more favorable than warranted given the volatility risks that such declines entailed. Second, Plaintiffs' allegations suggest that analysts and investors were very interested in learning about and understanding any revenue impacts associated with macroeconomic forces that Fastly's business may have been experiencing during the Class Period, as they asked pointed questions to solicit information about those issues during earnings calls. *See, e.g.*, *id.* ¶¶ 118, 120, 132. Thus, it is reasonable to infer that a failure to reveal the declines in usage and revenues from enterprise customers associated with macroeconomic effects in Q4 2023 carried a significant and obvious risk of leading investors to believe, incorrectly, that the Company was not experiencing any such macroeconomic impacts. The individual Defendants' choice to omit the usage and revenue declines and related macroeconomic effects at issue when making Statements 2, 5, 6, 7, and 8, even though the omission carried a significant and obvious danger of misleading investors, is sufficient to raise a strong inference of scienter as to the individual Defendants. *See In re Splunk Inc. Securities Litigation*, 592 F. Supp. 3d 919, 947 (N.D. Cal. 2022) (Tigar, J.) (holding that allegations raised a strong inference of scienter because they indicated that the defendants concealed matters from investors that had been discussed previously during an all-hands meeting, that the defendants were aware of the importance of the concealed matters to the Company's financial health and thus to investors, and that the defendants failed to publicly reveal those matters even though analysts asked them questions about topics relating to those matters).[10]

      This strong inference of scienter is more compelling than the nonfraudulent inference that Defendants advance, which is that they "believed in the accuracy of their statements and kept investors updated about the Company's business as developments arose[.]" *See* ECF No. 55 at 30.

---

[10] Defendants argue that *In re Splunk*, 592 F. Supp. 3d at 947, is distinguishable because there, and unlike here, the plaintiff alleged that the defendants announced a hiring freeze of sales personnel at an all-hands meeting but later represented to an analyst that the Company was not engaging in layoffs. *See* ECF No. 60 at 17. Defendants' attempt to distinguish *In re Splunk* fails. What makes that case apt is that the allegations there, like the ones here, raised a strong inference of scienter because they indicated the defendants concealed matters from investors that had been discussed previously during an all-hands meeting, that the defendants were aware of the importance of the concealed matters to the Company's financial health and thus to investors, and that the defendants failed to reveal those matters to investors even though analysts asked them questions about topics relating to those matters.

If the individual Defendants had been inclined to keep investors updated about business developments as they arose, then one would expect that they would have updated investors about the alleged Q4 2023 usage and revenue declines from large or enterprise customers at the time they made Statements 2, 5, 6, 7, and 8 given that the individual Defendants were allegedly aware of those matters at the time they made the statements in question. The individual Defendants' failure to disclose those matters when making the statements at issue renders the nonculpable version of their conduct less cogent and compelling when compared with the strong inference of scienter discussed above. *See Curry v. Yelp Inc.*, 875 F.3d 1219, 1226 (9th Cir. 2017) (holding that the inference of scienter need only be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged" and "need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the 'most plausible of competing inferences'") (citation and internal quotation marks omitted).

Because the scienter element is satisfied as to the individual Defendants, it also is met as to Defendant Fastly because Defendants do not argue that the individual Defendants were acting outside the scope of their apparent authority. *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) ("The scienter of the senior controlling officers of a corporation may be attributed to the corporation itself to establish liability as a primary violator of § 10(b) and Rule 10b-5 when those senior officials were acting within the scope of their apparent authority.").

Defendants' arguments that Plaintiffs have not alleged facts that support a strong inference of scienter are unavailing. Defendants argue that Plaintiffs fail to plausibly plead scienter because they do not allege a motive to defraud. *See* ECF No. 60 at 15. Defendants have not cited any authority that a plaintiff must allege a motive to defraud to raise a strong inference of scienter. The Ninth Circuit has held that where, as here, a plaintiff has alleged compelling and particularized facts showing deliberate recklessness by the defendant, a failure to allege a motive to defraud will not prevent the plaintiff from meeting its burden of pleading a strong inference of scienter. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) ("[A] complaint lacking a plausible motive allegation may still meet its burden of pleading a strong inference of scienter" where "a complaint otherwise asserts compelling and particularized

United States District Court
Northern District of California

facts showing fraudulent intent or deliberate recklessness").

Defendants also argue that Plaintiffs' allegations are insufficient to raise a strong inference of scienter because allegations about what was discussed at the all-hands meetings are based on the reports of confidential witnesses that are too vague and unreliable and are not sufficiently detailed.  *See* ECF No. 60 at 16.  However, as discussed in more detail in the preceding section of this order, the Court has found that the alleged reports of all-hands meetings attributed to CW1 and CW6 that this order relies upon are sufficiently reliable and detailed.  *Cf. Wozniak v. Align Tech., Inc.*, No. C-09-3671 MMC, 2011 WL 2269418, at *12 (N.D. Cal. June 8, 2011) (holding that allegations regarding meetings involving the defendants did not raise the inference of scienter because "none of the confidential witnesses describes the contents of any of the meetings").

Defendants next contend that none of the facts described above, on their own, is sufficient to raise a strong inference of scienter.  This argument is unconvincing, because the strong inference of scienter here is raised by the facts described above in combination, not individually. *See Tellabs*, 551 U.S. at 322–23 (holding that "the inquiry . . .  is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.").

In light of the foregoing, the Court DENIES Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not alleged scienter with respect to Statements 2, 5, 6, 7, and 8.

### 3.     Loss Causation

The Exchange Act defines "loss causation" "'as the plaintiff's 'burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.'"  *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2741 (2019) (quoting 15 U.S.C. § 78u-4(b)(4)). "This inquiry requires no more than the familiar test for proximate cause."  *Id.*  "To prove loss causation, plaintiffs need only show a causal connection between the fraud and the loss, by tracing the loss back to the very facts about which the defendant lied[.]"  *Id.* (internal citations and quotation marks omitted).  "[L]oss causation is a 'context-dependent' inquiry as there are an

United States District Court
Northern District of California

'infinite variety' of ways for a tort to cause a loss." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). "Because loss causation is simply a variant of proximate cause, the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Id.* (citation omitted). A complaint sufficiently alleges loss causation when it contains "enough fact to raise a reasonable expectation that discovery will reveal evidence of loss causation.*" In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (citation and internal quotation marks omitted). "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *Id.*

Plaintiffs argue that they have plausibly alleged loss causation with respect to each of the statements challenged in the AC under a materialization of the risk theory or a theory premised on corrective disclosures. *See* ECF No. 59 at 30-32.

Defendants contend that Plaintiffs have not adequately alleged loss causation with respect to any challenged statement because (1) the Ninth Circuit has not recognized a materialization-of-the-risk theory of loss causation; (2) even if Plaintiffs could allege loss causation based on a materialization-of-the-risk theory, Plaintiffs do not "allege any fact" to support such a theory; and (3) Plaintiffs fail to allege loss causation based on a corrective-disclosures theory because they have not alleged that Fastly's earnings announcements revealed any undisclosed "truth" or new facts that had not been disclosed previously. *See* ECF No. 55 at 36.

The Court considers below whether Plaintiffs have adequately alleged loss causation for Statements 2, 5, 6, 7, and 8, which are the only challenged statements that were plausibly misleading when made.

With respect to Statement 2, Plaintiffs advance a materialization-of-the-risk theory of loss causation. *See* ECF No. 59 at 31. A materialization of the risk approach to loss causation "recognizes loss causation where a plaintiff shows that misstatements and omissions concealed the price-volatility risk (or some other risk) that materialized and played some part in diminishing the market value of a security." *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013) (citations and internal quotation marks omitted).

"[M]aterialization of the risk recognizes that a misstatement or omission is the proximate cause of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations and omissions alleged by a disappointed investor." *Id.* (citation and internal quotation marks omitted). "Under this theory, the plaintiff must show that it was the very facts about which the defendant lied which caused its injuries." *Id.* (citation and internal quotation marks omitted). While the Ninth Circuit has neither endorsed nor rejected the materialization-of-the-risk theory of loss causation, it has recognized that district courts in this circuit have accepted that theory. *See id.* at 1120 n.5 (declining to "decide whether to endorse" a materialization-of-the-risk theory of loss causation based on the case before it but acknowledging that district courts in the circuit have accepted that theory in other cases) (citations omitted).

Here, Plaintiffs have alleged facts that satisfy the requirements for alleging loss causation under a materialization-of-the-risk theory. Plaintiffs allege that the risks of the decline in usage and revenues from Fastly's large customers in Q4 2023, which Defendants omitted from Statement 2, began to materialize when Fastly released its Q4 2023 financial results in February 2024, as those results showed that Fastly came in at the lower end of its revenue guidance for that quarter and missed analysts' consensus revenue estimates by 1.1%. *See* AC ¶¶ 122, 130-31, 219-27. According to Plaintiffs' allegations, the materialization of the risks of the concealed decline in usage and revenues from Fastly's large customers caused the lower-than-expected revenues for Q4 2023. *See id.* In turn, those lower-than-expected revenues caused a 30.59% decline in the price of Fastly's stock a day after the Q4 2023 results were announced, which then caused Plaintiffs and members of the proposed class to suffer losses. *See id.* These allegations are sufficient to plead loss causation with respect to Statement 2 under a materialization-of-the-risk theory.

Defendants' arguments to the contrary are not persuasive. Because Defendants have not cited any binding authority that a plaintiff may not proceed past the pleadings stage under a materialization-of-the-risk theory of loss causation in the Ninth Circuit, the Court declines to so conclude here, particularly given that district courts in this circuit routinely permit securities fraud claims to proceed past the pleadings stage where the claims are premised on that theory of loss

causation.[11]  *See, e.g.*, *Reckstin Fam. Tr. v. C3.ai, Inc.*, 718 F. Supp. 3d 949, 989 (N.D. Cal. 2024) (finding that plaintiffs adequately alleged loss causation based on a materialization-of-the-risk theory); *Special Situations Fund III QP, L.P. v. Brar*, No. 14-CV-04717-SC, 2015 WL 1393539, at *9 (N.D. Cal. Mar. 26, 2015) (same); *see also Mauss v. Nuvavsive, Inc.*, No. 13CV2005 JM (JLB), 2015 WL 10857519, at *15 (S.D. Cal. Aug. 28, 2015) (allowing plaintiff to file an amended complaint asserting a materialization-of-the-risk theory of loss causation).

Defendants also argue that the allegations described above are insufficient to plausibly allege loss causation with respect to Statement 2 because the weaker-than-expected revenues for Q4 2023 were not caused by a decline in usage by Fastly's large customers, as Plaintiffs allege, but instead were caused by weaker than anticipated international traffic.  This argument fails.  At this stage of the litigation, the Court must construe Plaintiffs' well-pleaded allegations as true.  Plaintiffs' allegations raise the inference that the lower-than-expected revenues for Q4 2023 were caused at least in part by the concealed decline in usage and revenues from Fastly's large customers in Q4 2023.

Defendants also contend that the allegations described above are insufficient to allege loss causation with respect to Statement 2 because Plaintiffs are required, but have failed, to plead facts showing that the market reacted to "the alleged fraud" after the Q4 2023 results were announced in February 2024.  *See* ECF No. 60 at 20.  That is incorrect.  "Disclosure of the fraud is not a sine qua non of loss causation[.]"  *See Nuveen*, 730 F.3d at 1120.  Only a plaintiff whose loss causation theory is based on market revelation of the fraud is required to allege facts that raise the inference that the fraud was revealed.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1059, 1063 (9th Cir. 2008) (holding that plaintiffs failed to plead loss causation where plaintiffs' theory was that "Corinthian's fraud was revealed to the market, causing Metzler's losses" but "[t]he TAC does not allege that the June 24 and August 2 announcements disclosed—or even

---

[11] Courts in this circuit have also certified classes in securities fraud cases where the plaintiff's theory of loss causation was based on materialization of the risk.  *See, e.g.*, *Weston v. DocuSign, Inc.*, 348 F.R.D. 354, 369 (N.D. Cal. 2024) (granting class certification of securities fraud claims premised on a materialization-of-the-risk theory of loss causation); *Junge v. Geron Corp.*, No. C 20-00547-WHA, 2022 WL 1002446, at *7 (N.D. Cal. Apr. 2, 2022) (same).

United States District Court
Northern District of California

suggested—[the fraudulent activities] to the market").  Where, as here, the plaintiff alleges loss

causation under the materialization-of-the-risk approach, loss causation "may be shown even

where the alleged fraud is not necessarily revealed prior to the economic loss."  *See Nuveen*, 730

F.3d at 1120.

In light of the foregoing, the Court DENIES Defendants' motion to dismiss to the extent

that it is premised on arguments that Plaintiffs have failed to allege loss causation with respect to

Statement 2.

With respect to Statements 5, 6, 7, and 8, which were made in February 2024, Plaintiffs

advance a loss causation theory based on corrective disclosures.  *See* ECF No. 59 at 31-32.  A

plaintiff seeking to prove loss causation by relying on one or more corrective disclosures "must

show that: (1) a corrective disclosure revealed, in whole or in part, the truth concealed by the

defendant's misstatements; and (2) disclosure of the truth caused the Company's stock price to

decline and the inflation attributable to the misstatements to dissipate."  *In re BofI Holding, Inc.

Sec. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020).

Here, Plaintiffs have not alleged facts that satisfy those requirements.  Plaintiffs argue that

Defendants' revelations on May 1, 2024, and August 7, 2024, that the revenue from some of

Fastly's largest customers had declined in Q1 2024 and Q2 2024, respectively, constitute

corrective disclosures that revealed the truth that Defendants concealed from Statements 5, 6, 7,

and 8.  The Court is not persuaded.  As discussed above, the Court has found that Plaintiffs have

plausibly alleged that Statements 5, 6, 7, and 8 were misleading when made because Defendants

omitted from those statements that Fastly was experiencing declining usage and revenues from its

large customers *in Q4 2023*.  Plaintiffs have not pointed to any allegations that those omitted facts

were revealed to any extent in any corrective disclosure on May 1, 2024, or August 7, 2024.  The

May 1, 2024, and August 7, 2024, statements that Plaintiffs characterize as corrective disclosures

revealed revenue declines *in quarters other than Q4 2023*, namely Q1 2024 and Q2 2024.  *See* AC

¶¶ 152, 166, 180-93.  Because the Court cannot reasonably infer that corrective disclosures on

May 1, 2024, and August 7, 2024, revealed the truth that Defendants allegedly concealed with

respect to Statements 5, 6, 7, and 8, Plaintiffs' corrective-disclosure loss causation theory with

1    respect to those statements fails.

2        The Court, therefore, GRANTS Defendants' motion to dismiss to the extent that it is

3    premised on arguments that Plaintiffs have not alleged loss causation with respect to Statements 5,

4    6, 7, and 8.

5        **B.    Claims under Section 20(a) of the Exchange Act**

6        "Section 20(a) of the Securities Exchange Act of 1934 provides for liability of a

7    'controlling person.'" *In re NVIDIA*, 768 F.3d at 1052 (quoting 15 U.S.C. § 78t(a)).  "To establish

8    a cause of action under this provision, a plaintiff must first prove a primary violation of underlying

9    federal securities laws, such as Section 10(b) or Rule 10b-5, and then show that the defendant

10   exercised actual power over the primary violator." *Id.* (citation omitted).  A claim under Section

11   20(a) can survive only if the underlying predicate Exchange Act violation also survives.  *See City*

12   *of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc*., 856 F.3d 605, 623 (9th

13   Cir. 2017).  "'Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to

14   adequately plead a primary violation of section 10(b).'"  *Zucco Partners, LLC v. Digimarc Corp.*,

15   552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009).

16       Plaintiff asserts a claim under Section 20(a) against the individual Defendants based on

17   allegations that they exercised power and authority over Fastly's operations and management and

18   that their false and misleading statements caused artificial inflation of Fastly's stock price during

19   the Class Period.  *See* AC ¶¶ 251-55.

20       Defendants move to dismiss this claim, arguing that, because Plaintiffs do not plead a

21   Section 10(b) claim, their Section 20(a) claim fails.  *See* ECF No. 55 at 36.

22       Because the only basis that Defendants have advanced for dismissing Plaintiffs' Section

23   20(a) claim is that Plaintiffs failed to state a predicate claim under Section 10(b), the Court

24   DENIES Defendants' motion to dismiss the Section 20(a) claim to the extent that the claim is

25   predicated on Statement 2, as Plaintiff's Section 10(b) claim is not subject to dismissal to the

26   extent that it is predicated on that statement.  The motion to dismiss the Section 20(a) claim is

27   otherwise GRANTED for the reasons set forth above in connection with Plaintiffs' claims under

28   Section 10(b).

United States District Court
Northern District of California

43

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss Plaintiffs'

claims under Section 10(b) and Section 20(a) to the extent that such claims are premised on

Statement 2. The Court GRANTS, WITH LEAVE TO AMEND, Defendants' motion to dismiss

Plaintiffs' claims under Section 10(b) and Section 20(a) to the extent that they are premised on the

remaining statements challenged in the AC.

Plaintiffs may file an amended complaint within 30 days of the date this order is filed to

cure the deficiencies discussed herein, to the extent that Plaintiffs can do so without contradicting

the allegations in their prior pleadings. A failure to file an amended complaint will result in

dismissal with prejudice of the claims dismissed herein.

**IT IS SO ORDERED.**

Dated:  September 24, 2025



_____
JON S. TIGAR
United States District Judge