LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
 *melanie.blunschi@lw.com*
Samantha Kaplan (Bar No. 353933)
 *samantha.kaplan@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Daniel R. Gherardi (Bar No. 317771)
 *daniel.gherardi@lw.com*
140 Scott Drive
Menlo Park, CA 94025-1008
Telephone: +1.650.328.4600

*Attorneys for Defendants Fastly, Inc.,*
*Todd Nightingale, and Ronald W. Kisling*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE FASTLY, INC. SECURITIES LITIGATION | CASE NO. 4:24-cv-03170-JST |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Date: April 30, 2026<br>Time: 2:00 P.M.<br>Courtroom: Courtroom 6 – 2nd Floor<br>Judge: Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................................... 1

II.  ARGUMENT ...................................................................................................................... 2

A.  Plaintiffs' Effort To Restrict The Court's Review Of The SAC Is Improper.................................................................................................................... 2

B.  The Opposition Confirms That Plaintiffs Fail To Plead A False Statement.................................................................................................................. 3

1.  The SAC's New Theory Is Unsupported ...................................................... 3

2.  Statements About Macro Headwinds Were Not False .............................. 4

3.  Statements About Financial Performance Were Not False........................ 8

4.  Statements About Customer Retention Were Not False.......................... 10

C.  The Opposition Confirms That Plaintiffs Fail To Plead Scienter ........................ 11

1.  Plaintiffs Allege No Motive To Defraud ................................................... 11

2.  Plaintiffs Allege No Knowledge Of False Statements.............................. 12

3.  Plaintiffs Abandon Any Core Operations Theory .................................... 13

4.  The Non-Fraudulent Inference Is More Compelling ............................... 13

D.  The Opposition Confirms That Plaintiffs Fail To Plead Loss Causation................................................................................................................. 14

III.  CONCLUSION.................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adamo v. Nextdoor Holdings, Inc.*,
2025 WL 3238205 (N.D. Cal. Nov. 20, 2025) ................................................................. 12

*Bray v. Rocket Lab USA, Inc.*,
2025 WL 3688815 (C.D. Cal. Nov. 7, 2025).................................................................... 11

*City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*,
2024 WL 235183 (N.D. Cal. Jan. 22, 2024).................................................................... 14

*Dolly v. Gitlab*,
2025 WL 2372965 (N.D. Cal. Aug. 14, 2025) ........................................................... 10, 13

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) ......................................................................................... 13

*Hernandez v. City of San Jose*,
241 F. Supp. 3d 959 (N.D. Cal. 2017) .............................................................................. 2

*Huang v. Higgins*,
2019 WL 1245136 (N.D. Cal. Mar. 18, 2019).................................................................. 14

*In re AnaptysBio, Inc.*,
2021 WL 4267413 (S.D. Cal. Sept. 20, 2021).................................................................. 13

*In re Cal. Bail Bond Antitrust Litig.*,
2022 WL 19975276 (N.D. Cal. Nov. 7, 2022) ................................................................... 2

*In re Cutera, Inc. Sec. Litig.*,
2025 WL 2782916 (N.D. Cal. Sept. 30, 2025) ........................................................ 3, 4, 10

*In re Eargo, Inc. Sec. Litig.*,
2023 WL 5663154 (N.D. Cal. Aug. 31, 2023) .................................................................. 11

*In re Fusion-io, Inc.*,
2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ...................................................................... 7

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) ......................................................................................... 14

*In re Overstock Sec. Litig.*,
2020 WL 5775845 (D. Utah Sept. 28, 2020)..................................................................... 8

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
  266 F. Supp. 2d 1150 (C.D. Cal. 2003) ...................................................................... 12

*In re Stem, Inc. Sec. Litig.*,
  2025 WL 3675114 (N.D. Cal. Dec. 17, 2025) ................................................................ 5

*In re UiPath, Inc. Sec Litig.*,
  2025 WL 2065093 (S.D.N.Y. July 23, 2025) ............................................................... 14

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ...................................................................... 14

*Intus Care, Inc. v. RTZ Assocs., Inc.*,
  2024 WL 2868519 (N.D. Cal. June 5, 2024) .................................................................. 2

*Jiangchen v. Rentech, Inc.*,
  2018 WL 11513254 (C.D. Cal. Nov. 1, 2018), *adopted as modified*, 2018 WL
  11713507 (C.D. Cal. Nov. 2, 2018) ............................................................................. 4

*Kampe v. Volta Inc.*,
  2024 WL 308262 (N.D. Cal. Jan. 26, 2024) .................................................................. 4

*Minor v. Baker Mills, Inc.*,
  2021 WL 4522290 (N.D. Cal. May 20, 2021) ................................................................ 2

*Netbula, LLC v. Bindview Dev. Corp.*,
  2007 WL 2221070 (N.D. Cal. Aug. 2, 2007) ................................................................ 3

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
  135 F. Supp. 3d 1059 (N.D. Cal. 2015) ........................................................................ 2

*Pirani v. Netflix, Inc.*,
  2024 WL 4894291 (N.D. Cal. Nov. 26, 2024) .......................................................... 6, 10

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  2012 WL 1868874 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir.
  2014) ........................................................................................................................... 11

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) ..................................................................................... 11

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*,
  2022 WL 20286688 (N.D. Cal. Feb. 24, 2022) ............................................................. 3

*Sneed v. Talphera, Inc.*,
  147 F.4th 1123 (9th Cir. 2025) ........................................................................ 1, 5, 10, 11

*Stephens v. Maplebear Inc.*,
  2025 WL 1359125 (N.D. Cal. May 9, 2025) ................................................................ 11

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

iii

DEFENDANTS' REPLY ISO
MOTION TO DISMISS SAC
CASE NO. 4:24-cv-03170-JST

*Studen v. Funko, Inc.*,
  2024 WL 2209686 (W.D. Wash. May 16, 2024), *rev'd in part on other
  grounds*, 2026 WL 292424 (9th Cir. Feb. 4, 2026) ...................................................................... 8

*SVB Fin. Tr. v. Fed. Deposit Ins. Corp.*,
  2025 WL 661599 (N.D. Cal. Feb. 27, 2025) ............................................................................. 2

*Symantec Corp. v. Zscaler, Inc.*,
  2018 WL 1456678 (N.D. Cal. Mar. 23, 2018)........................................................................... 2

*Tremblay v. OpenAI, Inc.*,
  742 F. Supp. 3d 1054 (N.D. Cal. 2024) ................................................................................ 2, 3

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) ................................................................................................. 8

*Yaron v. Intersect ENT, Inc.*,
  2020 WL 6750568 (N.D. Cal. June 19, 2020) ........................................................................ 15

*Yockey v. Salesforce, Inc.*,
  745 F. Supp. 3d 945 (N.D. Cal. Aug. 16, 2024) ...................................................................... 3

**RULES**

Rule 12(b)(6)............................................................................................................................... 2

Rule 12(g) ............................................................................................................................... 2, 3

Rule 9(b) ..................................................................................................................................... 2

**STATUTES**

15 U.S.C. § 78u-4(b).................................................................................................................. 5

**GLOSSARY**

| Term | Definition |
|---|---|
| ¶ | Refers to the paragraphs of the Plaintiffs' Second Amended Complaint, unless otherwise noted |
| Appx. A | Appendix A attached to the Declaration of Daniel R. Gherardi in Support of Defendants' Motion to Dismiss (Dkt. No. 75-3) |
| Challenged Statements | The statements identified in Appendix A |
| Class Period | November 15, 2023, and August 7, 2024, both dates inclusive |
| CW | Confidential Witness |
| Defendants | Fastly, Inc., Todd Nightingale, and Ronald Kisling |
| Ex. | Exhibits attached to the Declaration of Daniel R. Gherardi in support of Defendants' Motion to Dismiss (Dkt. Nos. 75-4 through 75-13) |
| First Amended Complaint or FAC | Plaintiffs' First Amended Complaint for Violation of the Federal Securities Laws (Dkt. No. 53) |
| Fastly or the Company | Fastly, Inc. |
| Item 303 | 17 C.F.R. § 229.303(b)(2)(ii), Management's discussion and analysis of financial condition and results of operations |
| LTM NRR | Last-Twelve Months Net Retention Rate, which measures total customer revenue over the prior twelve-month period after accounting for customer departures, billing decreases, and revenue expansion during the same period |
| Motion to Dismiss or Mot. | Defendants' Motion to Dismiss the SAC (Dkt. No. 75) |
| Opposition or Opp. | Plaintiffs' Opposition to Defendants' Motion to Dismiss the SAC (Dkt. No. 79) |
| Order | Order Granting in Part and Denying in Part Motion to Dismiss (Dkt. No. 67) |
| Plaintiffs | Lead Plaintiff Olger Guri and named Plaintiffs Ken Kula, Ericka Billington, and Bhadresh Shah |
| PSLRA | Private Securities Litigation Reform Act of 1995, as amended.  15 U.S.C. § 78u-4, et seq. |
| Q3 2023 | Third Quarter of Fiscal Year 2023 (July 1, 2023 through September 30, 2023) |
| Q4 2023 | Fourth Quarter of Fiscal Year 2023 (October 1, 2023 through December 31, 2023) |
| Q1 2024 | First Quarter of Fiscal Year 2024 (January 1, 2024 through March 31, 2024) |
| Q2 2024 | Second Quarter of Fiscal Year 2024 (April 1, 2024 through June 30, 2024) |

| SAC | Second Amended Complaint for Violation of the Federal Securities Laws, Dkt. 72 |
|---|---|
| SMB | Small and medium-sized business |
| Statement _ | Reference to corresponding numbered statement in Appx. A. |
| Top-10 Customers | Defined as "Key Customers" in the SAC (¶ 65), Fastly's top-10 largest customers that typically account for between 30% and 40% of overall revenue |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

## I.    INTRODUCTION

The Opposition effectively asks the Court to set aside the exacting pleading standards for securities-fraud claims and allow them to proceed to discovery based on conclusory allegations unsupported by any well-pled or actual facts.  That is exactly what the PSLRA was enacted to prevent.  Plaintiffs have not cured any of the defects that led this Court to dismiss 13 of the 14 Challenged Statements before, and the expanded discussion of the 14th statement in the SAC only further confirms that Plaintiffs' allegations are insufficient to state a claim for securities fraud.

**No Falsity**.  Far from meeting their burden of pleading specific, contemporaneous facts that indicate any Challenged Statement was false at the time it was made, Plaintiffs resort to mischaracterizing the statements by divorcing them from the very context that recent Ninth Circuit precedent makes clear *must* be considered, *i.e.*, Fastly's warnings and disclosures about the challenging macroeconomic climate.  *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025).  The Opposition identifies no contemporaneous *facts* that contradict any Challenged Statement, particularly when considered with appropriate context—and does not even mention Statements 4, 10, 11, or 12, thus conceding that these statements are not actionable.

**No Scienter**.  Plaintiffs' claims additionally fail across the board for lack of facts establishing the required strong inference of scienter.  Plaintiffs do not meaningfully dispute that the SAC lacks any allegations of a motive to defraud, instead pointing only to a single non-discretionary stock transaction to cover tax obligations, which courts have routinely held is not indicative of scienter.  Particularly because the Challenged Statements center around Defendants' subjective comments about customer trends and usage, the more compelling inference is the nonfraudulent one:  Defendants kept investors updated in a shifting economic environment about the impacts they were seeing of that environment on Fastly's business and customers.

**No Loss Causation.**  The Opposition confirms that Plaintiffs have not identified any new information that was revealed to investors that corrected any Challenged Statement on Plaintiffs' purported "corrective disclosure" dates.  And Plaintiffs do not identify any undisclosed risk that materialized on any date, either.  The disclosure of disappointing financial results and updated guidance, without more, is not sufficient to plead securities fraud.

## II.   ARGUMENT

### A.   Plaintiffs' Effort To Restrict The Court's Review Of The SAC Is Improper

In an effort to avoid scrutiny of the SAC, Plaintiffs argue Defendants cannot move to dismiss claims the Court previously found adequately pled.  Opp. at 1, 4-6.  Plaintiffs are wrong.

*First*, because the SAC "presents an altered narrative from that of" the FAC—namely, newly focusing on alleged omissions about Fastly's Top-10 Customers rather than its 500+ "enterprise customers"—the Court may "revisit" Defendants' dismissal arguments for the SAC. *In re Cal. Bail Bond Antitrust Litig.*, 2022 WL 19975276, at *8 n.3 (N.D. Cal. Nov. 7, 2022); *Tremblay v. OpenAI, Inc.*, 742 F. Supp. 3d 1054, 1057-58 (N.D. Cal. 2024) (where plaintiffs amended claim previously found adequately pled, Defendants can move to dismiss it); Mot. at 5.

*Second*, Rule 12(g) does not bar any aspect of the Motion.  Defendants have not raised any new defenses.  The Motion moves to dismiss the SAC under Rule 9(b), 12(b)(6), and the PSLRA for failure to plead the elements of falsity, scienter, and loss causation.  Plaintiffs' examples (Opp. at 5)—where the court declined to consider a new, distinct basis for dismissal—are inapposite. *E.g.*, *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 985 (N.D. Cal. 2017) (refusing to consider immunity defense not raised before); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 135 F. Supp. 3d 1059, 1069-70 (N.D. Cal. 2015) (refusing to consider defense not raised before).

In any event, neither Rule 12(g) nor any other rule prohibits the Court from exercising its discretion to consider new defenses or to consider case authority not previously cited.  Courts in this District routinely consider new arguments on a later-round motion to dismiss, including for the sake of judicial efficiency. *Intus Care, Inc. v. RTZ Assocs., Inc.*, 2024 WL 2868519, at *2 (N.D. Cal. June 5, 2024) (exercising discretion to evaluate motion to dismiss claim defendant did not previously seek to dismiss); *SVB Fin. Tr. v. Fed. Deposit Ins. Corp.*, 2025 WL 661599, at *8 (N.D. Cal. Feb. 27, 2025) (similar); *Minor v. Baker Mills, Inc.*, 2021 WL 4522290, at *1 (N.D. Cal. May 20, 2021) (Opp. at 5) (similar); *Symantec Corp. v. Zscaler, Inc.*, 2018 WL 1456678, at *2 (N.D. Cal. Mar. 23, 2018) (noting Ninth Circuit's "flexible and efficiency-oriented view of a district court's ability to review arguments offered for the first time in a second motion").

*Third*, the Court may depart from its prior order because the SAC "supersedes" the FAC.

*Tremblay*, 742 F. Supp. 3d at 1057. Although this may not be "license" to "reassert arguments the Court previously rejected," *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 950 & n.3 (N.D. Cal. Aug. 16, 2024), where, as here, Plaintiffs have changed their theories of the case, the Court may choose not "to decide the second motion to dismiss in the same way it decided the first." *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2022 WL 20286688, at *2 (N.D. Cal. Feb. 24, 2022).

## B. The Opposition Confirms That Plaintiffs Fail To Plead A False Statement

Because Plaintiffs "failed to respond to Defendants' arguments in connection with" Statements 4, 10, 11, and 12, any claims "premised on those statements" should be dismissed. *In re Cutera, Inc. Sec. Litig.*, 2025 WL 2782916, at *8 (N.D. Cal. Sept. 30, 2025). Plaintiffs' arguments as to the falsity of the remaining statements all fail.

### 1. The SAC's New Theory Is Unsupported

As the Opposition acknowledges, the SAC newly alleges that nearly all of the Challenged Statements were purportedly misleading because Defendants concealed usage declines by Fastly's *Top-10 Customers*, whereas the FAC focused on allegedly concealed usage declines by Fastly's enterprise customers (of which there are more than 500). Opp. at 7; Mot. at 6 (comparing FAC and SAC). Plaintiffs assert that this change was "minor" and "inconsequential," *id.* at 7, 10, but Plaintiffs cannot avoid the import of this change by adding subjective conclusory labels in their Opposition. *E.g.*, *Netbula, LLC v. Bindview Dev. Corp.*, 2007 WL 2221070, at *3 n.2 (N.D. Cal. Aug. 2, 2007) (questioning plaintiff's suggestion that new proposed allegations about "the events constituting Defendants' supposed fraud" were "minor changes" where plaintiff sought to change theory of purported misrepresentation). As the Court recognized, there is a significant difference between "large" or "largest" or "enterprise" customers, on the one hand, and Top-10 Customers, on the other. Order at 26-27 (allegations "about a decline in usage from Fastly's large or enterprise customers during Q4 2023 . . . do not raise the inference that those large customers that reduced their usage were 'key customers' or 'major customers' of Fastly"); *cf.* Opp. at 7 (stating without support that Fastly's "'largest customers' are the same as Key Customers"); Opp. at 10 (asserting without support that "Fastly's 'largest customers' and 'Key Customers' are *the same*"). The changes in the SAC matter under the PSLRA, which requires every complaint to "specify . . . the

reason or reasons" why each Challenged Statement is "misleading." 15 U.S.C. § 78u-4(b).

Similarly, the Motion challenges Plaintiffs' CW allegations, which Plaintiffs now claim support the SAC's theories based on Top-10 Customers, despite the fact that the CWs' allegations focus on large or enterprise customers. *Jiangchen v. Rentech, Inc.*, 2018 WL 11513254, at *8 n.8 (C.D. Cal. Nov. 1, 2018) (where amended complaint omitted key CW allegation, court is "not required to turn a blind eye to Plaintiff's prior pleadings that bear on the plausibility of Plaintiff's claims"). Plaintiffs offer no response to the fact that the SAC fails to plead that the CWs' roles involved relevant interactions with or insight into Top-10 Customers whatsoever. Mot. at 6-7 (CW1 sold security services, CW2 worked with mid-market customers, CWs 3 and 4 do not claim to have worked with a Top-10 Customer, CW6 was a website producer; the Opposition drops all arguments as to CWs 5 and 7). Given Plaintiffs' falsity theory largely rests on claims as to Top-10 Customers, the CWs were not "in a position to have reliable information" about usage or revenue declines by Top-10 Customers, and their allegations should not be credited. *Kampe v. Volta Inc.*, 2024 WL 308262, at *13 (N.D. Cal. Jan. 26, 2024); *Cutera*, 2025 WL 2782916, at *9 ("vague and conclusory" CW allegations did not raise inference company "was experiencing major quality, reliability, and order fulfillment problems" at the time of the challenged statements).

### 2.      Statements About Macro Headwinds Were Not False

**Statement 1**: The Opposition repeats verbatim the erroneous allegation that led the Court to dismiss Statement 1: Nightingale did *not* say that Fastly "did not have exposure in the SMB market and mid-market." Order at 11; Opp. at 2 ("Nightingale claimed Fastly … did not have exposure in the SMB or mid-market"). Plaintiffs appear to concede that the ***actual statement***, that Fastly did not have ***a lot*** of exposure, was not false. Instead, the Opposition emphasizes another part of Statement 1—that Fastly had been "largely resilient to" the "macro trends that seemed to hinder some of our competitors"—but once again mischaracterize the statement as asserting that Fastly was "resilient to" (not *largely* resilient to) such trends. Opp. at 12.

Plaintiffs identify no fact supporting their theory that the statement that Fastly was "largely resilient" to macro trends was false or misleading when made. Contrary to Plaintiffs' insinuation, Statement 1 (made on November 15, 2023) was not about "*current* impact" (i.e., in Q4 2023), Opp.

at 12, but was about the past ("we *were* largely resilient to…").  Indeed, Plaintiffs recognize that Nightingale's statement went on to explain what he meant: that Fastly had been largely resilient *in Q3* to factors facing competitors because the "biggest pressure" competitors faced was in the SMB market where Fastly did not have a lot of exposure.  *Id*. at 13; ¶ 132.  Plaintiffs' request that the Court ignore the second half of the statement when interpreting the first half is improper.  *Sneed*, 147 F.4th at 1131 (9th Cir. 2025) (statement must be read "in context" and in light of "surrounding text").

**Statement 2**: None of Plaintiffs' arguments demonstrate that Statement 2 misled investors about what macroeconomic effects Fastly was seeing.  Plaintiffs ask the Court to ignore the full context of Nightingale's November 15, 2023 statements that Fastly was not seeing the same slowing in growth as its competitors.  The Court need not resolve any "factual dispute," Opp. at 7-8, and may consider the transcript of the November 15, 2023 analyst call that the Court previously found was subject to judicial notice.  Ex. E at 7; Order at 6.

*First*, the Opposition improperly claims that the Court may not consider the context provided in statements about observed macro impacts Fastly disclosed two weeks prior on November 1—in the very "earnings call" Nightingale referenced in Statement 2 and that the analyst asked about in the question that led to Statement 2.  That position is contrary to Ninth Circuit law.  *Sneed*, 147 F.4th at 1131 ("Plaintiffs must 'demonstrate that a particular statement, *when read in light of all the information then available to the market* … conveyed a false or misleading impression'") (emphasis added).  It is well-settled that "a reasonable investor would interpret vague and optimistic statements by considering other information 'the market already knew' about the 'difficulties facing' a company."  *Id.*  Statement 2 ("we're not seeing that") is exactly one such "vague statement" for which "[c]ontext matters."  *Id.*; *In re Stem, Inc. Sec. Litig.,* 2025 WL 3675114, at *6 (N.D. Cal. Dec. 17, 2025) (statement "This is a fully automated process" was not misleading where plaintiffs "omit any context" for the word "This").  Plaintiffs' position is also irreconcilable with their reference to a supposed all-hands meeting from before the Class Period that they concede was a "recap of what was discussed during" the very "earnings call" they ask the Court to ignore.  Opp. at 8; ¶ 102.  Plaintiffs have no response to this binding Ninth Circuit

law other than they think *Sneed* and *Intuitive Surgical* are "factually distinguishable." Opp. at 8 n.3. But that position is both wrong on the merits and waived given Plaintiffs assert it in one of *eighteen* single-spaced footnotes with substantive arguments in their brief, in violation of this Court's rules. Standing Order for All Civil Cases Before District Judge Jon S. Tigar § L.2.

In any event, Plaintiffs do not dispute Fastly disclosed on November 1 that some revenue metrics were "down" because Fastly was "starting to see some effects" of the "economic environment." Ex. D at 3, 10. Plaintiffs' argument that Nightingale "spun" that news "positively," Opp. at 8, does not negate that it was disclosed and part of the total mix of information available to investors. Nightingale's disclosure of these impacts is irreconcilable with Plaintiffs' manufactured reading of his November 15 statement to somehow mean Fastly was not seeing *any* macroeconomic impacts—as further shown by Statement 1 from the same call, where he said Fastly had been "*largely* resilient" to trends and did not have a "*lot* of exposure" to the "biggest pressure" facing competitors, both of which imply *some* impact. ¶ 132 (emphasis added).

*Second*, the Opposition argues Nightingale's "full statement" in response to an analyst's question supports Statement 2's falsity, Opp. at 8-9, but the opposite is true. Even if Nightingale opined that "maybe" Fastly was "beating" competitors' slowing growth "with better execution," that does not suggest Nightingale "clearly denied that Fastly was feeling macro impacts." *Id*. at 8. Nightingale's "full statement" associated with Statement 2 reveals multiple acknowledgments of macro effects: "[m]aybe we are seeing a little"; "I saw a little bit of deal elongation"; "we had 3 or 4 deals that slipped." Ex. E at 7. And in response to another question on the same transcript page, Nightingale again acknowledged "a little bit of elongated deal flow" and no "signal that says that's better yet." *Id.* Reviewing the entire context of Statement 2, including the November 1 and November 15 investor calls, as opposed to the cherry-picked portions Plaintiffs cite, demonstrates that Statement 2 was not materially false or misleading. *Pirani v. Netflix, Inc.*, 2024 WL 4894291, at *7 (N.D. Cal. Nov. 26, 2024) (statement that markets had a "lot of headroom" for growth not misleading "in light of other disclosures explaining that account sharing may 'hinder' growth").

*Third*, the Opposition does not explain how Fastly's public disclosures are rendered false by CW allegations of Defendants' supposed internal comments to employees. No CW alleges

which customers were not bringing in "as much" traffic, whether that was a material amount, or whether it involved Top-10 Customers or even enterprise customers. Mot. at 10. CW1 claims Defendants discussed that unidentified customers were "not bringing *as much* traffic," at an all-hands meeting "shortly after Fastly's November 1, 2023 Q3 2023 earnings call," ¶¶ 99-100 (emphasis added), but that is consistent with Defendants disclosing some impact from macroeconomic conditions. In fact, Plaintiffs appear to concede Nightingale did not claim Fastly was seeing *no* macroeconomic effects. Opp. at 1 (Defendants "were not seeing the *same* slowing growth or macroeconomic pressures as Fastly's competitors") (emphasis added).

**Statement 6**: Statement 6 is a response to an analyst asking whether macroeconomic headwinds were "worse in the last quarter [Q4] versus Q3." ¶ 148. Nightingale responded: "I think it was pretty much as we saw last quarter." ¶ 149. To plead falsity, Plaintiffs must allege facts demonstrating that Q4 2023 was worse than Q3, or that some material fact about the comparison between the quarters was concealed. They do not do so.

Instead, the Opposition points to paragraphs in the SAC that discuss generalized claims about macro forces "throughout 2023" and alleged revenue that "was decreasing" or "expected to decline," Opp. at 11 (citing ¶¶ 90-91, 98-101), but Plaintiffs identify no fact suggesting that Top-10 Customer traffic materially changed between Q3 2023 and Q4 2023, much less due to macroeconomic headwinds. In particular, Plaintiffs cannot allege Statement 6 was false in discussing the results of the entirety of *Q4* 2023 based on a statement allegedly made just one month into that quarter and discussing *Q3* 2023. *In re Fusion-io, Inc.*, 2015 WL 661869, at *18 (N.D. Cal. Feb. 12, 2015) (rejecting CW allegations about a November meeting as insufficient to show falsity of statements made "in mid to late February" because it was not contemporaneous with the challenged statements). Plaintiffs' footnote argument that the SAC adequately alleges "material declines" in Top-10 Customer revenue from Q3 to Q4 2023 based on Fastly's disclosed financials is also wrong. Opp. at 9 n.4. Top-10 Customer revenue ***increased*** in Q4 2023. Ex. F at 3. Even if the overall percentage of revenue for Top-10 Customers did not change, that same percentage was of a larger amount of total revenue between the quarters. *Id.* This data "undercuts" the unsubstantiated and "more generalized allegations" by CWs of Top-10 Customer revenue

declines in Q4. *In re Overstock Sec. Litig.*, 2020 WL 5775845, at *7 (D. Utah Sept. 28, 2020).

### 3.   Statements About Financial Performance Were Not False

**Statement 5**: Plaintiffs' principal rebuttal to Defendants' dismissal arguments for Statement 5 is that the Court supposedly cannot consider them. Opp. at 10. That is wrong. Statement 5 includes Fastly's disclosure that Q4 2023 revenue came in at the low end of guidance "driven by" "weaker than anticipated international traffic," ¶ 146, which Fastly discussed at length during its earnings call, Ex. F at 3, 7, 14, 17-18. Plaintiffs admit that the SAC changed the falsity theory for Statement 5, now alleging it was misleading because the revenue result was driven by Top-10 Customers' declining usage in Q4 2023. Opp. at 10. But Plaintiffs identify no fact to support that theory. They point again only to the alleged November all-hands meeting discussing Q3 (not Q4) results, which they previously alleged only concerned supposed declines in "large" or "enterprise" customers. Opp. at 10 (citing ¶¶ 99-102); *cf.* FAC ¶¶ 88-90. Plaintiffs make no effort to tie a supposed statement about customer activity in Q3 2023 to the conclusory assertion that Q4 2023 revenue in relation to guidance was driven by Top-10 Customers. In any event, even assuming Plaintiffs' claim that Top-10 Customer revenue declined in Q4 2023, Plaintiffs cannot meaningfully distinguish well-settled authority that a company's statement that a business metric was *driven by* one factor does not foreclose the existence of another factor. Mot. at 12; *see Studen v. Funko, Inc.,* 2024 WL 2209686, at *16 (W.D. Wash. May 16, 2024), *rev'd in part on other grounds*, 2026 WL 292424 (9th Cir. Feb. 4, 2026) (statement that increased inventory reflected "receipt of delayed inventory" was not misleading because company "never said 'that delayed inventory was the only factor contributing to the increase'"). Plaintiffs' effort to "rewrite[] this statement" to suggest Fastly said international traffic was the *only* factor that affected Q4 2023 revenue should be rejected. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021).

**Statements 7 and 8**: The Opposition also does not rebut Plaintiffs' failure to adequately allege Fastly's Form 10-K disclosures that "enterprise customers" continued to leverage its platform (Statement 7) and warnings that if Fastly was "unable to attract new customers, in particular enterprise customers," its business could be harmed (Statement 8), were false. *First*, Plaintiffs claim their new falsity theory based on Top-10 Customers rather than 500+ enterprise

customers is just a "minor clarification." Opp. at 11. That is wrong, and in any event, does not explain why Statements 7 and 8 were supposedly false when made. *Infra* at 8-9. *Second*, Plaintiffs argue they "need only allege that enterprise customers were decreasing their usage of Fastly's platform in Q4 2023 to satisfy falsity" for Statements 7 and 8. Opp. at 12. But Plaintiffs cite nothing in the SAC that supports declining usage of Fastly's platform—much less in what quantity—by enterprise customers in Q4 2023. *Id.* (citing ¶ 155 (alleging only that unnamed enterprise customers "were cancelling their contracts with the Company in 2023 or requesting more aggressive discounts when renewing their contracts"), ¶ 157 (not referencing enterprise customers at all), and ¶ 165 (merely quoting Statement 7 in the 10-K)). *Third,* Plaintiffs make no meaningful attempt in the Opposition to support their Item 303 claim for Statement 7. They do not identify what material adverse trend existed at the end of Q4 2023, much less one known to management, nor how that supposed trend differed from the declining metrics Fastly disclosed at the end of Q3 2023 (and which Plaintiffs instead ask the Court to ignore). Opp. at 12; Exs. C, D.

**Statement 9**: The Opposition concedes that "for Statement 9 to be false, the complaint must identify who the 'key customers' and 'major customers' are and support that they had, in fact, reduced their usage when Statement 9 was made." Opp. at 11. But Plaintiffs fail to do so. The paragraphs the Opposition cites—alleging macro forces and unspecified pressure throughout 2023, ¶¶ 90-91, and all-hands meetings in 2023 concerning alleged customer usage declines, ¶¶ 99-101—do not "identify who the 'key customers' and 'major customers' are" nor that they had "in fact, reduced their usage" as of February 22, 2024.

**Statements 13 and 14**: The Opposition identifies two allegations in the SAC that supposedly demonstrate the falsity of the risk disclosures about maintaining relationships with customers in Statements 13 and 14. *First*, the Opposition points to supposed "admissions" on Fastly's Q1 2024 earnings call that Top-10 Customer revenue declined in Q1 2024. Opp. at 14 (citing ¶¶ 197, 199). Plaintiffs do not, however, explain how a disclosure of Q1 2024 revenue declines on the same day Statements 13 and 14 were published rendered these contemporaneous risk disclosures misleading. Plaintiffs argue disclosures in an earnings call are insufficient to make a statement in a simultaneous document not misleading for supposedly omitting the very

information discussed on the call. Opp. at 15. But the Ninth Circuit is clear that the court must consider "all the information then available to the market," including "information outside the immediate document" containing the challenged statement in evaluating falsity. *Sneed*, 147 F.4th at 1131; *Dolly v. Gitlab*, 2025 WL 2372965, at *10 (N.D. Cal. Aug. 14, 2025) (statements describing company's "new AI-powered features" not misleading when "market already knew" the limits of these features). *Second*, the Opposition cites CW6's "supplementing" allegation that Defendants discussed Top-10 Customer declines at an all-hands meeting after Q1 2024. Opp. at 14; ¶ 224. But Plaintiffs do not explain how CW6's account of a call *after* the Q1 2024 earnings announcement is different from the Top-10 Customer declines Fastly *reported to investors* in that announcement (indeed, CW6 admits these all-hands calls are "recap[s]" of earnings calls, ¶ 102).

The Opposition also does not rebut that the risk factors in Statements 8-9 and 13-14 are protected forward-looking statements. They are therefore not actionable. And they did not omit any then-present fact because Plaintiffs have failed to plead any "declining usage and revenues" from Top-10 Customers that impacted Q4 2023 revenue (as it relates to Statements 8 and 9). *Pirani*, 2024 WL 4894291, at *8 (rejecting risk disclosure claim because fact that "Netflix experienced a high degree of account sharing" did not suggest that its "'operations' were necessarily adversely impacted"). For Q1 2024, revenue declines from Top-10 Customers were disclosed so Plaintiffs cannot, therefore, claim Statements 13 and 14 were misleading by omission.

### 4.    Statements About Customer Retention Were Not False

**Statement 3**: The Order dismissed Plaintiffs' challenge to Statement 3 because the FAC failed to plead any facts suggesting that "customer retention efforts" were not "stable" in Q4 2023. Order at 16-17. The Opposition confirms that the SAC fails for the same reason. Instead, Plaintiffs now argue that Statement 3 is false because "customer retention" must mean maintaining "revenue growth" rather than what the words actually say: retaining customers. Opp. at 13. This fails for two reasons. *First*, Plaintiffs distort what Nightingale said. He stated "customer retention *efforts*" (not just "customer retention") were stable. ¶ 140; *Cutera*, 2025 WL 2782916, at *5 (rejecting plaintiff's "interpretation that does not reflect what Defendants said"). Plaintiffs allege no facts concerning Fastly's efforts. *Second*, that Nightingale followed his comment with unchallenged

accurate financial metrics does not demonstrate that customer retention efforts were not "stable." The Opposition speculates positive LTM NRR and growing customer count "could" be consistent with unstable retention efforts, but Plaintiffs plead no facts to support this claim. Opp. at 13.

### C. The Opposition Confirms That Plaintiffs Fail To Plead Scienter

Plaintiffs' Opposition also does not identify any fact demonstrating a strong inference of fraudulent intent that is at least as compelling as the nonfraudulent inference. Indeed, Plaintiffs' ability to plead scienter is doubly unlikely based on two recent Ninth Circuit holdings. First, Plaintiffs fail to allege any coherent motive for Defendants to defraud investors. *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) (holding that failure to allege motive to defraud makes it "much less likely" plaintiffs can plead scienter). And second, Plaintiffs fail to allege that any Challenged Statement was "flagrantly false." *Sneed*, 147 F.4th at 1134 (holding that failure to allege "flagrant[]" falsity makes scienter much harder to plead); *Bray v. Rocket Lab USA, Inc.*, 2025 WL 3688815, at *3 (C.D. Cal. Nov. 7, 2025) (recognizing that *Sneed* "added to the approach to scienter" where alleged misstatements are not "flagrantly" false). Plaintiffs have no rebuttal to this controlling Ninth Circuit precedent. Opp. at 17 n.10.

### 1. Plaintiffs Allege No Motive To Defraud

Plaintiffs' Opposition confirms they plead no motive for Defendants to commit securities fraud. Plaintiffs abandon their theory that Kisling's stock sales are relevant to scienter. *See* ¶ 240. And as for Nightingale, Plaintiffs claim that his performance-based equity compensation and nondiscretionary stock sale to cover taxes somehow demonstrate scienter. Opp. at 21-22. But Plaintiffs ignore the numerous cases rejecting both theories. *E.g.*, *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *23 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014) (the "sheer fact" that a defendant had a "performance-based compensation package[] does not support an inference of scienter"); *Stephens v. Maplebear Inc.*, 2025 WL 1359125, at *8 (N.D. Cal. May 9, 2025) ("Sales to satisfy tax obligations are not indicative of scienter"); *In re Eargo, Inc. Sec. Litig.*, 2023 WL 5663154, at *1 (N.D. Cal. Aug. 31, 2023) (same). In any event, Plaintiffs do not plead any facts suggesting that Nightingale's single, nondiscretionary stock sale was suspicious or unusual in any way because they do not plead any

of the required facts about his past trading history as required. *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1168-69 (C.D. Cal. 2003) (Opp. at 21-22).

### 2. Plaintiffs Allege No Knowledge Of False Statements

The Opposition block quotes the Court's prior holding that scienter was adequately pleaded as to some statements. Opp. at 18-19. But Plaintiffs concede that the Court's Order was based on the FAC's allegations of Defendants' alleged knowledge of "declines in usage and revenues from Fastly's large *(or 'enterprise')* customers." Opp. at 18 (quoting Order at 35); Order at 35-36 ("revenue model depended significantly on … *enterprise* customers"); ("dependence on revenue from *enterprise* customers was known to investors"); ("failure to reveal the declines in usage and revenues from *enterprise* customers associated with macroeconomic effects") (emphases added). Plaintiffs ask the Court now to make the exact same ruling as to all Challenged Statements in the SAC, but substituting Fastly's "Top-10 Customers" for each instance of "enterprise customers," as though the Top-10 is the same as the top-500+. Opp. at 19. Plaintiffs do not support such a request, and indeed the Court has already expressly rejected the idea that "enterprise" customers are interchangeable with "key" customers, much less *Top-10* Customers, Order at 27.

The SAC must plead particularized facts showing that Defendants knew that at the time of each Challenged Statement, Fastly's Top-10 Customers were "simultaneously decreasing their usage, causing revenue declines." Opp. at 19; ¶ 213. *Adamo v. Nextdoor Holdings, Inc.*, 2025 WL 3238205, at *4 (N.D. Cal. Nov. 20, 2025) ("To show scienter, Plaintiff must allege 'specific contemporaneous statements or conditions'" showing that statements were false "when made."). Plaintiffs fail to do so. For the Challenged Statements on November 15, 2023 and February 14 and February 22, 2024, the Opposition points only to ¶¶ 99-102. Opp. at 19. Those paragraphs include only Plaintiffs' unsubstantiated opinion that Nightingale's purported discussion of "large media accounts" at all-hands meetings was actually a discussion about "Top-10 Customers." ¶¶ 100-01; *see also* ¶ 219. Likewise, that Nightingale stated that he had a habit of "tracking top 10, top 20 deals for any given quarter," Opp. at 20; Ex. E at 7, does not show that he knew about supposed "stagnation in growth" in Top-10 Customers in November 2023 or February 2024, including because Plaintiffs do not allege any facts suggesting that the "deals" Nightingale

referenced related to existing Top-10 Customers. *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 539 (9th Cir. 2024) (allegations that defendant was "obsessed with numbers," received "weekly reports of performance results" and "sign[ed] off on every new acquisition" suggest only general knowledge of "day-to-day workings"); *Gitlab*, 2025 WL 2372965, at *14 ("generic allegations" of access to unspecified information about business operations and financial condition are not sufficient).

The Opposition similarly identifies no facts showing Defendants knowingly concealed any information contradicting the challenged risk factors in Fastly's Q1 2024 Form 10-Q. Opp. at 20. Plaintiffs concede that Defendants disclosed a reduction in revenue from Top-10 Customers in announcing Q1 2024 earnings, at the same time Fastly warned that its business would likely be harmed if customers did not increase their usage of the platform. ¶¶ 172-80; *In re AnaptysBio, Inc.*, 2021 WL 4267413, at *10 (S.D. Cal. Sept. 20, 2021) (finding no scienter given the extent of what defendant "had already disclosed"). Plaintiffs allege that Fastly became aware of re-pricing by Top-10 Customers "at the end of March and in early April" 2024, ¶ 179, but Plaintiffs only challenge statements made *before* that time, or as to the May 2024 Form 10-Q, statements that were accompanied by disclosure about headwinds with Top-10 Customers.

### 3.   Plaintiffs Abandon Any Core Operations Theory

The Opposition disclaims reliance on core operations. Opp. 20 (characterizing Defendants' arguments on core operations as "mistake[n]"). In any event, Plaintiffs offer no allegation to support a claim that Defendants "must have been aware" of Top-10 Customer usage declines, particularly given Plaintiffs do not identify any Top-10 Customer with declining usage, much less attempt to quantify any such supposed decline. *Id.* at 19-20 (referencing ¶¶ 3, 6, 66, 70-72, which are *not* about Top-10 Customers). Although the SAC claims it "defies logic" that Defendants were unaware of such declines when the Challenged Statements were made (which is part of a core operations theory Plaintiffs disclaim), ¶ 222, Plaintiffs do not support this sweeping conclusion.

### 4.   The Non-Fraudulent Inference Is More Compelling

Viewing the SAC's allegations holistically, the non-fraudulent inference—that Defendants updated investors on what Fastly was seeing with regard to the macroeconomic environment—is far more compelling. Fastly provided unchallenged financial results, and warned investors through

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

"[d]etailed risk disclosure[s]," which "negate[] an inference of scienter." *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1165 (C.D. Cal. 2007). As soon as Fastly saw macroeconomic headwinds affecting its business, it disclosed those impacts at the next scheduled opportunity. Because Defendants were "trying to provide open and regular communication to their shareholders during uncertain economic times," the non-fraudulent inference is more compelling. *City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*, 2024 WL 235183, at *16 (N.D. Cal. Jan. 22, 2024).

**D.      The Opposition Confirms That Plaintiffs Fail To Plead Loss Causation**

The Opposition also confirms Plaintiffs' loss causation theory fails, regardless of whether it is framed as a materialization of the risk or corrective disclosure theory. Plaintiffs first rely on a stock price decline on February 14, 2024. Opp. at 22. But they point only to the Court's Order, while conceding that the Order was premised on allegations about usage declines by "large customers," **not** Top-10 Customers. Opp. at 22 (citing Order at 40). The SAC includes no allegation tying any disclosure on February 14, 2024 to purportedly concealed risks related to usage declines by Top-10 Customers. Instead, Plaintiffs argue they are not required to allege that any negative news about usage declines was "revealed" to the market on February 14. Opp. at 23. This is incorrect: under a materialization of the risk theory, Plaintiffs must allege both that the risk was concealed—here, it was disclosed, both before and during the Class Period, Ex. B at 25, Ex. D, at 3, 10, Ex. E at 7—and that the concealed "truth" was "revealed to the market." *In re UiPath, Inc. Sec Litig.*, 2025 WL 2065093, at *20 (S.D.N.Y. July 23, 2025); *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 n.6 (9th Cir. 2022) (noting that "it is unclear in any event that courts employing the 'zone of risk' theory require any lesser showing" that the "very facts" allegedly misrepresented caused plaintiffs' losses); *Huang v. Higgins*, 2019 WL 1245136, at *17 (N.D. Cal. Mar. 18, 2019) (rejecting "flaw[ed]" materialization of the risk theory where plaintiffs did not "connect the risks" concealed to the "negative financial news released on Plaintiffs' loss causation dates"). Plaintiffs' allegations foreclose their ability to meet this standard because instead of claiming the risk was revealed on February 14, they claim Defendants allegedly "misled" investors by concealing Top-10 Customer usage declines. ¶ 248. Plaintiffs cannot have it both ways.

Plaintiffs also do not explain how stock price declines on May 1 and August 7, 2024 were caused by the revelation of some previously concealed truth or materialization of some undisclosed risk. Mot. at 24-25. As to May 1, the Opposition claims Nightingale "corrected" statements about Q4 2023 by disclosing that macro impacts on Fastly's business, unstable customer retention, and decreasing traffic had started in Q4. Opp. at 23. But Nightingale only said that a "pricing trend that we have been seeing sort of continues," (not "had" been seeing, as Plaintiffs suggest, *id.*) without reference to when it started or whether that "pricing trend" somehow involves Top-10 Customers' usage as Plaintiffs conclusorily assert. Ex. G at 8. Moreover, Nightingale also disclosed on May 1 that there *had* been "slightly more kind of pricing pressure than we're used to" *in Q1 2024* for "our top 10, 15 largest accounts." *Id.*; ¶ 174. That statement expressly relates to what the Company saw and was "used to" for Q1 2024; it says nothing about Q4 2023.

Similarly, Kisling's August 7 statement about "sequential declines in revenue from some of our largest customers" that Fastly publicly predicted on May 1, Mot. at 4, did not reveal anything new about Q1 2024 and did not correct the Q1 2024 risk factors in Statements 13 and 14. As Kisling explained, the declines were driven by factors "discussed in Q1" and a "continuation" of lower traffic Fastly disclosed on May 1. Ex. H at 6. These statements are not "contrary" to Defendants' May 1 disclosures of optimism the trends would improve. ¶ 186; Opp. at 23-24.

Finally, Defendants addressed (and did not "waive," Opp. at 25) that May 1 and August 7 also fail under a materialization of the risk theory. Mot. at 2, 23. Fastly consistently disclosed its revenue was highly dependent on a few customers whose usage may change based on economic conditions. Mot. at 2-3. After Q4 2023, Fastly disclosed the risk of "macro uncertainties" that it was "incorporat[ing]" into annual guidance. ¶¶ 138, 247; Mot. at 3. Then, after Q1 2024, it disclosed a "disappointing" outlook and "challenging environment" that started at the end of the quarter. Mot. at 25; ¶ 23; Ex. G at 5. A materialization of the risk theory fails when, as here, a plaintiff fails to plead that a "*hidden* risk" as "opposed to known risks" caused lower financial performance. *Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568, at *10 (N.D. Cal. June 19, 2020).

## III.   CONCLUSION

Defendants respectfully request that the Court dismiss the SAC with prejudice.

Dated: February 19, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Melanie M. Blunschi*
    Melanie M. Blunschi (Bar No. 234264)
    *melanie.blunschi@lw.com*
    Samantha Kaplan (Bar No. 353933)
    *samantha.kaplan@lw.com*
    505 Montgomery Street, Suite 2000
    San Francisco, CA 94111
    Telephone: +1.415.391.0600


    Daniel R. Gherardi (Bar No. 317771)
    *daniel.gherardi@lw.com*
    140 Scott Drive
    Menlo Park, CA 94025-1008
    Telephone: +1.650.328.4600

    *Attorneys for Defendants Fastly, Inc.,*
    *Todd Nightingale, and Ronald W. Kisling*