UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE FASTLY, INC. SECURITIES LITIGATION

Case No. 4:24-cv-03170-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: ECF No. 75

Before the Court is Defendants' motion to dismiss the Second Amended Complaint ("SAC"). ECF No. 75. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

### A. Overview of Facts Alleged in the SAC

For the purpose of resolving the present motion, the Court accepts as true the factual allegations in the SAC, ECF No. 72.

Lead Plaintiff Olger Guri and named Plaintiffs Ken Kula, Ericka Billington, and Bhadresh Shah (collectively, "Plaintiffs") bring this securities fraud proposed class action on behalf of shareholders who purchased or otherwise acquired Fastly securities between November 15, 2023, and August 7, 2024 ("Class Period"). They assert claims against Defendant Fastly, Inc. ("Fastly" or "the company"), and Individual Defendants Todd Nightingale (Fastly's Chief Executive Officer during the Class Period) and Ronald Kisling (Fastly's Chief Financial Officer during the Class Period) for violations of Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5(b).

Fastly operates an edge cloud platform for processing, serving, and securing customers' applications. *Id.* ¶ 2. Fastly's customers pay it to deliver web experiences to their end users in the form of applications, websites, or streaming services. *Id.* Fastly charges its customers based on

their usage of its platform and typically enters into one-year contracts with its customers that include a monthly minimum billing commitment in exchange for more favorable pricing terms. *Id.* ¶¶ 4, 67.

The bulk of Fastly's revenue is derived from its existing customers' usage of its platform, although it generates some revenue from additional products and other services, such as account management and customer support. *Id.* ¶¶ 3, 66. The vast majority of the company's revenue is generated by enterprise customers, which are its large customers by revenue. *See id.* ¶¶ 6, 74–75.[1] The company's ten largest customers, which include large streaming and media customers such as TikTok, Amazon Video, Apple, Twitter, Netflix, Paramount, and Disney, are referred to as "Key Customers" in the SAC. *See id.* ¶¶ 7, 100. They account for a significant portion of Fastly's revenue, generating 37% of its revenue in fiscal year 2023 and 33% in fiscal year 2024. *Id.* Thus, a decline in revenue from Fastly's existing enterprise customers, especially its Key Customers, or a decline in retention of such customers, could create volatility in its overall revenue and materially impact its business. *Id.* ¶ 8.

Plaintiffs allege that, beginning in November 2023, and throughout the Class Period, Defendants made 14 statements that misled investors about how macroeconomic trends and uncertainties were affecting Fastly in 2023 and continuing into 2024. *Id.* ¶ 9. For example, on November 15, 2023, Defendant Nightingale allegedly misrepresented to investors that Fastly was not seeing "slowing in growth" as its competitors were experiencing at the time due to macroeconomic conditions, even though several days earlier he had informed all Fastly employees at an all-hands meeting that the company's revenue was "down" because its Key Customers were decreasing their usage of its services and generating less revenue for the company. *See id.* ¶¶ 10, 100, 133–34. Plaintiffs allege that this decline in Key Customer usage and revenue was associated with macroeconomic conditions, such as rising interest rates, that were negatively impacting

---

[1] Fastly previously defined "enterprise customers" as those customers with revenue in excess of $100,000 over the trailing 12-month period, but it currently defines them as those customers with annualized current quarter revenue in excess of $100,000, which is calculated by taking the revenue recognized in the current quarter and multiplying it by four. *See* SAC ¶ 6.

United States District Court
Northern District of California

Fastly throughout 2023. *See id.* ¶ 90.

Plaintiffs allege that, as a result of Defendants' misleading statements, Fastly's stock traded at artificially inflated prices during the Class Period, which is when members of the proposed class acquired Fastly securities. *Id.* ¶¶ 242–54. Plaintiffs further allege that they and members of the proposed class suffered losses when the price of Fastly's stock decreased when corrective disclosures were made on May 1, 2024, and August 7, 2024, and when the risks that Defendants concealed from investors materialized, which began to occur on February 14, 2024, and continued on May 1, 2024, and August 7, 2024.

**B. Procedural History**

This action was filed on May 24, 2024, by Plaintiff Ken Kula. ECF No. 1. On August 22, 2024, the Court appointed Olger Guri as Lead Plaintiff and ordered that filings in this action bear the caption *In re Fastly, Inc. Securities Litigation*. ECF No. 42.

On September 24, 2025, the Court granted in part and denied in part Defendants' motion to dismiss the amended complaint. ECF No. 67. The Court denied the motion with respect to claims premised on Statement 2, as the Court found that Plaintiffs had plausibly alleged falsity, scienter, and loss causation with respect to that statement. The Court granted the motion with respect to claims premised on the remaining challenged statements. The Court granted Plaintiffs leave to amend only for the purpose of curing the deficiencies identified in the order. *See id.* at 44.

On October 24, 2025, Plaintiffs filed the SAC. ECF No. 72. The present motion to dismiss followed, ECF No. 75, which Plaintiffs oppose, ECF No. 79.

**II. REQUEST FOR JUDICIAL NOTICE OR INCORPORATION BY REFERENCE**

Federal Rule of Evidence 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment[,]" but a "court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th

Cir. 2018) (citation omitted).

The incorporation-by-reference doctrine permits a court to "treat[] certain documents as though they are part of the complaint itself" if "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* at 1002 (citation and internal quotation marks omitted). While a court may assume the truth of an incorporated document's contents for the purpose of resolving a motion to dismiss under Rule 12(b)(6), "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003.

Defendants request that the Court take judicial notice, or consider under the incorporation-by-reference doctrine, ten documents, Exhibits A through J. These exhibits are copies of Fastly's SEC filings, transcripts of calls with investors, and copies of Forms 4 reflecting transactions in Fastly securities by the Individual Defendants.

Plaintiffs do not oppose the request for judicial notice with respect to Exhibits A, B, C, F, G, H, and J, which are SEC filings, transcripts of calls with investors, and a copy of Defendant Nightingale's Forms 4 reflecting transactions in Fastly securities. *See* ECF No. 80 at 5. Because the authenticity and accuracy of these materials is not disputed, and because courts routinely take judicial notice of these types of materials for the purpose of resolving motions to dismiss in securities fraud cases, the Court grants Defendants' request for judicial notice. The Court takes judicial notice of Exhibits A, B, C, F, G, and H, which are SEC filings and transcripts of calls with investors, for the purpose of determining what information was available to the market. *See Wochos v. Tesla, Inc.*, No. 17-CV-05828-CRB, 2018 WL 4076437, at *2 (N.D. Cal. Aug. 27, 2018). The Court takes judicial notice of Defendant Nightingale's Forms 4 for the purpose of determining whether he made stock sales during the Class Period to the extent that those transactions are relevant to the determination of whether he acted with scienter when making certain challenged statements. *See In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 988 (N.D. Cal. 2017). However, the Court will not take judicial notice of any of these exhibits for the truth of the matters asserted therein or for the purpose of resolving factual disputes. *See Khoja*, 899 F.3d at 999–1001.

Plaintiffs oppose Defendants' request for judicial notice or incorporation by reference with respect to Exhibits D, E, and I.

As to Exhibit D, which is a copy of the transcript of Fastly's November 1, 2023, earnings call for Q3 2023, Plaintiffs argue that the Court cannot consider it under the incorporation-by-reference doctrine because the SAC does not reference any specific statements in the transcript. *See* ECF No. 80 at 6–7. Plaintiffs also argue that the Court cannot take judicial notice of Exhibit D to the extent that Defendants seek to rely on it to resolve factual disputes. *See id.* The Court finds that Exhibit D is not incorporated by reference into the SAC because the document is not mentioned in that pleading and it does not form the basis of Plaintiffs' claims. *See Khoja*, 899 F.3d at 1002. However, because Plaintiffs do not dispute its accuracy or authenticity, the Court will take judicial notice of Exhibit D for the purpose of determining what information was available to the market, but not for the truth of the matters asserted therein or for the purpose of resolving factual disputes as to what the transcript establishes. *See id.* at 1000.

With respect to Exhibit E, which is a transcript of Fastly's November 15, 2023, conference call with RBC Capital Markets, Plaintiffs argue that the Court cannot consider it under the incorporation-by-reference doctrine or take judicial notice of it because a portion of it is inaccurate and Defendants rely on the transcript to resolve factual disputes. *See* ECF No. 80 at 8–9. The portion of the transcript that Plaintiffs argue is inaccurate is where Defendant Nightingale states: "[m]y competitors are seeing these effects, and slowing your growth, and we're not seeing that." *See* ECF No. 75-8 at 8. Plaintiffs represent that that portion of the transcript is inconsistent with the audio recording of the conference call. *See* ECF No. 80 at 8.

The Court finds that Exhibit E is not incorporated by reference into the SAC because it is not mentioned in that pleading and it does not form the basis of Plaintiffs' claims. *See Khoja*, 899 F.3d at 1002. While the SAC contains references to statements that were made during the November 15, 2023, conference call, it does not contain any references to *the transcript* of that call. Thus, incorporating Exhibit E into the SAC by reference would be inappropriate, particularly given that Plaintiffs dispute the accuracy of a portion of the transcript. *See Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997), *superseded by statute on other grounds* (holding that transcripts of

United States District Court
Northern District of California

conference calls with analysts were not incorporated by reference into the complaint because "plaintiffs ma[de] allegations about the conference calls, but d[id] not expressly mention or refer to the transcripts" of such calls in the complaint and the accuracy of the transcripts was disputed). The Court declines to take judicial notice of the portion of Exhibit E that Plaintiffs argue is inaccurate because judicial notice is not appropriate where there is a dispute about the accuracy of a document. *See In re Nuvelo, Inc., Sec. Litig.*, No. C 07-4056-VRW, 2008 WL 5114325, at *3 (N.D. Cal. Dec. 4, 2008). However, because Plaintiffs do not dispute the accuracy or authenticity of the remaining portions of the transcript, the Court will take judicial notice of those portions for the purpose of determining what information was available to the market, but not for the truth of the matters asserted therein or for the purpose of resolving factual disputes as to what the transcript establishes. *See Khoja*, F.3d at 1000.

With respect to Exhibit I, which are copies of Forms 4 reflecting transactions in Fastly securities by Defendant Kisling during the Class Period, Plaintiffs argue that the Court cannot take judicial notice of them because they are not relevant to the resolution of the present motion. Because Plaintiffs do not dispute the accuracy or authenticity of the forms at issue, the Court will take judicial notice of them for the purpose of determining whether Defendant Kisling sold Fastly stock during the Class Period to the extent that those transactions are relevant to the determination of whether he acted with scienter. *See* SAC ¶ 240 (alleging under "Scienter Allegations" that Defendant Kisling sold Fastly stock when its price was artificially inflated during the Class Period); *see also In re Solarcity*, 274 F. Supp. 3d at 988.

## III. JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## IV. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a

United States District Court
Northern District of California

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

A complaint that sounds in fraud must satisfy the requirements of Rule 9(b). Additionally, "[i]f a claim alleges securities fraud, the Private Securities Litigation Reform Act ('PSLRA'), 15 U.S.C. § 78u-4, also applies." *Khoja*, 899 F.3d at 1008.

## V. DISCUSSION

Defendants move to dismiss all claims in the SAC for failure to allege falsity, scienter, and loss causation. ECF No. 75. Plaintiffs oppose the motion on the grounds that (1) Defendants improperly raise new arguments that they could have raised in their prior motion to dismiss and improperly seek the reconsideration of the Court's prior rulings; and (2) Defendants' arguments for dismissing their claims fail on the merits. ECF No. 79.

### A. Plaintiffs' Procedural Objections to Defendants' Motion to Dismiss

In their opposition, Plaintiffs request that the Court disregard any new arguments that Defendants could have raised in their prior motion to dismiss but failed to do so on the basis that the present motion to dismiss violates Rule 12(g)(2) for including those new arguments. *See* ECF No. 79 at 11–12. Plaintiffs also request that the Court disregard arguments that invite it to revisit its prior rulings on falsity, scienter, and loss causation on the ground that allowing Defendants to relitigate prior rulings would not promote judicial economy. *See id.*

Defendants respond that (1) the Court has discretion to consider arguments they could have raised in their prior motion to dismiss but did not; and (2) the Court has discretion to revisit its prior rulings and it should do so here because the SAC is the new operative complaint and it contains modified or new allegations. *See* ECF No. 81 at 9–10.

The Court first turns to the question of whether Rule 12(g) precludes it from entertaining arguments that Defendants could have raised in their prior motion to dismiss but did not. Under Rule 12(g)(2), a "defendant who omits a defense under Rule 12(b)(6)" in a motion to dismiss

"cannot assert that defense in a later pre-answer motion under Rule 12(b)(6)[.]" *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317–18 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019). While a ground for dismissal under Rule 12(b)(6) that was omitted from a first motion to dismiss cannot be asserted in a second motion to dismiss, it can be asserted in other ways, namely in a post-answer motion for judgment on the pleadings under Rule 12(c), in a pleading under Rule 7(a), or at trial, as set forth in Rule 12(h)(2). *See id.* Given the availability of alternative vehicles for asserting a ground for dismissal that would not be permitted under Rule 12(g)(2) in a successive motion to dismiss, a district court faced with a successive motion to dismiss that contains arguments in violation of Rule 12(g)(2) can opt to consider those arguments on the merits despite the violation of Rule 12(g)(2) if it finds that doing so would promote judicial economy. *See id.* at 318–19 (holding that a district court may consider on the merits a successive Rule 12(b)(6) motion containing grounds for dismissal prohibited by Rule 12(g)(2) when doing so would promote judicial economy because "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1"); *see also Banko v. Apple, Inc.*, No. 13-cv-02977 RS, 2013 WL 6623913, at *2 (N.D. Cal. Dec. 16, 2013) ("Although Rule 12(g) technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion . . . courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy.") (citation and internal quotation marks omitted).

Here, the present motion to dismiss includes new arguments for dismissing Plaintiffs' claims under Rule 12(b)(6) that Defendants could have asserted in their prior motion to dismiss but did not. Thus, Defendants are precluded under Rule 12(g)(2) from raising those arguments in the present motion to dismiss. *See Minor v. Baker Mills, Inc.*, No. 20-CV-02901-RS, 2021 WL 4522290, at *1 (N.D. Cal. May 20, 2021) (holding that arguments "that could have been, but were not, asserted in a prior motion to dismiss" were barred under Rule 12(g)(2)). However, after reviewing the motion, the Court finds that, in this instance, it would be appropriate for it to exercise its discretion to consider those arguments despite the violation of Rule 12(g)(2) because

doing so would expedite the resolution of this case and would promote judicial economy. *See In re Apple*, 846 F.3d at 319; *see also Doe v. White*, No. 08-cv-1287, 2010 WL 323510, at *2 (C.D. Ill. Jan. 20, 2010) (considering and ruling on arguments made in a successive motion to dismiss that were barred by Rule 12(g)(2) for the sake of judicial economy).

As to the issue of whether it would be appropriate for the Court to revisit its prior rulings, the Court finds that doing so is warranted where new or modified allegations in the SAC may affect the validity of a prior ruling. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) (holding that, when a defendant files a motion to dismiss an amended complaint, the court is not precluded "from reassessing its own legal rulings in the same case").

**B. Claims under Section 10(b) of the Exchange Act and Rule 10b-5**

Section 10(b) of the Exchange Act declares it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary." 15 U.S.C. § 78j(b). "SEC Rule 10b-5 implements [Section 10(b)] by making it unlawful to . . . 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011) (quoting 17 C.F.R. § 240.10b-5). "Thus, to prevail on a claim for violations of either Section 10(b) or Rule 10b-5, a plaintiff must prove six elements: (1) a material misrepresentation or omission by the defendant [falsity]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051–52 (9th Cir. 2014) (citation and internal quotation marks omitted).

**1. Material Misrepresentation or Omission (Falsity)**

The first element of a claim under Section 10(b) and Rule 10b-5(b) requires a plaintiff to show that the defendant made a statement that was false or misleading as to a material fact. *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988). This requires, in relevant part, "specify[ing] each statement alleged to have been misleading [and] the reason or reasons why the statement is

misleading[.]" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007) (quoting 15 U.S.C. § 78u-4(b)(1)). "In setting forth the reasons why they contend that each challenged statement is misleading, securities plaintiffs may rely on either an affirmative misrepresentation theory or an omission theory." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021) (citation omitted). "[A]n affirmative misrepresentation is an 'untrue statement of a material fact,' and a fraudulent omission is a failure to 'state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* (citation omitted).

"Falsity is alleged when a plaintiff points to defendant's statements that directly contradict what the defendant knew at that time." *Khoja*, 899 F.3d at 1008 (citation omitted). "Even if a statement is not false, it may be misleading if it omits material information." *Id.* at 1008–09 (citation omitted). Information is material if "a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). "[T]o be actionable under the securities laws, an omission must be misleading . . . it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014) (citation and internal quotation marks omitted). "Disclosure [of omitted information] is required . . . only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx Initiatives*, 563 U.S. at 44 (quoting 17 C.F.R. § 240.10b-5(b)). To determine whether a statement is misleading, courts "look at the context surrounding the statement," such as the "surrounding text, including hedges, disclaimers, and apparently conflicting information." *See Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025) (citations and internal quotation marks omitted).

Even where a plaintiff has adequately alleged falsity, "the allegedly false or misleading statement may still be shielded from liability by the 'safe harbor' provision of the PSLRA." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017). The PSLRA's "safe harbor" provision "is designed to protect companies and their officials from suit when optimistic

projections of growth in revenues and earnings are not borne out by events." *Id.* at 1142. The safe harbor applies only to "forward-looking statements" as defined in 15 U.S.C. § 78u-5(i)(1). "[A] defendant will not be liable for a false or misleading statement if it is forward-looking and either is accompanied by cautionary language or is made without actual knowledge that it is false or misleading." *In re Quality Sys.*, 865 F.3d at 1141. Cautionary language must identify "important factors that could cause actual results to differ materially from those in the forward-looking statement." *See* 15 U.S.C. § 78u-5(c)(1)(A)(i).

**a. November 15, 2023, Statements**

**(i) Statement 1, SAC ¶ 132**[2]

Plaintiffs allege that, during a November 15, 2023, conference call involving Defendant Nightingale, Defendant Kisling, and Rishi Jaluria from RBC Capital Markets, Defendant Nightingale was asked whether macroeconomic trends were getting better, and he replied:

> [T]he macro trends that seemed to hinder some of our competitors, we were largely resilient to. Our customers are using our technology because it's the highest performance piece, it's not a nice to have for them. They weren't—if they wanted to reduce costs in their infrastructure, we couldn't be a target for them. So that was a pretty big piece of it. *The biggest pressure that people saw in this area was like in small to medium SMB customers, maybe some of the mid market. We don't have a lot of exposure there.* I wish [we] did have more exposure, and I am working to make our products simpler so we can. But I didn't have a lot of exposure. Financial services customers and telco customers, again, if I would had more exposure there, I probably would have seen more.

SAC ¶ 132 (alterations in the original, emphasis added).

In its order of September 24, 2025, the Court found that Plaintiffs had not plausibly alleged that the statement italicized above (Statement 1) was false or misleading when made because Plaintiffs' theory of falsity depended on an interpretation of the statement that did not reflect what Defendant Nightingale said. *See* ECF No. 67 at 10–11. The Court found that Plaintiffs interpreted the statement as indicating that Fastly did not have exposure to the SMB market, but what

[2] For ease of reference, the statement numbers attributed to each challenged statement are based on the numbers used in Defendants' motion to dismiss, as well as the chart attached to their motion as Appendix A, *see* ECF No. 75–3.



United States District Court
Northern District of California

Defendant Nightingale said was that Fastly did not have "*a lot*" of exposure to the SMB market. *See id.* The Court found that the prior iteration of the complaint lacked facts indicating that Defendant Nightingale knew at the time he made Statement 1 that Fastly had "a lot" of exposure to the SMB market.

Defendants argue that the SAC continues to lack facts that raise the inference that Fastly had "a lot" of exposure to the SMB market and, for that reason, the Court cannot reasonably infer that Statement 1 was false or misleading when made. *See* ECF No. 75 at 18–19.

In their opposition, Plaintiffs do not respond to Defendants' arguments with respect to Statement 1.[3] *See* ECF No. 79 at 18–19. Accordingly, the Court finds that Plaintiffs have abandoned their claims to the extent that they are premised on that statement. *See Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, No. 15-CV-02938-HSG, 2018 WL 3126393, at *10 (N.D. Cal. June 26, 2018) (granting motion to dismiss securities fraud claims without leave to amend on the ground that the plaintiffs "abandoned" those claims by failing to respond to the arguments made in the

---

[3] In their opposition, Plaintiffs contend that a different statement by Defendant Nightingale from the same conference call, which was not included in the prior iteration of the complaint, was false when made. That statement is: "the macro trends that seemed to hinder some of our competitors, we were largely resilient to." *See* ECF No. 79 at 18–19 (citing SAC ¶ 132). Plaintiffs refer to this new statement as "Statement 1" even though Statement 1 is the "a lot" of exposure statement discussed above, which they have abandoned. *See id.*

The new statement is not at issue because Plaintiffs added it to the SAC without leave of Court. In its order of September 24, 2025, the Court granted leave to amend the complaint only for the purpose of curing the deficiencies identified in the Court's order of September 24, 2025, not for the purpose of adding new statements that they could have challenged in the prior iteration of the complaint. *See* ECF No. 67 at 44. Accordingly, the new statement in question is stricken. *See DeLeon v. Wells Fargo Bank*, N.A., No. 10–CV–01390–LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) ("[W]here leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken.") (collecting cases).

Plaintiffs have not requested leave of Court to add the new statement in question to the complaint, but even if they had, the Court would deny the request on the basis that the amendment would be futile. Plaintiffs' theory of falsity with respect to the new statement does not reflect what Defendant Nightingale said. Plaintiffs argue that Defendant Nightingale stated that Fastly had been "resilient to" macro trends, *see* ECF No. 79 at 18, but what he said was that Fastly had been "*largely* resilient to" such trends, *see* SAC ¶ 132 (emphasis added). Plaintiffs have not pointed to any facts in the SAC that raise the inference that Fastly had not been "*largely* resilient" to those macro trends, as Defendant Nightingale represented. Allegations that Fastly had been experiencing some negative impacts of macroeconomic conditions at the time the statement in question was made are insufficient to raise that inference.

defendants' motion to dismiss with respect to certain challenged statements) (citation omitted); *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010) (holding that the plaintiff "abandoned" a claim by failing to respond to the defendant's motion to dismiss that claim).

The Court GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on Statement 1.

**(ii) Statement 2, SAC ¶ 134**

In a follow-up question during the same November 15, 2023, conference call referenced above, Rishi Jaluria from RBC Capital Markets stated: "[O]n the last earnings call, you did talk about some budget tightening that you had started to see," and asked, "What's changed that you're seeing that now and you weren't seeing it a couple of quarters ago?" SAC ¶ 133. Defendant Nightingale responded that, "for the last three or four quarters, I've gotten this question in each earnings call about what are we seeing from the macro. *My competitors are seeing these effects, some slowing in growth, and [] we're not seeing that*." SAC ¶ 134 (emphasis and alteration in the original).

In its order of September 24, 2025, the Court found that Plaintiffs had plausibly alleged that the statement italicized above (Statement 2) was misleading because Defendant Nightingale touted that Fastly was not seeing "some slowing in growth" like its competitors were seeing but failed to disclose adverse information that cut against that positive statement, namely that Fastly was experiencing some "slowing in growth" associated with macroeconomic conditions at the time Statement 2 was made due to declining usage and revenues from the company's enterprise customers. *See* ECF No. 67 at 11–12.

Defendants argue that Plaintiffs modified the allegations relevant to Statement 2 in the SAC to indicate that Key Customers, as opposed to enterprise customers, had reduced their usage of Fastly's services in November 2023. Defendants contend that such modified allegations fail to raise the inference that Statement 2 was false or misleading when made for the following reasons, none of which is persuasive.

First, Defendants argue that Plaintiffs' modified allegations are not sufficiently particularized and thus do not raise the inference that Defendant Nightingale was aware of facts that contradicted Statement 2 at the time it was made. *See* ECF No. 75 at 21.

The Court disagrees. In the SAC, Plaintiffs allege facts that, when viewed in the light most favorable to them, raise the inference that Defendant Nightingale was aware that Fastly was seeing "some slowing in growth" at the time he made Statement 2 due to declining usage and revenues from its Key Customers related to macroeconomic conditions. Defendant Nightingale was required to disclose that information to make Statement 2 not misleading, because that information cut against the positive information conveyed in Statement 2 that Fastly was not seeing "some slowing in growth" like its competitors were seeing at the time the statement was made. *See Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705–06 (9th Cir. 2016) (holding that "once defendants choose to tout positive information to the market, they [are] bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information") (citation and internal quotation marks omitted, cleaned up).

Specifically, Plaintiffs allege that CW6 reported that, during an all-hands meeting held about a week after the Q3 2023 earnings call held on November 1, 2023, but before Defendant Nightingale made Statement 2 on November 15, 2023, Defendant Nightingale discussed that Fastly's revenue was "down" because of declines in usage and revenues from its larger media accounts or Key Customers. *See* SAC ¶¶ 100–02. CW1 confirmed that Defendant Nightingale discussed during an all-hands meeting held "during Q4 2023," which appears to be the same all-hands meeting that CW6 described, that usage and revenues from Fastly's larger customers were declining. *Id.* ¶ 99. Plaintiffs also allege facts that suggest that the decline in usage and revenues from Fastly's Key Customers during Q4 2023 was associated with macroeconomic conditions that affected the company negatively. Specifically, CW1 reported that concerns arising out of macroeconomic impacts were discussed at all-hands meetings throughout 2023, which included the meeting held during Q4 2023 shortly before Statement 2 was made. *See id.* ¶¶ 90, 99. CW1 reported that the concerns discussed at those all-hands meetings included that macroeconomic conditions were negatively impacting Fastly by causing its customers, including its Key

United States District Court
Northern District of California

Customers, to become increasingly price conscious and to demand better pricing. *See id.* These allegations are corroborated by the reports of CW3, whose team managed customers that brought Fastly at least $100 million per year in revenue and included some of Fastly's biggest clients. *See id.* ¶ 59. CW3 reported that revenues from his or her largest customers were declining in November 2023 in part because of tightening budgets and a general downturn in the tech sector as a whole. *See id.* ¶ 98.

The foregoing allegations, collectively, raise the inference that Defendant Nightingale knew as of November 15, 2023, that Fastly's revenue was declining in Q4 2023 because of declines in usage and revenues from its Key Customers related to macroeconomic conditions. Because Defendant Nightingale omitted those facts when he stated that Fastly was not experiencing "some slowing in growth" associated with macroeconomic forces on November 15, 2023, he created the impression of a state of affairs that differed in a material way from the one that actually existed. Accordingly, Plaintiffs have plausibly alleged that Statement 2 was misleading when made. *See Police Ret. Sys.*, 759 F.3d at 1061. Defendants do not cite any binding authority that compels a different conclusion.

Second, Defendants argue that Plaintiffs' allegations regarding the decline in usage and revenues from Key Customers in Q4 2023 are based on confidential witness reports that are vague and unreliable. The Court disagrees. Plaintiffs have provided "an adequate basis for determining that the witnesses in question have personal knowledge of the events they report," which is all that Plaintiffs are required to do at this stage. *See Glazer*, 63 F.4th at 767. CW1 and CW6 were employed at Fastly during the Class Period as an enterprise sales director and website producer, respectively. *See* SAC ¶¶ 57, 62. CW1 and CW6 were, therefore, in a position to have personal knowledge of what was discussed during the all-hands meetings discussed above, because Plaintiffs allege that every all-hands meeting was attended by all employees and the company's C-Suite. *See id.* ¶¶ 18, 102. As noted, CW3 was an enterprise account manager who was responsible for managing clients that brought in more than $100 million per year in revenue and included some of Fastly's biggest clients. *See id.* ¶ 59. Thus, CW3 was in a position to have personal knowledge of whether the revenue from larger customers he dealt with was declining in

United States District Court
Northern District of California

November 2023 because of macroeconomic conditions.

Third, Defendants contend that Plaintiffs misquoted Statement 2 in the SAC. Defendants point to the transcript of the November 15, 2023, conference call attached to their motion to dismiss as Exhibit E, ECF No. 75-8. *See* ECF No. 75 at 19. Defendants argue that Exhibit E shows that Nightingale said, "[m]y competitors are seeing these effects, *and slowing your growth,* and we're not seeing that," *see* ECF No. 75 at 19–20 (emphasis added), and did not say "[m]y competitors are seeing these effects, *some slowing in growth*, and [] we're not seeing that," as Plaintiffs allege in the SAC, *see* SAC ¶ 134 (emphasis added). This argument fails. As discussed in Section II of this order, the Court cannot take judicial notice of the portion of the transcript to which Defendants point for the purpose of resolving the present motion because Plaintiffs dispute its accuracy.

Fourth, Defendants argue that Statement 2 was not false or misleading for omitting that Key Customers' usage and revenues were decreasing in Q4 2023 due to macroeconomic conditions because Defendant Nightingale disclosed those matters during the same call. Defendants point to portions of the transcript of the November 15, 2023, conference call (Exhibit E) where Defendant Nightingale mentioned that Fastly was "seeing a little" macroeconomic impact in the form of elongated deals. *See* ECF No. 75 at 20. This is unavailing. The portions of the transcript to which Defendants point do not mention that Key Customers' usage and revenues were decreasing due to macroeconomic conditions, which is the information that Plaintiffs allege was concealed from Statement 2. *See* ECF No. 75-8 at 8. Because it is not obvious that Defendant Nightingale revealed the matters that Plaintiffs allege were concealed from Statement 2 and "reasonable people could debate what exactly this conference call disclosed" with respect to the impact of macroeconomic conditions on Fastly, the Court cannot take judicial notice of the portions of the transcript to which Defendants point to resolve that factual dispute. *See Khoja*, 899 F.3d at 1000.

Finally, Defendants contend that Statement 2 was not false or misleading for omitting that Key Customers' usage and revenues were decreasing in Q4 2023 due to macroeconomic conditions because, during the earnings call for Q3 2023 that took place on November 1, 2023,

Defendant Nightingale disclosed that, in Q3 2023, certain revenue metrics were down and that Fastly had started to see some effects of budget tightening by its customers due to the macroeconomic environment. *See* ECF No. 75 at 19 (citing Ex. D). This argument fails for the same reasons as the previous one. The portions of the transcript for the Q3 2023 earnings call to which Defendants point do not mention that Key Customers' usage and revenues were decreasing *in Q4 2023* due to macroeconomic conditions, which are the matters that Plaintiffs allege were concealed from Statement 2. *See* ECF No. 75-7 at 10–11. Because it is not obvious that Defendant Nightingale revealed the matters that Plaintiffs allege were concealed and "reasonable people could debate what exactly this conference call disclosed" with respect to the impact of macroeconomic conditions on Fastly, the Court cannot take judicial notice of the transcript in question to resolve that factual dispute. *See Khoja*, 899 F.3d at 1000.

Accordingly, the Court DENIES Defendants' motion to dismiss to the extent that it is premised on arguments that Statement 2 was not false or misleading when made.

**b. February 2024 Statements**

**(i) Statement 3, SAC ¶ 140**

Plaintiffs allege that Defendant Nightingale stated during the Q4 2023 earnings call held on February 14, 2024:

> *Our customer retention efforts were stable in the fourth quarter [of 2023]* with our LTM NRR at 113%, down slightly from Q3's 114%. Our total customer count in the fourth quarter was 3,243, which increased by 141 customers compared to Q3 and increased by 181 customers year over year.

SAC ¶ 140 (emphasis in the original).

In its order of September 24, 2025, the Court held that Plaintiffs had not plausibly alleged that the statement italicized above (Statement 3) was false or misleading when made because they failed to allege facts indicating that Fastly's customer retention efforts were not "stable" in Q4 2023. *See* ECF No. 67 at 17.

Defendants argue that Plaintiffs have not cured that deficiency because the allegations in the SAC do not plausibly suggest that Fastly's customer retention efforts were not "stable" in Q4 2023 in terms of the financial metrics that Defendant Nightingale mentioned when making

Statement 3, namely the Last Twelve Months Net Retention Rate ("LTM NRR") and total customer count. *See* ECF No. 75 at 26.

Plaintiffs respond that Statement 3 was false for two reasons: (1) because the metrics that Defendant Nightingale mentioned could not "support" that customer retention was stable in Q4 2023, as LTM NRR measures customer revenue growth over a twelve-month period, not during a particular quarter, and total customer count does not indicate how many customers terminated services during a particular quarter; and (2) because Defendant Nightingale failed to mention that, during Q4 2023, Fastly's revenue was declining because Key Customers were bringing less traffic and "numerous" existing enterprise customers cancelled their contracts or requested discounts in 2023. *See* ECF No. 79 at 19–20.

The Court agrees with Defendants and finds that the allegations in the SAC do not raise the inference that Statement 3 was false or misleading when made. Defendant Nightingale described the company's "customer retention efforts" in terms of LTM NRR and total customer count during Q4 2023 as compared to the prior quarter, and he reported that LTM NRR and total customer count for Q4 2023 had been substantially similar to the LTM NRR and total customer count that was observed for the prior quarter. Those reported figures, which Plaintiffs do not allege were inaccurate, are consistent with Nightingale's representation in Statement 3 that "customer retention efforts" in Q4 2023 had been "stable." That, in turn, raises the inference that Statement 3 was not false or misleading when made.

Plaintiffs' arguments to the contrary are unavailing. Their argument that the metrics LTM NRR and total customer count were not capable of indicating whether "customer retention efforts" in Q4 2023 were "stable" is not persuasive because they fail to point to any non-conclusory allegations in the SAC that support that proposition. Similarly, their argument that Statement 3 was false because it omitted that revenue was declining in Q4 2023 due to decreased traffic from Key Customers, cancelled contracts, and discounts also fails because they have not pointed to any allegations indicating that those matters were not already reflected in the LTM NRR and total customer count that Defendant Nightingale reported when he made Statement 3. *See id.* Accordingly, the Court cannot reasonably infer that Statement 3 was false or misleading on the

grounds that Plaintiffs advance.

The Court GRANTS Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on Statement 3. The dismissal is WITHOUT LEAVE TO AMEND because the Court previously granted Plaintiffs the opportunity to amend the complaint to cure the pleading deficiencies with respect to that statement, and the Court finds that granting further leave to amend would be futile.

**(ii) Statement 4, SAC ¶ 142**

In the prior iteration of the complaint, Plaintiffs alleged that Defendant Kisling stated during the Q4 2023 earnings call held on February 14, 2024, that the projected revenue range of $580 to $590 million for fiscal year 2024 was based on, among other things, Fastly's "*expectation for quarter-on-quarter acceleration in revenue growth through the year driven by new customer acquisition and continued expansion of existing customers*." *See* SAC ¶ 142.

In its order of September 24, 2025, the Court held that the statement italicized above (Statement 4) is protected by the PSLRA's safe harbor because it is forward-looking and was accompanied by meaningful cautionary language. *See* ECF No. 67 at 18.

Defendants argue once again that Statement 4 is protected by the safe harbor. ECF No. 75 at 28.

Plaintiffs do not respond to Defendants' argument with respect to Statement 4. *See generally* ECF No. 79. The Court finds, therefore, that Plaintiffs have abandoned their claims to the extent that they are premised on Statement 4. *See Norfolk*, 2018 WL 3126393, at *10; *Carvalho*, 629 F.3d at 888.

The Court GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on Statement 4.

**(iii) Statement 5, SAC ¶ 146**

Plaintiffs allege that, during the February 14, 2024, earnings call about Q4 2023, Defendant Nightingale attributed Fastly's revenue coming in at the lower end of the Q4 2023

guidance range to "weaker than anticipated international traffic, offset by seasonally strong live streaming and gaming activity." SAC ¶ 146.

In its order of September 24, 2025, the Court held that Plaintiffs had plausibly alleged that the statement described above (Statement 5) was misleading because it created the impression that the only cause of Fastly coming in at the lower end of its Q4 2023 revenue guidance was "weaker than expected international traffic" even though there was another known cause that Defendant Nightingale omitted, namely that usage from Fastly's enterprise customers was declining during that quarter due to macroeconomic conditions. *See* ECF No. 67 at 19. The Court concluded that, because Statement 5 gave the impression that "weaker than expected international traffic" was the only cause of the revenue results for Q4 2023, Defendants were required to disclose the other known cause for those revenue results to make the statement not misleading. *See id.*

Defendants contend that Plaintiffs modified their allegations relating to Statement 5 and the modified allegations do not raise the inference that the statement was misleading when made for two reasons. First, Defendants contend that Plaintiffs do not describe Statement 5 in the SAC accurately. Defendants argue that the transcript of the February 14, 2024, earnings call shows that Defendant Nightingale said that Fastly's revenue results for Q4 2023 were "driven by" weaker than anticipated international traffic, implying that other potential causes for the revenue results existed. *See* ECF No. 75 at 22. Defendants contend that, because Defendant Nightingale did not state or imply that weaker than anticipated international traffic was the only cause for Fastly's revenue results, his failure to mention other causes for the revenue results did not render Statement 5 misleading. *Id.* Second, Defendants argue that, even if Nightingale was required to disclose other causes for the Q4 2023 revenue results, declining usage by Key Customers in Q4 2023 was not a cause he needed to disclose because the SAC lacks particularized allegations showing that that decline negatively impacted Fastly's revenues in Q4 2023.

The Court finds that Statement 5 was not false or misleading when made based on the first reason that Defendants advance. The Court found in its order of September 24, 2025, that Statement 5, as described in the prior iteration of the complaint, created the impression that the *only* cause of Fastly coming in at the lower end of its Q4 2023 revenue guidance was "weaker than

United States District Court
Northern District of California

expected international traffic" even though there was another known cause that Defendant Nightingale omitted. *See* ECF No. 67 at 19. For that reason, the Court held that Defendants' failure to disclose another known cause rendered Statement 5 misleading. As Defendants now point out, and Plaintiffs do not dispute, the transcript of the February 14, 2024, earnings call shows that Nightingale said that Fastly's revenue results for Q4 2023 were "driven by" weaker than anticipated international traffic, *see* ECF No. 75-9 at 4 (Ex. F), which implies that other causes for the revenue results may have existed.[4] Because Statement 5 did not suggest that "weaker than expected international traffic" was the only cause for the revenue results for Q4 2023, Defendant Nightingale was not required to disclose other potential causes for the revenue results in order to make the statement not misleading. *See In re eHealth Inc. Sec. Litig.*, No. 20-CV-02395-JST, 2021 WL 5855864, at *4 (N.D. Cal. Aug. 12, 2021) (holding that statement that LTV decline was "driven by" one cause was not misleading for failure to disclose other causes for the decline because "the phrase 'driven by' does not foreclose other causes"); *see also Sneed*, 147 F.4th at 1131 (holding that Section 10(b) and Rule 10b-5's "anti-fraud provisions do not impose a duty to disclose all material information" and instead "require disclosure only when necessary to make . . . statements made, in light of the circumstances under which they were made, not misleading") (citations and internal quotation marks omitted). Plaintiffs have not cited any binding authority that compels a different conclusion.

In light of the foregoing, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on Statement 5. Because this is the first time that the Court has found that Plaintiffs' allegations with respect to the falsity of Statement 5 are deficient, the dismissal is WITH LEAVE TO AMEND.

**(iv) Statement 6, SAC ¶ 149**

Plaintiffs allege that, when pressed by analysts during the February 14, 2024, earnings call about whether "something has materially changed" in Q4 2023 as compared to Q3 2023 because of macroeconomic factors, Defendant Nightingale stated: "No. I think it was pretty much as we

---

[4] The SAC omits the "driven by" phrase that appears on the transcript. *See* SAC ¶ 146.

saw last quarter. A handful of deals may be taking a little longer than we thought, a little bit of deal elongation." SAC ¶ 149.

In its order of September 24, 2025, the Court held that Plaintiffs had plausibly alleged that Statement 6 was false or misleading when made because their allegations indicated that Fastly experienced some negative impacts from macroeconomic forces in Q4 2023 that went beyond the "deal elongation" that Defendants Nightingale identified in Statement 6, namely usage and revenue declines from enterprise customers in Q4 2023. *See* ECF No. 67 at 20. The Court concluded that Defendants' failure to mention those other negative impacts when making Statement 6 rendered the statement misleading, because it created the false impression that the only macroeconomic impact that Fastly experienced in Q4 2023 was "a little bit of deal elongation." *See id.*

Defendants argue that Plaintiffs modified the allegations relevant to Statement 6 to refer to Key Customers instead of enterprise customers and that, based on the new allegations in the SAC, claims premised on Statement 6 "should be dismissed for the same reasons as Statement 2 above." *See* ECF No. 75 at 21.

Because the Court has rejected the arguments that Defendants advanced for the proposition that Statement 2 was not false or misleading when made, the Court rejects those arguments again to the extent that Defendants advance them to show that Statement 6 was not false or misleading when made. Those arguments fail with respect to Statement 6 for the same reasons discussed above in the context of Statement 2. The Court finds that Statement 6 was misleading when made because the allegations in the SAC raise the inference that it created the false impression that the only macroeconomic impact that Fastly experienced in Q4 2023 relative to Q3 2023 was a "little bit of deal elongation" even though Defendant Nightingale was aware that Fastly had experienced another negative impact from macroeconomic conditions in Q4 2023, namely a decline in revenue caused by declining usage and revenues from its Key Customers, as discussed in more detail in the context of Statement 2. *See Police Ret.*, 759 F.3d at 1061 (holding that an omission is misleading when it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists").

The Court DENIES Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on arguments that Statement 6 was not false or misleading when made.

**(v) Statement 7, SAC ¶¶ 154, 162**

Plaintiffs allege that Fastly's annual report for fiscal year 2023, which was issued on February 21, 2024, stated: "Our enterprise customers continue to leverage our platform, increasing their spend on our platform and driving our revenue growth year over year." SAC ¶¶ 154, 162, 165.

In its order of September 24, 2025, the Court held that Plaintiffs had plausibly alleged that Statement 7 was misleading when made because it touted that Fastly's enterprise customers were increasing their spend and were driving Fastly's revenue growth in 2023, but it omitted information known to Defendants that cut against that positive information, namely that enterprise customers were reducing their usage of Fastly's services in Q4 2023 and that this was causing Fastly's revenue from those customers to decline during that quarter. *See* ECF No. 67 at 22–24.

Defendants argue that the basis for the Court's prior holding that Statement 7 was misleading no longer exists because Plaintiffs modified the allegations that relate to that statement to refer to Key Customers instead of enterprise customers, and the SAC now lacks allegations that contradict Statement 7's representation that enterprise customers were increasing their spend and driving Fastly's revenue growth. *See* ECF No. 75 at 23–24.

Plaintiffs concede that, to plausibly allege that Statement 7 was misleading when made, they must "allege that *enterprise customers* were decreasing their usage of Fastly's platform in Q4 2023[.]" *See* ECF No. 79 at 18 (emphasis added). Plaintiffs argue that the SAC contains allegations to that effect. *See id.*

The Court agrees with Defendants. The Court previously held that Statement 7 was misleading because it omitted information known to Defendants that contradicted its positive representation that *enterprise customers* were increasing their spend and were driving Fastly's revenue growth in 2023, namely that *enterprise customers*' usage and revenues were declining in Q4 2023. Plaintiffs modified the allegations relevant to Statement 7 by removing references to

"enterprise customers." Accordingly, Plaintiffs' allegations no longer raise the inference that Defendants were aware of usage and revenue declines from enterprise customers that contradicted Statement 7's positive representations about those customers. The allegations to which Plaintiffs point in their opposition do not speak to *enterprise customers'* usage and revenues in Q4 2023. *See* ECF No. 79 at 18 (citing SAC ¶¶ 155, 157, 165). Accordingly, the Court cannot reasonably infer that Statement 7 was false or misleading when made.

The Court GRANTS Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on Statement 7. Because this is the first time that the Court has found that Plaintiffs' allegations with respect to the falsity of Statement 7 are deficient, the dismissal is WITH LEAVE TO AMEND.

**(vi) Statement 8, SAC ¶ 156**

Plaintiffs allege that, under the heading, "If we are unable . . . to have existing enterprise customers continue and increase their use of our platform, our business will likely be harmed," Fastly's annual report for fiscal year 2023 warned investors, in relevant part:

> *Our future success also depends in part on our ability to expand our existing customer relationships, in particular, with enterprise customers, by increasing their usage of our platform, selling them additional products and upgrading their existing products. . . . If our efforts to increase usage of our platform by, or sell new and additional products to, our enterprise customers are not successful, our business would be harmed.*

SAC ¶ 156 (emphasis in the original).

In its order of September 24, 2025, the Court held that Plaintiffs had plausibly alleged that Statement 8 was misleading when made because it warned of risks that could result if Fastly did not succeed in increasing its enterprise customers' usage of its platform but did not disclose that that risk had materialized on the basis that enterprise customers' usage had been declining in Q4 2023. *See* ECF No. 67 at 25–26.

As with Statement 7, Defendants argue that the basis for the Court's prior holding that Statement 8 was misleading no longer exists because Plaintiffs modified the allegations that relate to Statement 8 to refer to Key Customers instead of enterprise customers. *See* ECF No. 75 at 23–24. Defendants contend that the SAC lacks allegations indicating that the risks that Statement 8

warned about with respect to enterprise customers had already come to fruition.[5] *See id.*

In their opposition, as with Statement 7, Plaintiffs concede that, to plausibly allege that Statement 8 was misleading when made, they must "allege that *enterprise customers* were decreasing their usage of Fastly's platform in Q4 2023[.]" *See* ECF No. 79 at 18 (emphasis added). Plaintiffs argue that the SAC contains such allegations. *See id.*

The Court agrees with Defendants for similar reasons as those discussed above with respect to Statement 7. The Court previously held that Statement 8 was misleading when made because it warned of risks that could result if Fastly did not succeed in increasing its enterprise customers' usage of its platform but did not disclose that that risk had materialized on the basis that enterprise customers' usage of Fastly's platform had been declining in Q4 2023. Plaintiffs modified the allegations that the Court previously held raised the inference that enterprise customers' usage was declining in Q4 2023 by removing references to "enterprise customers." Because the modified allegations in the SAC are no longer about enterprise customers, they do not raise the inference that *enterprise customers'* usage was declining in Q4 2023. The allegations to which Plaintiffs point in their opposition do not speak to enterprise customers' usage in Q4 2023. *See* ECF No. 79 at 18 (citing SAC ¶¶ 155, 157, 165).

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on Statement 8. Because this is the first time that the Court has found that Plaintiffs' allegations with respect to the falsity of Statement 8 are deficient, the dismissal is WITH LEAVE TO AMEND.

**(vii) Statement 9, SAC ¶ 158**

Plaintiffs allege that, under the heading, "We receive a substantial portion of our revenues

---

[5] Defendants also argue that Statement 8 is a forward-looking statement protected by the PSLRA safe harbor. *See* ECF No. 75 at 28. However, Defendants have not cited any authority that a risk disclosure that warns of potential negative impacts that could occur if certain events take place, such as Statement 8, falls within the definition of a forward-looking statement under 15 U.S.C. § 78u-5(i)(1). Further, the report in which Statement 8 was published shows that the statement appears under "Risk Factors," indicating that, rather than being a forward-looking statement itself, Statement 8 was cautionary language for other statements in the report that are forward-looking. *See* ECF No. 75–5 at 5, 26. Thus, the Court cannot find that Statement 8 is a forward-looking statement protected by the safe harbor. *See In re Quality Sys.*, 865 F.3d at 114.

United States District Court
Northern District of California

from a limited number of customers . . . , and the loss of, or a significant reduction in usage by, one or more of our major customers [(the Company's Key Customers)] would result in lower revenues and could harm our business," Fastly's annual report for fiscal year 2023 also warned investors, in relevant part:

> It is likely that we will continue to be dependent upon a limited number of customers for a significant portion of our revenues for the foreseeable future. . . . The loss of one or more key customers or a reduction in usage by any major customers would reduce our revenues. If we fail to maintain existing customers . . . , our business would be harmed.

SAC ¶ 158 (alterations in the original).

In its order of September 24, 2025, the Court held that Plaintiffs had not plausibly alleged that Statement 9 was false or misleading when made on the basis that it warned of risks that could occur but did not disclose that those risks had materialized. *See* ECF No. 67 at 33–34. The Court held that it could not infer that the risks the statement warned about, which were about "key customers" and decreases in their usage, had materialized because Plaintiffs did not point to allegations that described who Fastly's key customers were or that raised the inference that those customers' usage had decreased during the period covered by the report in which Statement 9 appeared. *See id.*

Defendants argue that Plaintiffs' allegations continue to be deficient because, although they have defined "Key Customers" as Fastly's top ten customers in the SAC, they have not alleged any particularized facts indicating that Key Customers were reducing their usage during the period covered by the report in which Statement 9 appeared.[6] ECF No. 75 at 24–25.

The Court disagrees and finds that Plaintiffs have cured the pleading deficiencies identified in the Court's order of September 24, 2025, by alleging in the SAC that Fastly's Key Customers are its top ten customers and that the risks that Statement 9 warned about had materialized because

---

[6] Defendants also argue that Statement 9 is a forward-looking statement protected by the PSLRA safe harbor. *See* ECF No. 75 at 28. The Court finds that Defendants have not shown that Statement 9 is protected by the safe harbor for the same reasons discussed above with respect to Statement 8.

Key Customers' usage had been declining in Q4 2023 and that was known to Defendants, as discussed in more detail in the context of Statement 2. Statement 9 was misleading when made because it failed to disclose that the risks it warned about with respect to Key Customers' usage had already materialized during the time period covered by the report (which included Q4 2023). *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 704 (9th Cir. 2021) (holding that risk disclosures that "speak[ ] entirely of as-yet-unrealized risks and contingencies" and do not disclose that the risks may have already come to fruition can be misleading).

The Court DENIES Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on arguments that Statement 9 was not false or misleading when made.

**(viii) Statement 10, SAC ¶ 160**

Plaintiffs allege that, under the Management's Discussion and Analysis of Financial Condition and Results of Operations section, Fastly's annual report for 2023 states: "We emphasize retaining our customers and expanding their usage of our platform and adoption of our other products." SAC ¶ 160. Plaintiffs allege that this statement was false or misleading when made because Defendants failed to disclose that Fastly had shifted its sales strategy in 2024 to prioritize new customer acquisitions over existing customers. *See id.* ¶ 161.

In its order of September 24, 2025, the Court held that Plaintiffs had not plausibly alleged that Statement 10 was false or misleading when made because Fastly disclosed the matters that were allegedly omitted from Statement 10 on the same pages of the annual report for 2023 where Statement 10 appeared. *See* ECF No. 67 at 28.

Defendants argue that the Court should reaffirm its ruling with respect to Statement 10 because Plaintiffs did not add any allegations to the SAC related to the statement. *See* ECF No. 75 at 26.

In their opposition, Plaintiffs do not respond to Defendants' arguments. *See generally* ECF No. 79. Accordingly, the Court finds that Plaintiffs have abandoned their claims to the extent that they are premised on Statement 10. *See Norfolk*, 2018 WL 3126393, at *10; *Carvalho*, 629 F.3d at 888.

The Court GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on Statement 10.

**c. May 1, 2024, Statements**

**(i) Statement 11, SAC ¶ 188**

Plaintiffs allege that, during the earnings call for Q1 2024 on May 1, 2024, Defendant Nightingale stated:

> *Right now, we have already launched a new engagement model. We're driving a far higher touch across all those major accounts. We've been running it for a couple of weeks now, and we're—I'm pretty happy with the progress so far.* But just looking at the—where our projection is for those accounts and how much it's changed in just one quarter, like you said, some plus February, I think decisive change in our engagement model was warranted. And that's exactly the transition that we're undergoing right now.

SAC ¶ 188 (emphasis in the original).

In its order of September 24, 2025, the Court held that Plaintiffs had not plausibly alleged that Statement 11 was false or misleading when made because they failed to allege facts indicating that Defendants had not, in fact, made progress with the "new engagement model," as Defendant Nightingale represented. *See* ECF No. 67 at 29.

Defendants argue that the Court should reaffirm its ruling with respect to Statement 11 because Plaintiffs did not add any allegations to the SAC related to that statement. *See* ECF No. 75 at 27.

In their opposition, Plaintiffs do not respond to Defendants' arguments. *See generally* ECF No. 79. Accordingly, the Court finds that Plaintiffs have abandoned their claims to the extent that they are premised on Statement 11. *See Norfolk*, 2018 WL 3126393, at *10; *Carvalho*, 629 F.3d at 888.

The Court GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on Statement 11.



United States District Court
Northern District of California

**(ii) Statement 12, SAC ¶ 193**

Plaintiffs allege that Fastly's quarterly report for Q1 2024, which was filed on May 1, 2024, stated under the Management's Discussion and Analysis of Financial Condition and Results of Operations section: "[w]e focus our direct selling efforts on expanding our customer's use of our platform," "[w]e are focused on continuing to attract new customers, including those in diverse vertical markets, and expanding our relationship with existing customers," "[w]e emphasize retaining our customers and expanding their usage of our platform and adoption of our other products," and "[u]tilizing our direct sales force, we have multiple selling points within organizations to acquire new customers and increase usage from our existing customers." *See* SAC ¶ 193; *see also* ECF No. 75-4 at 33–34 (Ex. A). Plaintiffs allege that this statement was false or misleading when made because Defendants failed to disclose that Fastly had shifted its sales strategy in 2024 to prioritize new customer acquisitions over existing customers. *See id.* ¶ 194.

In its order of September 24, 2025, the Court held that Plaintiffs had not plausibly alleged that Statement 12 was false or misleading when made because Fastly disclosed the matters that Plaintiffs allege were omitted from that statement on the same pages of the quarterly report for Q1 2024 where the statement appeared. *See* ECF No. 67 at 31.

Defendants argue that the Court should reaffirm its ruling with respect to Statement 12 because Plaintiffs did not add any allegations to the SAC related to that statement. *See* ECF No. 75 at 26.

In their opposition, Plaintiffs do not respond to Defendants' arguments. *See generally* ECF No. 79. Accordingly, the Court finds that Plaintiffs have abandoned their claims to the extent that they are premised on Statement 12. *See Norfolk*, 2018 WL 3126393, at *10; *Carvalho*, 629 F.3d at 888.

The Court GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on Statement 12.

**(iii) Statement 13, SAC ¶ 196**

Plaintiffs allege that, under the heading, "If we are unable . . . to have existing enterprise

customers continue and increase their use of our platform, our business will likely be harmed," Fastly's quarterly report for Q1 2024, which was filed on May 1, 2024, warned investors, in relevant part:

> *Our future success also depends in part on our ability to expand our existing customer relationships, in particular, with enterprise customers, by increasing their usage of our platform, selling them additional products and upgrading their existing products. . . . If our efforts to increase usage of our platform by, or sell new and additional products to, our enterprise customers are not successful, our business would be harmed.*

SAC ¶ 196 (emphasis in the original).

In its order of September 24, 2025, the Court held that Plaintiffs had not plausibly alleged that Statement 13 was false or misleading when made on the basis that the statement failed to disclose that the risks it warned about had already materialized in the form of declining usage by enterprise customers. *See* ECF No. 67 at 32. The Court found that Plaintiffs had failed to point to allegations that raised the inference that Defendants were aware that enterprise customers' usage had been declining in Q1 2024, which is the quarter covered by the report in which Statement 13 was published. *See id.*

Defendants argue that Plaintiffs have not cured the deficiencies identified in the Court's order of September 24, 2025, with respect to Statement 13.[7] *See* ECF No. 75 at 24–25.

The Court agrees. Plaintiffs have not cured the deficiencies identified in the Court's order of September 24, 2025, because they do not point to allegations in the SAC that raise the inference that the risks that Statement 13 warned about, which are about *usage by enterprise customers*, had already materialized at the time the statement was made. In their opposition, Plaintiffs concede that, for Statement 13 to be false or misleading, they must allege that *enterprise customers* were decreasing their usage of Fastly's services during the period covered by the statement (i.e., Q1

---

[7] Defendants also argue that Statement 13 is a forward-looking statement protected by the PSLRA safe harbor. *See* ECF No. 75 at 28. The Court finds that Defendants have not shown that Statement 13 is protected by the safe harbor for the same reasons discussed above with respect to Statement 8.

2024).[8] *See* ECF No. 79 at 18. However, Plaintiffs have not pointed to any allegations regarding enterprise customers' usage in Q1 2024. *See id.* at 20–21. The allegations to which they point pertain to the usage of Key Customers, not enterprise customers. *See id.* (citing SAC ¶¶ 197, 199).

The Court GRANTS Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on Statement 13. The dismissal is WITHOUT LEAVE TO AMEND because the Court previously granted Plaintiffs the opportunity to amend the complaint to cure the pleading deficiencies with respect to that statement, and the Court finds that granting further leave to amend would be futile.

**(iv) Statement 14, SAC ¶ 198**

Plaintiffs allege that, under the heading, "We receive a substantial portion of our revenues from a limited number of customers . . . , and the loss of, or a significant reduction in usage by, one or more of our major customers [(the Company's Key Customers)] would result in lower revenues and could harm our business," Fastly's quarterly report for Q1 2024, which was filed on May 1, 2024, warned investors, in relevant part:

> It is likely that we will continue to be dependent upon a limited number of customers for a significant portion of our revenues for the foreseeable future. . . . The loss of one or more key customers or a reduction in usage by any major customers would reduce our revenues. If we fail to maintain existing customers . . . , our business would be harmed.

SAC ¶ 198 (alterations in the original).

In its order of September 24, 2025, the Court held that Plaintiffs had not plausibly alleged that Statement 14 was false or misleading on the basis that the statement warned of risks that could occur but failed to disclose that such risks had already materialized. *See* ECF No. 67 at 32. The Court found that Statement 14 warned of risks that could occur if Fastly lost "key customers" or

[8] In their opposition, Plaintiffs concede that they must allege that "enterprise customers were decreasing their usage" during the period covered by the statement in order to plausibly allege that Statement 8 was false or misleading when made. *See* ECF No. 79 at 18. Because Statement 8 is identical to Statement 13 (except that Statement 13 was included in the quarterly report for Q1 2024, whereas Statement 8 was included in the annual report for 2023), Plaintiffs' concession with respect to Statement 8 applies to Statement 13, as well.

"major customers" or if those customers reduced their usage of Fastly's services, but Plaintiffs failed to point to any allegations that raised the inference that Defendants knew at the time that Statement 14 was made that Fastly had lost "key customers" or "major customers" or that those customers had reduced their usage of Fastly's services in Q1 2024. *See id.*

Defendants contend that Plaintiffs allege in the SAC that Statement 14 was false or misleading because it did not disclose that the risks it warned about had already materialized in the form of usage and revenue declines from Fastly's Key Customers in Q1 2024. *See* ECF No. 75 at 24–25. Defendants contend that Statement 14 was not misleading as a matter of law on the basis that Plaintiffs advance in the SAC because that pleading contains allegations that Defendants disclosed during the earnings call for Q1 2024 the same information that Plaintiffs allege was omitted from Statement 14, namely Key Customers' usage and revenue declines in Q1 2024.[9] *See id.* (citing SAC ¶¶ 172–81, 197).

Plaintiffs do not dispute that the same matters they allege were omitted from Statement 14 were disclosed during the earnings call for Q1 2024. *See* ECF No. 79 at 21. They argue that the Court cannot resolve as a matter of law the question of whether that disclosure rendered Statement 14 not misleading because the disclosure was not made in the quarterly report for Q1 2024 where Statement 14 was published and instead was made during the earnings call for Q1 2024. *See id.*

The Court agrees with Defendants. Plaintiffs allege that Statement 14 was misleading because it did not reveal that the risks it warned about had already materialized on the basis that Key Customers' usage and revenues had been declining in Q1 2024. *See* SAC ¶ 199. However, Defendants have shown, and Plaintiffs do not dispute, that the SAC contains allegations indicating that the information about Key Customers' usage and revenue declines in Q1 2024 that was allegedly concealed was disclosed to investors during the earnings call for Q1 2024, which took place on the same date on which Statement 14 was published in the quarterly report for Q1 2024

[9] Defendants also argue that Statement 14 is a forward-looking statement protected by the PSLRA safe harbor. *See* ECF No. 75 at 28. The Court finds that Defendants have not shown that Statement 14 is protected by the safe harbor for the same reasons discussed above with respect to Statement 8.

(i.e., on May 1, 2024). *See id.* ¶¶ 172–81, 197. Because the information that was allegedly omitted from Statement 14 was disclosed to investors on the same date when Statement 14 was published, the Court cannot reasonably infer that Statement 14 was misleading on the basis that it omitted that information. *See Dolly v. GitLab Inc.,* No. 24-CV-06244-EKL, 2025 WL 2372965, at *10 (N.D. Cal. Aug. 14, 2025) (holding that statements describing company's "new AI-powered features" was not misleading because the "market already knew" the limits of the availability of those features based on the defendants' disclosure of that information); *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 180 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018) ("The defendants cannot be held liable for failing to disclose something that they disclosed.").

Plaintiffs argue that the disclosure of the allegedly concealed information during the Q1 2024 earnings call does not render Statement 14 not misleading as a matter of law because the disclosure was not made in the quarterly report in which Statement 14 appeared. That argument is unavailing. The Ninth Circuit has held that courts "need to look at the context surrounding" a challenged statement when deciding whether it is misleading, which may include "information outside the immediate document[.]" *See Sneed.*, 147 F.4th at 1131 (holding that, "[t]o decide whether a misstatement or omission can mislead, [courts] need to look at the context surrounding the statement" and that "other information outside the immediate document can form the context in which a reasonable investor would view a particular statement"); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) (holding that the falsity of a statement depends on whether a plaintiff can "demonstrate that a particular statement, w*hen read in light of all the information then available to the market,* or a failure to disclose particular information, conveyed a false or misleading impression") (citation and internal quotation marks omitted, emphasis added). Here, the disclosures that revealed the concealed information are part of the context in which a reasonable investor would interpret Statement 14 because Plaintiffs allege that they were disseminated to the market on the same day that Statement 14 was published. *See* SAC ¶¶ 172–81, 197. Additionally, the disclosures were allegedly made during the earnings call for Q1 2024, which covered the same matters as the quarterly report in which Statement 14 was published. Accordingly, the disclosures made during the Q1 2024 earnings call are relevant to the

determination of whether Statement 14 was misleading when made. Plaintiffs have not cited any authority that compels a different conclusion.

The Court GRANTS Defendants' motion to dismiss Plaintiffs' claim under Section 10(b) and Rule 10b-5(b) to the extent that it is premised on Statement 14. The dismissal is WITHOUT LEAVE TO AMEND because the Court previously granted Plaintiffs the opportunity to amend the complaint to cure the pleading deficiencies with respect to that statement, and the Court finds that granting further leave to amend would be futile.

**2. Scienter**

"To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter[.]" *Matrixx Initiatives*, 563 U.S. at 48 (citation and internal quotation marks omitted). Scienter is "a mental state that not only covers 'intent to deceive, manipulate, or defraud,' but also 'deliberate recklessness[.]'" *Schueneman*, 840 F.3d at 705 (internal citations omitted). "[D]eliberate recklessness is an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* (citation and internal quotation marks omitted). In evaluating scienter, courts must "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 551 U.S. at 323–24. In performing this inquiry, courts should determine whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

Defendants argue that the SAC does not raise a strong inference that they acted with scienter when making any challenged statement because: (1) it lacks particularized facts suggesting that they had a motive to defraud investors; (2) it lacks facts establishing their state of mind; and (3) the non-fraudulent inference that Defendants updated investors about what they were seeing in the macroeconomic environment is more compelling. *See* ECF No. 75 at 29–33.

The Court considers whether Plaintiffs have alleged that Defendants acted with scienter

with respect to Statements 2, 6, and 9, as those are the only challenged statements that Plaintiffs have plausibly alleged were false or misleading when made. As discussed above, Statements 2, 6, and 9 were misleading when made because they omitted declines in usage and revenues from Fastly's Key Customers in Q4 2023 that were associated with macroeconomic conditions.

The Court finds that Plaintiffs' allegations, when considered holistically, raise a strong inference that the Individual Defendants acted with scienter when they made Statements 2, 6, and 9, respectively.[10] Plaintiffs' allegations strongly indicate that the Individual Defendants knew of the usage and revenue declines at issue, and of the negative impact that those declines could have on Fastly's overall revenue in Q4 2023, because those matters were discussed by Defendant Nightingale during an all-hands meeting that took place in early November 2023, which was attended by all Fastly employees and the company's C-Suite. *See, e.g.*, SAC ¶¶ 90, 98–102. Plaintiffs' allegations also strongly indicate that the Individual Defendants' omission of the Q4 2023 usage and revenue declines from Statements 2, 6, and 9 carried a significant danger of misleading investors that was so obvious that they must have been aware of it for two reasons. First, Plaintiffs allege that Fastly's revenue model depended significantly on the usage and revenues from Key Customers, and that a decline in revenue from those customers could create volatility in the company's overall revenue and materially impact its business. *See id.* ¶¶ 7–8, 66, 76–77. The Individual Defendants knew that Fastly's dependence on revenue from Key Customers was known to investors because that circumstance was disclosed in the company's quarterly and annual reports, which were signed by the Individual Defendants. *See, e.g.*, *id.* ¶¶ 158, 198. Thus, a failure by the Individual Defendants to disclose the Key Customer declines in usage and revenues carried a significant and obvious risk of misleading investors into adopting a view of the company's financial health that was more favorable than warranted given the volatility risks that such declines entailed. Second, Plaintiffs' allegations suggest that analysts and investors were very interested in learning about any revenue impacts associated with macroeconomic forces

[10] Statements 2 and 6 were made by Defendant Nightingale, and Statement 9 was made by Individual Defendants Nightingale and Kisling, as they signed the annual report in which that statement appeared.

that Fastly may have been experiencing during the Class Period, as they asked pointed questions to solicit information about those issues during earnings calls. *See, e.g.*, *id.* ¶¶ 131, 133, 148. Thus, it is reasonable to infer that a failure to reveal the declines in usage and revenues at issue carried a significant and obvious risk of leading investors to believe, incorrectly, that the company was not experiencing those macroeconomic impacts. The Individual Defendants' choice to omit the usage and revenue declines at issue when making Statements 2, 6, and 9 even though the omission carried a significant and obvious danger of misleading investors is sufficient to raise a strong inference of scienter as to the Individual Defendants. *See In re Splunk Inc. Securities Litigation*, 592 F. Supp. 3d 919, 947 (N.D. Cal. 2022) (holding that allegations raised a strong inference of scienter because they indicated that the defendants concealed matters from investors that had been discussed previously during an all-hands meeting, that the defendants were aware of the importance of the concealed matters to the company's financial health and thus to investors, and that the defendants failed to publicly reveal those matters even though analysts asked them questions about topics relating to those matters).

This strong inference of scienter is more compelling than the nonfraudulent inference that Defendants advance, which is that they "updated investors about what they were seeing in the macroeconomic environment[.]" *See* ECF No. 75 at 33. If the Individual Defendants had been inclined to keep investors updated about macroeconomic impacts, then one would expect that they would have updated investors about the alleged Q4 2023 usage and revenue declines from Key Customers at the time they made Statements 2, 6, and 9 given that they were allegedly aware of those matters when they made the statements in question. The Individual Defendants' failure to disclose those matters when making the statements renders the nonculpable version of their conduct less cogent and compelling when compared with the strong inference of scienter discussed above. *See Curry v. Yelp Inc.,* 875 F.3d 1219, 1226 (9th Cir. 2017) (holding that the inference of scienter need only be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged" and "need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the 'most plausible of competing inferences'") (citation and internal quotation marks omitted).

Because the scienter element is satisfied as to the Individual Defendants, it also is met as to Defendant Fastly because no party argues that the Individual Defendants were acting outside the scope of their apparent authority. *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) ("The scienter of the senior controlling officers of a corporation may be attributed to the corporation itself to establish liability as a primary violator of § 10(b) and Rule 10b-5 when those senior officials were acting within the scope of their apparent authority.").

Defendants' arguments that Plaintiffs have not alleged facts that support a strong inference of scienter are unavailing. Defendants argue that Plaintiffs' failure to allege a motive to defraud makes it less likely that their allegations raise a strong inference of scienter. *See* ECF No. 75 at 29–30. However, the Ninth Circuit has held that where, as here, a plaintiff has alleged compelling and particularized facts showing deliberate recklessness by the defendant, a failure to allege a motive to defraud will not prevent the plaintiff from meeting its burden of pleading a strong inference of scienter. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) ("[A] complaint lacking a plausible motive allegation may still meet its burden of pleading a strong inference of scienter" where "a complaint otherwise asserts compelling and particularized facts showing fraudulent intent or deliberate recklessness").

Defendants also argue that Plaintiffs' allegations are insufficient to raise a strong inference of scienter because allegations about the Individual Defendants' knowledge of the Q4 2023 usage and revenue declines at issue are based on the reports of confidential witnesses that are vague and provide no insight as to the Individual Defendants' state of mind. *See* ECF No. 75 at 31. The Court is not persuaded. As discussed in more detail in a preceding section of this order, the Court has found that the reports attributed to CW1 and CW6 that this order relies upon are sufficiently reliable and detailed. Those reports indicate that the Individual Defendants knew of Key Customers' usage and revenue declines in Q4 2023 that were associated with macroeconomic conditions because those matters were discussed at an all-hands meeting in November 2023 that were attended by both Individual Defendants. *Cf. Wozniak v. Align Tech., Inc.*, No. C-09-3671 MMC, 2011 WL 2269418, at *12 (N.D. Cal. June 8, 2011) (holding that allegations regarding meetings involving the defendants did not raise the inference of scienter because "none of the

confidential witnesses describes the contents of any of the meetings”).

In light of the foregoing, the Court DENIES Defendants’ motion to dismiss to the extent that it is premised on arguments that Plaintiffs have not alleged scienter with respect to Statements 2, 6, and 9.

**3. Loss Causation**

The Exchange Act defines “loss causation” “as the plaintiff’s ‘burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.’” *Mineworkers’ Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2741 (2019) (quoting 15 U.S.C. § 78u-4(b)(4)). “This inquiry requires no more than the familiar test for proximate cause.” *Id.* “To prove loss causation, plaintiffs need only show a causal connection between the fraud and the loss, by tracing the loss back to the very facts about which the defendant lied[.]” *Id.* (internal citations and quotation marks omitted). “[L]oss causation is a ‘context-dependent’ inquiry as there are an ‘infinite variety’ of ways for a tort to cause a loss.” *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). “Because loss causation is simply a variant of proximate cause, the ultimate issue is whether the defendant’s misstatement, as opposed to some other fact, foreseeably caused the plaintiff’s loss.” *Id.* (citation omitted).

In its order of September 24, 2025, the Court held that Plaintiffs had plausibly alleged loss causation with respect to Statement 2 under a materialization-of-the-risk theory but had failed to plausibly allege loss causation under a corrective-disclosures theory with respect to Statements 5, 6, 7, and 8. *See* ECF No. 67 at 38–43.

In the SAC, Plaintiffs advance two theories of loss causation with respect to each challenged statement, namely a materialization-of-the-risk theory and a corrective-disclosures theory. *See* SAC ¶¶ 242–54.

Defendants argue that the allegations in the SAC are insufficient to raise the inference of loss causation under any theory. *See* ECF No. 75 at 34–36.

The Court considers below whether Plaintiffs have plausibly alleged loss causation for Statements 2, 6, and 9, which are the only challenged statements that were plausibly misleading

when made and were made with scienter. To survive Defendants' motion to dismiss, only one of the two loss causation theories that Plaintiffs advance for each statement needs to be plausible. *See In re Amgen Inc. Sec. Litig.*, No. CV072536PSGPLAX, 2014 WL 12585809, at *20–21 (C.D. Cal. Aug. 4, 2014) (holding that a securities fraud claim is not subject to dismissal if the plaintiff pleads multiple theories of loss causation but only one of them is plausible).

A materialization of the risk approach to loss causation "recognizes loss causation where a plaintiff shows that misstatements and omissions concealed the price-volatility risk (or some other risk) that materialized and played some part in diminishing the market value of a security." *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013) (citations and internal quotation marks omitted). "[M]aterialization of the risk recognizes that a misstatement or omission is the proximate cause of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations and omissions alleged by a disappointed investor." *Id.* (citation and internal quotation marks omitted). "Under this theory, the plaintiff must show that it was the very facts about which the defendant lied which caused its injuries." *Id.* (citation and internal quotation marks omitted).

By contrast, a plaintiff seeking to prove loss causation by relying on one or more corrective disclosures "must show that: (1) a corrective disclosure revealed, in whole or in part, the truth concealed by the defendant's misstatements; and (2) disclosure of the truth caused the Company's stock price to decline and the inflation attributable to the misstatements to dissipate." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020).

**a. Statement 2**

With respect to Statement 2, the Court finds that Plaintiffs have plausibly alleged loss causation under a materialization-of-the-risk theory. Plaintiffs allege that the risks of the decline in usage and revenues from Key Customers in Q4 2023, which Defendants omitted from Statement 2, began to materialize when Fastly released its Q4 2023 financial results on February 14, 2024, as those results showed that Fastly came in at the lower end of its revenue guidance for that quarter and missed analysts' consensus revenue estimates by 1.1%. *See* SAC ¶¶ 136–37, 242–46. According to Plaintiffs' allegations, the materialization of the risks of the concealed

decline in usage and revenues from Key Customers in Q4 2023 caused the lower-than-expected revenue results for that quarter. *See id.* That is because the risk that caused the lower-than-expected revenue results was within the zone of risk concealed by Statement 2, as the risk concealed by that statement was the risk of volatility in Fastly's overall revenue and performance that could occur if there was a decline in usage and revenues from Key Customers. *See id.* ¶¶ 7–8, 66, 76–77. In turn, the lower-than-expected revenue results caused a 30.59% decline in the price of Fastly's stock a day after the results were announced, which then caused Plaintiffs and members of the proposed class to suffer losses. *See id.* That is sufficient to allege loss causation under a materialization-of-the-risk theory with respect to Statement 2. Accordingly, the Court need not, and does not, reach the question of whether Plaintiffs also have alleged loss causation under a corrective-disclosures theory with respect to that statement.

Defendants argue that Plaintiffs have not alleged a plausible materialization-of-the-risk theory of loss causation for Statement 2 because such a theory requires pleading a concealed risk, but no such concealed risk is alleged in the SAC. *See* ECF No. 75 at 34. Defendants argue that, because they disclosed to investors that Fastly's business was volatile, that it depended on a few top customers for a large portion of its revenue, that a change in usage from its top-ten customers could harm the business, and that it had experienced impacts from macroeconomic conditions, Plaintiffs' allegations do not raise the inference that the risk that caused the stock-price decline in February 2024 was concealed. *See* ECF No. 75 at 34. The Court disagrees. Plaintiffs' allegations raise the inference that Defendants concealed from investors the Key Customer usage and revenue declines in Q4 2023 discussed above, as well as the risks to Fastly's revenue and business performance associated with those declines, by omitting the declines when they made Statement 2. Accordingly, Plaintiffs' theory of loss causation does not lack a concealed risk, as Defendants contend. That Defendants purportedly disclosed to investors matters *other than* the Key Customer usage and revenue declines that Plaintiffs allege were concealed does not mean that their theory of loss causation lacks a concealed risk.

Defendants also argue that Plaintiffs' materialization-of-the-risk theory is not viable because it is premised on a stock-price decline caused by disappointing earnings results that lacks

a connection to the matters that were allegedly omitted from Statement 2. *See* ECF No. 75 at 34. The Court disagrees based on the allegations discussed above. Plaintiffs have sufficiently alleged the requisite causal connection between the risks associated with the Key Customer revenue and usage declines that Defendants concealed from Statement 2 and the lower-than-expected revenue results and resulting stock price decline that caused members of the proposed class to suffer losses in February 2024. That distinguishes the non-binding authorities that Defendants rely upon for the proposition that the requisite causal connection is absent here.[11]

Finally, Defendants contend that the allegations described above are insufficient to allege loss causation with respect to Statement 2 because Plaintiffs are required, but have failed, to allege facts indicating that the alleged fraud or the matters that Defendants allegedly concealed to investors were revealed to the market. *See* ECF No. 81 at 21–22. That is incorrect. Because Plaintiffs have plausibly alleged loss causation under a materialization-of-the-risk theory with respect to Statement 2, they are not required to allege that the matters that were allegedly omitted from Statement 2 were revealed to the market. *See Nuveen*, 730 F.3d at 1120 (holding that loss causation "may be shown . . . where the alleged fraud is not necessarily revealed prior to the economic loss" if the plaintiff's theory of loss causation is not based on corrective disclosures).[12]

Because Plaintiffs have plausibly alleged loss causation for Statement 2, the Court DENIES Defendants' motion to dismiss with respect to that statement.

**b. Statements 6 and 9**

As to Statements 6 and 9, the Court finds that Plaintiffs have not plausibly alleged loss causation based on a materialization-of-the-risk theory or a corrective-disclosures theory.

---

[11] *See, e.g.*, *Inchen Huang v. Higgins*, No. 17–CV–04830–JST, 2019 WL 1245136, at *15–17 (N.D. Cal. Mar. 18, 2019) (concluding that the plaintiff did not connect the risks concealed by the misrepresentations to the causes for the stock declines on the loss causation dates); *Reckstin Fam. Tr. v. C3.ai, Inc.*, 718 F. Supp. 3d 949, 990 (N.D. Cal. 2024) (similar).

[12] The non-binding authorities that Defendants cite for the proposition that Plaintiffs must allege facts showing that the matters allegedly concealed were revealed to investors are inapposite because they address loss causation theories that depend on corrective disclosures. *See In re UiPath, Inc. Sec. Litig.*, No. 24 CIV. 4702 (JPC), 2025 WL 2065093, at *21 (S.D.N.Y. July 23, 2025) and *Dolly v. GitLab Inc.*, No. 24–CV–06244–EKL, 2025 WL 2372965, at *15 (N.D. Cal. Aug. 14, 2025).

Plaintiffs' materialization-of-the-risk theory with respect to Statements 6 and 9 is based on allegations that, after the risks associated with the decline in usage and revenues from Key Customers in Q4 2023 began to materialize when Fastly released its Q4 2023 financial results in February 2024, as discussed above in the context of Statement 2, Defendants continued to downplay those risks and their potential impact on Fastly's business by omitting them from Statements 6 and 9 in February 2024, and by making other allegedly misleading statements to investors in February 2024. *See, e.g.*, SAC ¶¶ 138–39, 148–49, 158–59, 247. Plaintiffs further allege that the risks of the decline in usage and revenues from Key Customers in Q4 2023 that were omitted from Statements 6 and 9 continued to materialize on May 1, 2024, when Fastly released its Q1 2024 financial results and announced that it was reducing its full-year revenue projection for 2024 from $580-$590 million to $555-$565 million. *See, e.g.*, *id.* ¶¶ 149–50, 158–59, 248–50. Plaintiffs allege that the reduction in revenue projections for 2024 was caused by revenue declines from Key Customers. *Id.* ¶ 248. In turn, the reduction in revenue projections for 2024 caused Fastly's stock price to fall 32.02% a day later, on May 2, 2024, which caused members of the proposed class to suffer losses. *See id.* ¶¶ 248–50.

The foregoing allegations do not raise the inference that the matters omitted from Statements 6 and 9, which were the usage and revenue declines from Key Customers in Q4 2023, caused the reduction in revenue projections for 2024 that, in turn, caused the proposed class to suffer losses via the stock-price decline on May 2, 2024. *See Nuveen*, 730 F.3d at 1120 (holding that, under a materialization-of-the-risk theory, "the plaintiff must show that it was the very facts about which the defendant lied which caused its injuries"). Plaintiffs point to no allegations that would permit the Court to infer that usage and revenue declines from Key Customers *in Q4 2023* (or any risks associated therewith) could have caused the reduction in revenue projections *for the year 2024*, which did not include Q4 2023. As Defendants correctly point out, Plaintiffs allege that Defendants disclosed that the reduction in revenue projections for 2024 had a different cause, namely Key Customer revenue declines that occurred during *Q1 2024*. *See id.* ¶¶ 23, 197 (alleging that, during the earnings call for Q1 2024 held on May 1, 2024, Defendant Kisling attributed the reduced revenue projections for 2024 to "a challenging environment of revenue

United States District Court
Northern District of California

declines in [the Company's] largest customers (i.e., its Key Customers) towards the end of *Q1 2024*") (internal quotation marks omitted, emphasis added); *see also id.* ¶ 248 (alleging that the reduction in revenue projections for 2024 was caused by "the revenue declines from the Company's Key Customers, *which was ongoing* when Nightingale misled investors *in February 2024*," which is in Q1 2024) (emphasis added). However, Key Customer revenue declines in Q1 2024 are not what Defendants concealed when they made Statements 6 and 9. Although Plaintiffs allege that the "Key Customer pullback had begun far earlier than Q1 2024" and the reduction in revenue projections for 2024 was a materialization of the risk of that earlier pullback, *see id.* ¶¶ 23, 169, those allegations are conclusory, not particularized, and are insufficient, without more, to raise the inference that Key Customer pullback that took place *before 2024* could have negatively impacted revenue projections for 2024. Because Plaintiffs' allegations do not indicate that a causal link exists between the matters that were concealed from investors when Defendants made Statement 6 and 9 and the reduction in revenue projections for 2024 that allegedly caused the proposed class to suffer losses, Plaintiffs' materialization-of-the-risk theory fails with respect to Statements 6 and 9.[13] *See Nuveen*, 730 F.3d at 1120.

Plaintiffs' corrective-disclosures theory of loss causation with respect to Statements 6 and 9 is based on allegations that Defendant Nightingale revealed the "truth about macroeconomic impacts on the Company's business during Q4 2023" during the earnings call for Q1 2024 held on May 1, 2024. *See* SAC ¶ 249. During that call, an analyst mentioned that, during the prior quarter (Q4 2023), Defendant Nightingale had talked about how "the pricing environment" had been "relatively in line with how it's been historically" but there appeared to be "more intensifying pricing pressure" in Q1 2024. SAC ¶ 170. The analyst asked Nightingale to speak about "what has maybe changed in the last 90 days" (i.e., in Q1 2024) in terms of "pricing pressure," and Defendant Nightingale responded: "I think in the general market, *I would say that the pricing*

[13] Plaintiffs argue, in passing, that Defendants waived arguments challenging their materialization-of-the-risk theory for Statements 6 and 9 by failing to raise them in their opening brief. *See* ECF No. 79 at 31. The Court disagrees. Defendants made arguments and pointed to allegations in the SAC in their opening brief that undermine that theory. *See, e.g.*, ECF No. 75 at 34, 36. Thus, no waiver occurred.

*trend that we have been seeing sort of continues*[.]" *Id.* ¶ 171 (emphasis in the original). Plaintiffs allege that that italicized statement revealed "the pricing pressure that the Company faced during the prior quarter (Q4 2023) and indicated that it had continued into Q1 2024." *Id.* ¶ 249.

These allegations are insufficient to plead loss causation for Statements 6 and 9 based on the alleged corrective disclosure just described, because Plaintiffs do not point to allegations indicating that the corrective disclosure revealed, in whole or in part, the truth concealed by those statements. *See In re BofI Holding*, 977 F.3d at 791 (holding that a plaintiff seeking to prove loss causation by relying on one or more corrective disclosures must show, among other things, that the disclosures "revealed, in whole or in part, the truth concealed by the defendant's misstatements"). As discussed above, Statements 6 and 9 were misleading because they concealed usage and revenue declines from Key Customers in Q4 2023. The corrective disclosure to which Plaintiffs point does not reveal those declines. Instead, as Defendants correctly point out, the corrective disclosure mentions a "pricing trend" that Defendants were seeing in Q1 2024, but the corrective disclosure does not state or indicate when the trend started or whether the trend involved Key Customers and their usage and revenues. *See* SAC ¶¶ 171, 249. Accordingly, the Court cannot reasonably infer that the corrective disclosure revealed the Key Customer usage and revenue declines in Q4 2023 that were omitted from Statements 6 and 9.

Plaintiffs argue that the "pricing trend" in question covered Q4 2023 because, according to them, Defendant Nightingale said that Defendants "[*had*] been seeing" a continuation of the pricing trend in Q4 2023. *See* ECF No. 79 at 29 (alteration in the original, emphasis added). However, according to the SAC, what Defendant Nightingale said was that Defendants "*have* been seeing" a continuation of the pricing trend. *See* SAC ¶ 171 (emphasis added). Because Nightingale made that statement when discussing results for Q1 2024, the phrase "have been seeing" indicates that the pricing trend he mentioned was intended to refer to Q1 2024, not Q4 2023. But even if the pricing trend did cover Q4 2023, as Plaintiffs contend, the Court still would not be able to infer that Defendant Nightingale's mention of that pricing trend revealed the matters that were omitted from Statements 6 and 9. That is because Plaintiffs have not pointed to particularized allegations describing how the revelation of a pricing trend would reveal declines in

usage and revenues from Key Customers in Q4 2023.

In light of the foregoing, the Court GRANTS Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiffs have failed to allege loss causation with respect to Statements 6 and 9. The dismissal is WITHOUT LEAVE TO AMEND with respect to Statement 6 because the Court previously granted Plaintiffs the opportunity to amend the complaint to cure their loss-causation pleading deficiencies with respect to that statement, and the Court finds that granting further leave to amend would be futile. The dismissal is WITH LEAVE TO AMEND with respect to Statement 9.

**C. Claims under Section 20(a) of the Exchange Act**

"Section 20(a) of the Securities Exchange Act of 1934 provides for liability of a 'controlling person.'" *In re NVIDIA*, 768 F.3d at 1052 (quoting 15 U.S.C. § 78t(a)). "To establish a cause of action under this provision, a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b-5, and then show that the defendant exercised actual power over the primary violator." *Id.* (citation omitted). A claim under Section 20(a) can survive only if the underlying predicate Exchange Act violation also survives. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 623 (9th Cir. 2017).

Plaintiff asserts a claim under Section 20(a) against the Individual Defendants based on allegations that they exercised power and authority over Fastly's operations and the dissemination of the statements challenged in this litigation. *See* SAC ¶¶ 278–82.

Defendants move to dismiss this claim on two grounds: (1) that Plaintiffs' allegations of the Individual Defendants' control and authority over the challenged statements are conclusory and insufficient; and (2) that, because Plaintiffs have failed to plead a primary violation of Section 10(b), their Section 20(a) claim fails. *See* ECF No. 75 at 36.

Defendants' first argument is not persuasive. Plaintiffs' allegations are sufficiently detailed to raise the inference that, as CEO and CFO of Fastly during the Class Period, the Individual Defendants participated in the management of Fastly and had control over the contents of statements disseminated in the marketplace regarding the company. *See, e.g.*, SAC ¶¶ 274, 279,

281; *see also SEC v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011) (holding that "actual authority over the preparation and presentation to the public of financial statements is sufficient to demonstrate control" for a claim under Section 20(a)). Accordingly, Plaintiffs' Section 20(a) claim is not subject to dismissal on the basis that their allegations regarding the Individual Defendants' control over the challenged statements are conclusory and insufficient.

Defendants' second argument has partial merit. As discussed above, Plaintiffs have not alleged a plausible violation of Section 10(b) based any of the statements challenged in the SAC, except for Statement 2. Plaintiffs' Section 20(a) claim thus fails to the extent that it is premised on statements other than Statement 2, but it does not fail to the extent that it is premised on Statement 2. Accordingly, the Court DENIES Defendants' motion to dismiss the Section 20(a) claim to the extent that it is predicated on Statement 2, and it GRANTS the motion to dismiss to the extent that the Section 20(a) claim is predicated on all remaining challenged statements.

**CONCLUSION**

For the foregoing reasons, the Court:

(1) DENIES Defendants' motion to dismiss Plaintiffs' claims under Section 10(b) and Section 20(a) to the extent that such claims are premised on Statement 2; and

(2) GRANTS Defendants' motion to dismiss Plaintiffs' claims under Section 10(b) and Section 20(a) to the extent that they are premised on the remaining statements challenged in the SAC. The dismissal is WITH LEAVE TO AMEND with respect to Statements 5, 7, 8 and 9. The dismissal is WITHOUT LEAVE TO AMEND with respect to all other challenged statements.

Plaintiffs may file an amended complaint within 30 days of the date this order is filed but only to cure the deficiencies discussed herein, to the extent that Plaintiffs can do so without contradicting the allegations in their prior pleadings. If Plaintiffs file an amended complaint, they

/ / /

/ / /

/ / /

/ / /

shall also file a redline comparison with the SAC. A failure to file an amended complaint will result in dismissal with prejudice of the claims dismissed herein.

**IT IS SO ORDERED.**

Dated: August 10, 2026

JON S. TIGAR
United States District Judge

United States District Court
Northern District of California